UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Daniel S. Sommers (DS-1492)
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
Tel: (202) 408-4600
Fax: (202) 408-4699
Attorney for Plaintiff

| | |
|---|---|
| **LAURENCE KAPLAN, on behalf of himself,** ) <br> **individually, and on behalf of all others** ) <br> **similarly situated,** ) <br> ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **SAINT PETER'S HEALTHCARE** ) <br> **SYSTEM, RONALD C. RAK, an individual,** ) <br> **SUSAN BALLESTERO, an individual,** ) <br> **GARRICK STOLDT, an individual, and** ) <br> **JOHN and JANE DOES, each an individual,** ) <br> **1-20,** ) <br> ) <br> **Defendants.** ) <br> ) | No. <br><br> CLASS ACTION COMPLAINT |

**Table of Contents**

I.      IDENTIFICATION OF PARTIES (LOCAL RULE 10.1)................................... 1

II.     INTRODUCTION ................................................................................................ 1

III.    JURISDICTION AND VENUE .......................................................................... 5

IV.     PARTIES ............................................................................................................. 6

V.      THE BACKGROUND OF THE CHURCH PLAN EXEMPTION ..................... 8

        A.      The Adoption of ERISA ........................................................................... 8

        B.      The Scope of the Church Plan Exemption in 1974 .................................. 9

        C.      The Changes to the Church Plan Exemption in 1980 ............................. 10

VI.     SAINT PETER'S ............................................................................................... 13

        A.      Saint Peter's Operations........................................................................ 13

        B.      The Saint Peter's Plan ........................................................................... 15

                1.      Saint Peter's Plan Meets the Definition of an ERISA
                        Defined Benefit Plan .................................................................. 17

                2.      Saint Peter's is the Plan Sponsor, Plan Administrator and a
                        Fiduciary; and the Individual Defendants are Fiduciaries ..................... 17

                3.      The Saint Peter's Plan Is Not a Church Plan ............................. 19

VII.    CLASS ALLEGATIONS .................................................................................. 26

        A.      Numerosity............................................................................................. 26

        B.      Commonality.......................................................................................... 27

        C.      Typicality ............................................................................................... 27

        D.      Adequacy ............................................................................................... 28

        E.      Rule 23(b)(1) Requirements. ................................................................. 28

        F.      Rule 23(b)(2) Requirements. ................................................................. 29

G.      Rule 23(b)(3) Requirements. ........................................................... 29

VIII.   CAUSES OF ACTION ................................................................................ 30

COUNT I ..................................................................................................... 30

(Claim for Equitable Relief Pursuant to ERISA Section 502(A)(3)
Against Defendant Saint Peter's) ........................................... 30

COUNT II .................................................................................................... 31

(Claim for Violation of Reporting and Disclosure Provisions
Against Defendant Saint Peter's) ........................................... 31

COUNT III ................................................................................................... 34

(Claim for Failure to Provide Minimum Funding Against
Defendant Saint Peter's) ......................................................... 34

COUNT IV ................................................................................................... 34

(Claim for Failure to Establish the Plan Pursuant to a Written
Instrument Meeting the Requirements of ERISA Section
402 Against Defendant Saint Peter's) .................................... 34

COUNT V ..................................................................................................... 35

(Claim for Failure to Establish a Trust Meeting the Requirements
of ERISA Section 402 Against Defendant Saint Peter's) ..... 35

COUNT VI ................................................................................................... 36

(Claim for Civil Money Penalty Pursuant to ERISA Section
502(a)(1)(A) Against Defendant Saint Peter's) .................... 36

COUNT VII .................................................................................................. 37

(Claim for Breach of Fiduciary Duty Against All Defendants) ........................ 37

COUNT VIII ................................................................................................. 40

(Claim for Declaratory Relief That the Church Plan Exemption, as
Claimed By Saint Peter's, Violates the Establishment
Clause of the First Amendment of the Constitution, and Is
Therefore Void and Ineffective) ............................................ 40

IX.     PRAYER FOR RELIEF ............................................................................... 42

Plaintiff Laurence Kaplan, individually and on behalf of all those similarly situated, as well as on behalf of the Saint Peter's Healthcare System Retirement Plan, as defined herein, by and through his attorneys, hereby alleges as follows:

## I.    IDENTIFICATION OF PARTIES (LOCAL RULE 10.1)

1.      Plaintiff Laurence Kaplan's address is 5 Cardigan Dr., Toms River, NJ 08757. Defendant Saint Peter's Healthcare System's ("St. Peter's" or "Defendant") principal place of business is at 254 Easton Avenue, New Brunswick, NJ 08901.  At this time, Plaintiff does not know with certainty the addresses of the individual Defendants, Ronald Rak, Susan Ballestero and Garrick Stoldt.  At this time, Plaintiff also does not know the addresses of Defendants John and Jane Does 1-20 because the identity of these individuals will be determined after discovery.

## II.    INTRODUCTION

2.      Plaintiff agrees that Defendant Saint Peter's Healthcare System ("Saint Peter's" or "Defendant") operates a hospital conglomerate and provides good healthcare services in the communities it serves.  That is not what this case is about.  Instead, this case is about whether Saint Peter's properly maintains its pension plan under the Employee Retirement Income Security Act ("ERISA").  As demonstrated herein, Saint Peter's fails to do so, to the detriment of the more than 4,700 Plan participants who deserve better.

3.      As its name implies, ERISA was crafted to protect employee retirement funds.  A comprehensive history of ERISA put it this way:

> Employees should not participate in a pension plan for many years only to lose their
>
> pension  . . . because their plan did not have the funds to meet its obligations.  The
>
> major reforms in ERISA—fiduciary standards of conduct, minimum vesting and
>
> funding standards, and a government-run insurance program—aimed to ensure that

long-service employees actually received the benefits their retirement plan

promised.

James Wooten, THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, at 3 (U. Cal. 2004).

4.     This class action is brought on behalf of participants and beneficiaries of the Saint

Peter's Healthcare System Retirement Plan, which is maintained by Saint Peter's and operated as

or claimed to be a "Church Plan" under ERISA (referred to as the "Saint Peter's Plan" or simply

the "Plan").  Saint Peter's is violating numerous provisions of ERISA —including underfunding

the Saint Peter's Plan by over $70 million—while erroneously claiming that the Plan is exempt

from ERISA's protections because it is a "Church Plan."  But the Saint Peter's Plan does not meet

the definition of a Church Plan because Saint Peter's plainly is not a church or a convention or

association of churches and because the Saint Peter's Plan was not established by a church or

convention or association of churches.  That should be the end of the inquiry under ERISA,

resulting in a clear finding that the Saint Peter's Plan is not a Church Plan.

5.     Even if, however, these facts were different, and the Saint Peter's Plan could

otherwise qualify for Church Plan status, it would be specifically excluded from such status

because substantially all of the participants in the Plan are *not* employed by an organization that is

controlled by or associated with the Catholic Church, within the meaning of ERISA.  Saint Peter's

is not controlled by the Catholic Church and, despite its name, is not "associated with" the

Catholic Church within the meaning of ERISA because it does not share common religious bonds

and convictions with the Catholic Church.

6.     A sampling of facts reveals Saint Peter's as a non-profit hospital system, not unlike

other non-profit hospital systems.  It is not operated by the Catholic Church and does not receive

funding from the Catholic Church.  Moreover, Saint Peter's deliberately chooses to distance itself

from, or even abrogate, many religious convictions of the Catholic Church when it is in its economic interest to do so, such as when it hires employees; sponsors a medical residency program that includes instruction in medical procedures forbidden by the Catholic Church; invests in various business enterprises; encourages its clients to seek divergent and contrary spiritual support; and collaborates with medical institutions that claim no religious affiliation of any kind.

7.     Employees.  With respect to recruiting and hiring its employees—those who then become the Saint Peter's Plan participants, Saint Peter's does not require that prospective employees be Catholic.  Like many employers, Saint Peter's promotes itself by insisting that it hires regardless of whether there are any common religious convictions.  In other words, Saint Peter's recruits retirement plan participants, in part, by assuring them that their religiosity, or absence thereof, is not relevant.

8.     Medical Procedures.  Saint Peter's Obstetrics and Gynecology Residency Program includes instruction in procedures forbidden by the Catholic Church, including sterilization procedures such as tubal ligation and the use of contraception.

9.     Other Investments.  With respect to its investing in various enterprises, Saint Peter's does not restrict itself to investments related to the Catholic Church.  Saint Peter's is the owner of three for-profit entities, including a captive insurance company and a debt collection company.

10.     Spiritual Guidance.  With respect to its offering of spiritual support to its clients/patients, Saint Peter's specifically chooses not to promote the Catholic faith.  And Saint Peter's does not just remain neutral on this issue and allow patients to do as they please with respect to their religiosity, or lack thereof.  Instead, Saint Peter's actively encourages its patients to reach out to their own priests, ministers, rabbis or spiritual advisors for guidance.  It is axiomatic that these individuals, whom the Saint Peter's clients are encouraged to seek—including those

3

from the Jewish, Islamic, Hindu and Protestant faiths— have religious convictions that the Catholic Church views as clear error.

11.     Non-Religious Affiliations.  Saint Peter's is a teaching hospital for Drexel University and serves as the New Jersey Campus for Drexel's medical school.  Saint Peter's also has a clinical collaboration with the Children's Hospital of Philadelphia.  Neither Drexel nor the Children's Hospital claims any religious affiliation of any kind.

12.     In short, Saint Peter's operates in most respects like other non-profit hospital systems.  It expressly chooses not to prioritize the convictions of the Catholic Church (i) when it hires its employees—who become Saint Peter's Plan participants, (ii)  when Saint Peter's sponsors a medical residency program that includes instruction in procedures forbidden by the Catholic Church, (iii) when it selects its business investments, (iv) when it encourages its clients to contact myriad priests, ministers, rabbis or spiritual advisors, and (v) when it collaborates with medical institutions that claim no religious affiliation of any kind.

13.     Whether Saint Peter's makes these choices without forethought, or whether it makes them deliberately, to satisfy large non-Catholic donors, its employees, its clients/patients, the spiritual community, the secular community, and/or its management, is unknown.

14.     On the other side of the scale is Saint Peter's attempt to claim "Church Plan" status for the Saint Peter's Plan—it wants to maintain and impose a religious status not on its employees, or in any of the areas detailed above, but instead only on the *retirement dollars* of its employees.  Saint Peter's imposes religious status on those retirement dollars because in so doing, according to Saint Peter's, it may underfund the Saint Peter's Plan by over $70 million and be excused from the necessary protections that ERISA provides.  Fortunately, as set forth below,

ERISA does not allow non-Church entities to selectively impose religious status to shirk their responsibility to protect the retirement dollars of their employees.

15.     And, even if the Saint Peter's Plan could clear all the ERISA Church Plan hurdles, the Church Plan exemption, as claimed by Saint Peter's, is an unconstitutional accommodation under the Establishment Clause of the First Amendment, and is therefore void and ineffective.  It harms Saint Peter's employees, unfairly disadvantages Saint Peter's competitors, and accommodates no undue burden caused by ERISA on any Saint Peter's religious practices.

16.     It is worth noting in this Summary that this case is not akin to the disputes concerning mandatory contraceptive coverage by religious institutions.  ERISA does not require retirement plans to afford protections to employees that may be contrary to religious doctrine.

17.     Saint Peter's claim of Church Plan status for its defined benefit plan fails under both ERISA and the First Amendment.  That is what this case is about.

18.     Plaintiff seeks an Order requiring Saint Peter's to comply with ERISA and afford the Class all the protections of ERISA with respect to the Saint Peter's Plan, as well as an Order finding that the Church Plan exemption, as claimed by Saint Peter's, is unconstitutional because it violates the Establishment Clause of the First Amendment.

### III.   JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

20.     This Court has personal jurisdiction over Defendant Saint Peter's because Saint Peter's is headquartered and transacts business in, and has significant contacts with, this District,

and because ERISA provides for nationwide service of process.  ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

21.     This Court has personal jurisdiction over all the Individual Defendants (defined below) because, upon information and belief, they are Officers of Saint Peter's and work in this District and because ERISA provides for nationwide service of process.  *Id.*

22.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because (a) the Plan is administered in this District, (b) some or all of the violations of ERISA took place in this District, and/or (c) Saint Peter's may be found in this District.

23.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Saint Peter's is headquartered in this District, and systematically and  continuously does business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## IV.   PARTIES

24.     <u>Plaintiff Laurence Kaplan</u>.  Plaintiff Laurence Kaplan was an employee of Saint Peter's from 1985 until 1999.  Plaintiff Kaplan is a participant in a pension plan maintained by Saint Peter's because he is or will become eligible for pension benefits under the Plan to be paid at normal retirement age.  Additionally and alternatively, Plaintiff Kaplan has a colorable claim to benefits under a pension plan maintained by Saint Peter's and is a participant within the meaning of ERISA section 2(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the Saint Peter's Plan pursuant to ERISA sections 502(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3), 29 U.S.C. § 1132(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3).

25.     <u>Defendant Saint Peter's</u>.  Saint Peter's is a 501(c)(3) non-profit corporation organized under, and governed by, the New Jersey Non-Profit Corporation Act, Title 15A of the New Jersey Statutes.  Saint Peter's is headquartered in New Brunswick, New Jersey.  Saint Peter's

is the employer responsible for maintaining the Saint Peter's Plan and is, therefore, the plan sponsor of the Saint Peter's Plan within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B).  Defendant Saint Peter's is designated as the "administrator" of the Saint Peter's Plan by the terms of the instrument under which the Saint Peter's Plan is operated.  In the alternative, if no administrator is designated in the documents governing the Saint Peter's Plan, Saint Peter's is the employer that establishes or maintains the Saint Peter's Plan and thus is the plan sponsor of the Saint Peter's Plan within the meaning of ERISA section 3(16)(A), 29 U.S.C. § 1002(16)(A).  Defendant Saint Peter's is also a fiduciary of the Saint Peter's Plan within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A).

26.    Defendant Ronald C. Rak.  Defendant Ronald C. Rak is the President and Chief Executive Officer of Saint Peter's.  Defendant Rak regularly communicated with Plan participants about the Saint Peter's Plan and, upon information and belief, Defendant Rak's responsibilities include fiduciary oversight of the Saint Peter's Plan.  Accordingly, Defendant Rak is a fiduciary of the Plan within the meaning of ERISA.

27.    Defendant Susan Ballestero.  Defendant Susan Ballestero is Vice President and Chief Human Relations Officer of Saint Peter's.  Defendant Ballestero regularly communicated with Plan participants about the Saint Peter's Plan and, upon information and belief, Defendant Ballestero's responsibilities include fiduciary oversight of the Saint Peter's Plan.  Accordingly, Defendant Ballestero is a fiduciary within the meaning of ERISA.

28.    Defendant Garrick Stoldt.  Defendant Garrick Stoldt is Vice President and Chief Financial Officer of Saint Peter's.  Defendant Stoldt regularly communicated with Plan participants about the Saint Peter's Plan and, upon information and belief, Defendant Stoldt's

responsibilities include fiduciary oversight of the Saint Peter's plan.  Accordingly, Defendant Stoldt is a fiduciary within the meaning of ERISA.

29.     Defendants John and Jane Does 1-20.  Defendants John and Jane Does 1-20 are individuals who through discovery are found to have fiduciary responsibilities with respect to the Saint Peter's Plan and are fiduciaries within the meaning of ERISA.  These individuals will be added by name as defendants in this action upon motion by Plaintiff at an appropriate time. Defendants Rak, Ballestero, Stoldt and John and Jane Does 1-20 are referred to herein collectively as the "Individual Defendants."

## V.     THE BACKGROUND OF THE CHURCH PLAN EXEMPTION

### A.     The Adoption of ERISA

30.     Following years of study and debate, and with broad bi-partisan support, the Congress adopted ERISA in 1974, and the statute was signed into law by President Ford on Labor Day of that year.  Among the factors that led to the enactment of ERISA were the widely publicized failures of certain defined benefit pension plans, especially the plan for employees of Studebaker Corporation, an automobile manufacturing company which defaulted on its pension obligations in 1965. *See generally* John Langbein *et al*., PENSION AND EMPLOYEE BENEFIT LAW 78-83 (2010) ("The Studebaker Incident").

31.     As originally adopted in 1974, and today, ERISA protects the retirement savings of pension plan participants in a variety of ways.  As to participants in traditional defined benefit pension plans, such as the plan at issue here, ERISA mandates, among other things, that such plans be currently funded and actuarially sound, that participants' accruing benefits vest pursuant to certain defined schedules, that the administrators of the plan report certain information to participants and to government regulators, that the fiduciary duties of prudence, diversification, loyalty, and so on apply to those who manage the plans, and that the benefits promised by the

plans be guaranteed, up to certain limits, by the Pension Benefit Guaranty Corporation. *See, e.g.*, ERISA §§ 303, 203, 101-106, 404-406, 409, 4007, 4022, 29 U.S.C. §§ 1083, 1053, 1021-1026, 1104-1106, 1109, 1307, 1322.

32.      ERISA is centered on pension plans, and particularly defined benefit pension plans, as is reflected in the very title of the Act, which addresses "retirement income security."  However, ERISA also subjects to federal regulation defined contribution pension plans (such as 401(k) plans) and welfare plans, which provide health care, disability, severance and related non-retirement benefits. ERISA § 3(34) and (1), 29 U.S.C. § 1002(34) and (1).

**B.      The Scope of the Church Plan Exemption in 1974**

33.      As adopted in 1974, ERISA provided an exemption for certain plans, in particular governmental plans and Church Plans.  Plans that met the statutory definitions were exempt from all of ERISA substantive protections for participants.  ERISA § 4(a) and (b), 29 U.S.C. § 1003(a) and (b).

34.      ERISA defined a Church Plan as a plan "established and maintained for its employees by a church or by a convention or associations of churches."[1]

35.      Under the 1974 legislation, although a Church Plan was required to be established and maintained by a church, it could also include employees of certain pre-existing agencies of such church, but only until 1982.  ERISA § 3(33)(C) (1974), 29 U.S.C. § 1002(33)(C) (1974) (current version as amended at 29 U.S.C. § 1002(33) (West 2013)).  Thus, under the 1974 legislation, a pension plan that was not established and maintained by a church could not be a Church Plan.  *Id.*

---

[1] ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A).  ERISA is codified in both the labor and tax provisions of the United States Code, titles 29 and 26 respectively.  Many ERISA provisions appear in both titles.  For example, the essentially identical definition of Church Plan in the Internal Revenue Code is found at 26 U.S.C. § 414(e).

C.      The Changes to the Church Plan Exemption in 1980

36.      Church groups had two major concerns about the definition of "Church Plan" in
ERISA as adopted in 1974.  The first, and far more important, concern was that a Church Plan
after 1982 could not include the lay employees of agencies of a church.  The second concern that
arose in the church community after 1974 was more technical.  Under the 1974 statute, all Church
Plans, single-employer or multiemployer, had to be "established and maintained" by a church or a
convention/association of churches.  This ignored the role of the churches' financial services
organizations in the day-to-day management of the pension plans.  In other words, although
Church Plans were "established" by a church, in practice they were often "maintained" by a
separate financial services organization of the church, usually incorporated and typically called a
church "pension board."

37.      These two concerns ultimately were addressed when ERISA was amended in 1980
in various respects, including a change in the definition of "Church Plan."  Multiemployer Pension
Plan Amendments Act of 1980 ("MPPAA"), P.L. 96-364.  The amended definition is current law.

38.      As to the first concern (regarding employees of agencies of a church), Congress
included a new definition of "employee" in subsection (C)(ii)(II) of section 3(33) of ERISA. 29
U.S.C. § 1002(33)(C)(ii)(II) (1980) (current version at 29 U.S.C. § 1002(33)(C)(ii)(II) (West
2013)).  As amended, an "employee" of a church or a convention/association of churches includes
an employee of an organization "which is controlled by or associated with a church or a
convention or association of churches."  *Id.*  The phrase "associated with" is then defined in
ERISA section 3(33)(C)(iv) to include only those organizations that "share[] common religious
bonds and convictions with that church or association of churches."  29 U.S.C. § 1002(33)(C)(iv)
(1980) (current version at 29 U.S.C. § 1002(33)(C)(iv) (West 2013)).  Although this new definition
of "employee" permitted a "Church Plan" to include among its participants employees of

10

organizations controlled by or associated with the church, convention, or association of churches, it remains the case that a plan covering such "employees" cannot qualify as a "Church Plan" unless it was "established by" the church, convention, or association of churches.  ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A) (West 2013).

39.     As to the second concern (regarding plans "maintained by" a separate church pension board), the 1980 amendment spoke to the issue as follows:

> A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, *the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits*, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

ERISA § 3(33)(C)(i) (1980), 29 U.S.C. § 1002(33)(C)(i) (1980) (emphasis added) (current version at 29 U.S.C. § 1002(33)(C)(i) (West 2013)).  Accordingly, under this provision, a plan "established" by a church or a convention or association of churches could retain its "Church Plan" status even if the plan was "maintained" by a distinct organization, so long as (1) "the principal purpose or function of [the organization] is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits," and (2) the organization is "controlled by or associated with" the church or convention of association of churches.  ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i) (1980) (current version at 29 U.S.C. § 1002(33)(C)(i) (West 2013)).

40.     This church "pension board" clarification has no bearing on plans that were not "established" by a church or convention or association of churches.  Thus, a plan "established" by an organization "controlled by or associated with" a church would not be a "Church Plan" because it was not "established" by a church or a convention or association of churches.

41.      Further, this "pension board" clarification has no bearing on plans that were not "maintained" by a church pension board.  Thus, even if  a plan were "established" by a church, and even if it were "maintained by" an organization "controlled by or associated with" a church, such as a school, hospital, or publishing company, it still would not be a "Church Plan" if the principal purpose of the organization was *other than* the administration or funding of the plan.  In such plans, the plan is "maintained" by the school, hospital or publishing company, and usually through the human resources department of such entity.  It is not maintained by a church pension board: No "organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits" maintains the plan.  Compare with ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i) (1980) (current version at 29 U.S.C. § 1002(33)(C)(i) (West 2013)).

42.      The requirements for Church Plan status under ERISA, both as originally adopted in 1974 and as amended in 1980, are, as explained above, very clear.  And there is no tension between the legislative history of the 1980 amendment and the amendment itself:  The Congress enacted exactly what it wanted to enact.  Fundamental to the scheme, both as originally adopted and as fine-tuned in 1980, was that neither an "affiliate" of a church (using the 1974 language) nor "an organization controlled by or associated with a church" (using the 1980 language) could *itself* establish a Church Plan.  Its employees could be *included* in a Church Plan, but if it sponsored its own plan, that was not a Church Plan.  With respect to "pension boards," the 1980 legislation simply clarified the long standing practice that churches could use their own financial organizations to manage their Church Plan.

43.      Unfortunately, in 1983, in response to a request for a private ruling, the Internal Revenue Service ("IRS") issued a short General Counsel Memorandum that misunderstood the

12

statutory framework.  The author incorrectly relied on the "pension board" clarification to conclude that a non-church entity could sponsor its own Church Plan as long as the plan was managed by some "organization" that was controlled by or associated with a church.  This of course is not what the statute says, nor what Congress intended.  In any event, this mistake was then repeated, often in verbatim language, in subsequent IRS determinations and, after 1990, in DOL determinations.  Under the relevant law, these private rulings may only be relied upon by the parties thereto, within the narrow confines of the specific facts then disclosed to the agencies, and are not binding on this Court in any event.  A few district court cases have relied on those letters to reach the same erroneous conclusion.

## VI.   SAINT PETER'S

**A.     Saint Peter's Operations.**

44.     Defendant Saint Peter's is a New Jersey not-for-profit corporation organized under, and governed by, the New Jersey Non-Profit Corporation Act, Title 15A of the New Jersey Statutes.  Saint Peter's owns Saint Peter's University Hospital and its subsidiaries and Saint Peter's Health and Management Services Corporation, which oversees a long-term care and rehabilitation facility.

45.     Saint Peter's employs more than 2,800 individuals.

46.     Saint Peter's owns a debt collection company and a captive insurance company, Risk Assurance Company in the Cayman Islands.

47.     Like other non-profit hospital systems, Saint Peter's relies upon revenue bonds to raise money.

48.     The management of Saint Peter's is comprised primarily of lay people, and Executive Officers of Saint Peter's receive compensation in line with executive officers of other

13

hospital systems.  At least nine officers or key employees received reportable compensation in excess of half a million dollars in 2010.

49.     Saint Peter's does not receive funding from the Catholic Church or other religious organizations.

50.     Saint Peter's specifically does not limit employment to those of the Catholic faith, but instead hires employees without any reference to creed or religion.

51.     Saint Peter's does not claim to be a church and it is not one.

52.     Saint Peter's sponsors a medical residency program that includes instruction in procedures forbidden by the Catholic Church, including sterilization procedures such as tubal ligation and the use of contraception.

53.     Saint Peter's does not impose its beliefs or religious practices on its clients/patients. In fact, Saint Peter's offers contact with the minister, priest, rabbi, or spiritual leader of its patients' choosing.

54.     Saint Peter's collaborates with medical institutions that claim no religious affiliation of any kind, such as Drexel University and Children's Hospital of Philadelphia.

55.     Saint Peter's purports to disclose, and not keep confidential, its own financial records.  For example, Saint Peter's is required and in some cases has voluntarily elected to comply with a broad array of elaborate state and federal regulations and reporting requirements, including Medicare and Medicaid.  In addition, Saint Peter's makes public its consolidated financial statements, which describe Saint Peter's representations as to its own operations and financial affairs.  Finally, Saint Peter's financial information is regularly disclosed to the rating agencies and the public when tax exempt revenue bonds are issued.

14

**B.** **The Saint Peter's Plan**

56.     Saint Peter's maintains the Saint Peter's Plan, which is a non-contributory defined benefit pension plan covering substantially all of Saint Peter's employees hired before July 1, 2010.  From its inception in 1974 until sometime in 2006, the Saint Peter's Plan was operated as an ERISA-covered plan.  It was funded in accordance with ERISA, met ERISA reporting requirements, and paid premiums to the Pension Benefit Guarantee Corporation ("PBGC"), the federal agency that provides pension insurance to ERISA covered plans.  Saint Peter's was also insured by the PBGC.

57.     From its inception until sometime in 2006, Saint Peter's continuously represented in Plan documents, public statements, written letters, in-person meetings, and other communications with its employees that it operated an ERISA-covered plan. For example:

- As late as January 2006, Plan participants were told that the Plan was covered under ERISA and by the PBGC.  Participants were informed that, as participants in the Plan, they were entitled to certain rights and protections under ERISA and were provided with a formal "Statement of ERISA Rights."  Plan participants were also informed that if the Plan terminated without enough money to pay all benefits, the PBGC would step in to pay pension benefits.

- Plan participants were given annual reports informing them that, with regard to ERISA's minimum funding standards, an actuary's statement showed that enough money was contributed to the plan to keep it funded in accordance with the minimum funding standards of ERISA.

58.     In 2006, Saint Peter's, for the first time in the 32-year history of its Plan, concluded that it was a church plan not subject to ERISA and filed an application for church-plan status with

the IRS.  However, even after filing for this church-plan exemption, Saint Peter's continued paying insurance premiums to the PBGC as an ERISA plan.

59.     Saint Peter's did not notify its employees of its application for church-plan status until November 2011.

60.     Shortly thereafter, John Matuska, Saint Peter's former Chief Financial Officer, Chief Operating Officer and Chief Executive Officer and a member of the Retirement Plan Committee from 1977 through 2001, informed the IRS that the Saint Peter's Plan has never been nor was it ever considered to be a Church Plan.

61.     Sometime in 2010, the Saint Peter's Plan was amended such that effective July 1, 2010, any employee hired after June 30, 2010 would not be eligible to participate in the Plan. Additionally, active participation in the Plan was frozen for any employee who terminated employment before July 1, 2010 and is rehired after that date and for any employee who terminated employment on or after July 1, 2010, unless he or she is rehired before the first anniversary of their termination.

62.     Sometime in 2012, Saint Peter's established a defined contribution plan for employees hired as of July 1, 2010.  Saint Peter's announced that the defined contribution plan would be operated as an ERISA-covered plan and would not claim Church Plan status.

63.     Saint Peter's also sponsors a health benefit plan that it operates as an ERISA-covered plan.

64.     The IRS has not issued a determination letter on Saint Peter's application for church plan status.

65.     As of December 31, 2011, the Saint Peter's Plan was underfunded by more than $70 million.

16

**1.      Saint Peter's Plan Meets the Definition of an ERISA Defined Benefit Plan**

66.      The Saint Peter's Plan is a plan, fund, or program that was established or maintained by Saint Peter's and which by its express terms and surrounding circumstances provides retirement income to employees and/or results in the deferral of income by employees to the termination of their employment or beyond.  As such, the Saint Peter's Plan meets the definition of  an "employee pension benefit plan" within the meaning of ERISA section 3(2)(A), 29 U.S.C. § 1002(2)(A).

67.      The Saint Peter's Plan does not provide for an individual account for each participant and does not provide benefits solely upon the amount contributed to a participant's account.  As such, the Saint Peter's Plan is a defined benefit plan within the meaning of ERISA section 3(35), 29 U.S.C. § 1002(35), and is not an individual account plan or a "defined contribution plan" within the meaning of ERISA section 3(34), 29 U.S.C. § 1002(34).

**2.      Saint Peter's is the Plan Sponsor, Plan Administrator and a Fiduciary; and the Individual Defendants are Fiduciaries**

68.      As an employer establishing and/or maintaining the Saint Peter's Plan, Defendant Saint Peter's is and has been the Plan Sponsor of the Saint Peter's Plan within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B), at least since 1974.

69.      Upon information and belief, at least from 2006 until the present, the terms of the instrument under which the Saint Peter's Plan is operated do not specifically designate any person as a Plan Administrator sufficient to meet the requirements of ERISA section 402, 29 U.S.C. § 1102.

70.      In the absence of a Plan Administrator specifically designated in or pursuant to any instrument governing the Plan, the Plan Sponsor of the Saint Peter's Plan under ERISA section 3(16)(A)(ii), 29 U.S.C. § 1002(16)(A)(ii), is the Plan Administrator.

17

71.     As Defendant Saint Peter's is and has been the Plan Sponsor of the Saint Peter's

Plan, Defendant Saint Peter's is also the Plan Administrator of the Plan within the meaning of

ERISA section 3(16)(A), 29 U.S.C. § 1002(16)(A).  As such, Defendant Saint Peter's also is and

has been a fiduciary with respect to the Plan within the meaning of ERISA section 3(21)(A)(iii), 29

U.S.C. § 1002(21)(A)(iii), because the Plan Administrator, by the very nature of the position, has

discretionary authority or responsibility in the administration of the Plan.

72.     Defendant Saint Peter's is also a fiduciary with respect to the Saint Peter's Plan

within the meaning of ERISA section 3(21), 29 U.S.C. § 1002(21), because it exercises

discretionary authority or discretionary control respecting management of the Saint Peter's Plan,

exercises authority and control respecting management or disposition of the Saint Peter's Plan

assets, and/or has discretionary authority or discretionary responsibility in the administration of the

Saint Peter's Plan.

73.     Defendant Rak, as the President and Chief Executive Officer of Saint Peter's, is

also a fiduciary with respect to the Saint Peter's Plan within the meaning of ERISA section 3(21),

29 U.S.C. § 1002(21), because, upon information and belief, he exercises discretionary authority or

discretionary control respecting management of the Saint Peter's Plan, exercises authority and

control respecting management or disposition of the Saint Peter's Plan assets, and/or has

discretionary authority or discretionary responsibility in the administration of the Saint Peter's

Plan.

74.     Defendant Ballestero, as the Vice President and Chief Human Resources Director

of Saint Peter's, is also a fiduciary with respect to the Saint Peter's Plan within the meaning of

ERISA section 3(21), 29 U.S.C. § 1002(21), because, upon information and belief, she exercises

discretionary authority or discretionary control respecting management of the Saint Peter's Plan,

18

exercises authority and control respecting management or disposition of the Saint Peter's Plan assets, and/or has discretionary authority or discretionary responsibility in the administration of the Saint Peter's Plan.

75.     Defendant Stoldt, as the Vice President and Chief Financial Officer of Saint Peter's, is also a fiduciary with respect to the Saint Peter's Plan within the meaning of ERISA section 3(21), 29 U.S.C. § 1002(21), because, upon information and belief, he exercises discretionary authority or discretionary control respecting management of the Saint Peter's Plan, exercises authority and control respecting management or disposition of the Saint Peter's Plan assets, and/or has discretionary authority or discretionary responsibility in the administration of the Saint Peter's Plan.

**3.      The Saint Peter's Plan Is Not a Church Plan**

76.     Saint Peter's claims the Saint Peter's Plan is a Church Plan under ERISA section 3(33), 29 U.S.C. § 1002(33), and the analogous section of the Internal Revenue Code ("IRC"), and is therefore exempt from ERISA's coverage under ERISA section 4(b)(2), 29 U.S.C. § 1003(b)(2).

**a.      Only Two Types of Plans May Qualify as a Church Plan and The Saint Peter's Plan is Neither**

77.     Under section 3(33) of ERISA, 29 U.S.C. § 1002(33), <u>only the following two types</u> of plans may qualify as a Church Plan:

- <u>First</u>, under section 3(33)(A) of ERISA, 29 U.S.C. § 1002(33)(A), a plan *established and maintained* by a church or convention or association of churches, can qualify under certain circumstances and subject to the restrictions of section 3(33)(B) of ERISA, 29 U.S.C. § 1002(33)(B); and

- <u>Second</u>, under section 3(33)(C)(i) of ERISA, 29 U.S.C. § 1002(33)(C)(i), a plan *established* by a church or by a convention or association of churches that is *maintained*

19

by an organization, *the principal purpose or function of which* is the administration or funding of a retirement plan, if such organization is controlled by or associated with a church or convention or association of churches, can qualify under certain circumstances and subject to the restrictions of section 3(33)(B) of ERISA, 29 U.S.C. § 1002(33)(B).

Both types of plans must be "established" by a church or by a convention or association of churches in order to qualify as a "Church Plan."

78.     Although other portions of ERISA section 3(33)(C) address, among other matters, who can be *participants* in Church Plans—in other words, which employees can be in Church Plans, etc.—these other portions of ERISA section 3(33)(C) do not allow any other type of *plan* to be a Church Plan.  29 U.S.C. § 1002(33)(C).  The only two types of plans that can qualify as Church Plans are those described in ERISA section 3(33)(A) and in section 3(33)(C)(i).  29 U.S.C. §§ 3(33)(A) and (C)(i).  The Saint Peter's Plan does not qualify as a Church Plan under either ERISA section 3(33)(A) or section 3(33)(C)(i).  29 U.S.C. §§ 3(33)(A) or (C)(i).

79.     First, under ERISA section 3(33)(A), a Church Plan is "a plan established and maintained for its employees by a church or by a convention or association of churches which is exempt from tax under section 501 of title 26."  ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A).

80.     The Saint Peter's Plan at issue here is not a Church Plan as defined in ERISA section 3(33)(A), 29 U.S.C. § 1002(33)(A), because the Saint Peter's Plan was established and maintained by Saint Peter's for its own employees.  Because Saint Peter's is not a church or a convention or association of churches, nor does it claim to be, the Saint Peter's Plan was not "established and maintained by" a church or by a convention or association of churches and was

20

not maintained for employees of any church or convention or association of churches.  That is the end of the inquiry under ERISA section 3(33)(A), 29 U.S.C. § 1002(33)(A).

81.    Second, under ERISA section 3(33)(C)(i), a Church Plan also includes a plan "established" by a church or by a convention or association of churches that is "maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches."  ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

82.    The Saint Peter's Plan is not a Church Plan as defined in ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because the Saint Peter's Plan was not "established" by a church or by a convention or association of churches.  Moreover, the Saint Peter's Plan does not qualify as a "Church Plan" under section 3(33)(C)(i) because it is maintained by Saint Peter's, whose principal purpose or function is not the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both.  Instead, the principal purpose of Saint Peter's is to own and operate hospitals and healthcare related entities.  This ends any argument that the Saint Peter's Plan could be a Church Plan under ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

83.    However, even if the Saint Peter's Plan had been "established" by a church and even if the principal purpose or function of Saint Peter's was the administration or funding of the Saint Peter's Plan (instead of running a hospital conglomerate), the Saint Peter's Plan still would not qualify as a Church Plan under ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because the principal purpose of the Plan is not to provide retirement or welfare benefits *to*

*employees of a church or convention or association of churches.*  Participants in the Saint Peter's Plan work for Saint Peter's, a non-profit hospital system.  Saint Peter's is not a church or convention or association of churches, and its employees are not employees of a church or convention or association of churches.

84.    Under ERISA section 3(33)(C)(ii), 29 U.S.C. § 1002(33)(C)(ii), however, an employee of a tax-exempt organization that is controlled by or associated with a church or a convention or association of churches may also be considered an employee of a church.  But the Saint Peter's Plan also fails this part of the definition, because Saint Peter's is not controlled by or associated with a church or a convention or association of churches within the meaning of ERISA.

85.    Though this fact may be disputed by Saint Peter's, Saint Peter's is not an entity that is controlled by a church or convention or association of churches.  Saint Peter's is not operated by the Catholic Church and does not receive funding from the Catholic Church.[2]

86.    Moreover, Saint Peter's is not "associated with" a church or convention or association of churches within the meaning of ERISA section 3(33)(C)(i), (ii).  29 U.S.C. § 1002(33)(C)(i), (ii).  Under ERISA section 3(33)(C)(iv), 29 U.S.C. § 1002(33)(C)(iv), an organization "is associated with a church or a convention or association of churches if it shares common religious bonds and convictions with that church or convention or association of churches."  Saint Peter's does not share common religious bonds and convictions with a church or association of churches.  Instead, it purports to share only some religious convictions with the Catholic Church, while deliberately choosing to distance itself from, and/or deny, other religious convictions of the Catholic Church when it is in its economic interest to do so, such as when it

---

[2] Notably, if Saint Peter's was "controlled by" the Catholic Church, then the Catholic Church itself would be exposed to significant potential liability stemming from medical malpractice and other legal claims related to the provision of medical care by Saint Peter's.

hires employees, sponsors a medical residency program that includes instruction of procedures forbidden by the Catholic Church, invests in various business enterprises, encourages divergent and contrary spiritual support to its patients, and collaborates with medical institutions that claim no religious affiliation of any kind.

87.     The Catholic Church insists, for example, that the mystery of Christ be a part of every facet of a Catholic healthcare ministry, including by animating health care with the Gospel of Jesus Christ and seeing death as an opportunity to have communion with Christ.  Further, the Catholic Church requires that its healthcare employees, *as a condition of employment*, agree that their services be animated by the Gospel of Jesus Christ.  Saint Peter's, however, specifically chooses not to make animation of healthcare through the Gospel of Jesus Christ a condition of employment.  In fact, Saint Peter's does not make the Catholic faith a factor in the hiring process of employees.  Instead, Saint Peter's recruits and hires from the greatest employment pool possible—one not restricted by any faith—in an attempt to hire the most qualified healthcare workers.  Saint Peter's itself sponsors a medical residency program that includes instruction in tubal ligation and contraception—practices that are considered immoral, illegal and evil by the Catholic Church.  Saint Peter's owns an insurance company incorporated in the Cayman Islands and a debt collection company, neither of which claim to be animated by the Gospel of Jesus Christ.  Perhaps most unlike a church, Saint Peter's *encourages* its clients to seek the faith of their own choosing, including Judaism, Hinduism and other faiths that the Catholic Church views as clear error.  So while Saint Peter's may purport to share common religious bonds and convictions with the Catholic Church, it in fact only *selectively chooses to share a bare few such bonds and convictions*, and ignores or abandons Catholic convictions when it is in its economic interest to do so.

88.     Accordingly, Saint Peter's is not "associated with" the Catholic Church within the meaning of ERISA section 3(33)(C)(iv), 29 U.S.C. § 1002(33)(C)(iv), and thus its employees are not "employees" of a church or a convention or association of churches within the meaning of ERISA section 3(33)(C)(ii), 29 U.S.C. § 1002(33)(C)(ii).  Because the Saint Peter's Plan was not established and maintained for the provision of retirement benefits for "employees of a church or convention or association of churches," the Saint Peter's Plan fails to qualify as a "Church Plan" under ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

89.     The Saint Peter's Plan further fails to satisfy the requirements of ERISA section 3(33)(C)(i) because this section requires the organization that maintains the plan to be "controlled by or associated with" a church or convention or associations of churches within the meaning of ERISA.  29 U.S.C. § 1002(33)(C)(i).  Thus, even if (1) the church had "established" the Saint Peter's Plan (which it did not); (2) the principal purpose of function of Saint Peter's was the administration and funding of the Saint Peter's Plan (instead of running a hospital system); and (3) Saint Peter's employees were employees of a church or a convention or association of churches (which they are not), the Saint Peter's Plan still would not qualify as a Church Plan under ERISA section 3(33)(C)(i) because – for the reasons outlined above – Saint Peter's is not *controlled by or associated with* a church or convention or association of churches with the meaning of ERISA.  29 U.S.C. § 1002(33)(C)(i).

90.     Finally, even if Saint Peter's were "controlled by or associated with" a church, and thus its employees were deemed "employees" of a church under ERISA section 3(33)(C)(ii)(2), and even if the Saint Peter's Plan was "maintained by" either a church or "pension board" satisfying the requirements of ERISA section 3(33)(C)(i), the Saint Peter's Plan would still not be a "Church Plan" because *all* "Church Plans" must be "established" by a church or by a convention

or association of churches.  29 U.S.C. § 1002(33)(A), (C)(i).  Although a church may be deemed

an "employer" of the employees of the organization that it "controls" or with which it is

"associated," *see* ERISA section 3(33)(C)(iii), 29 U.S.C. § 1002(33)(C)(iii), nothing in ERISA

provides that the church may be deemed to have "established" a retirement plan that was in fact

established by the "controlled" or "associated" organization.  Accordingly, because Saint Peter's

established the Saint Peter's Plan, the plan cannot be a "Church Plan" within the meaning of

ERISA.

> **b.  Even *if* the Saint Peter's Plan Could Otherwise Qualify as a Church Plan under ERISA Section 3(33)(A) or (C)(i),  It is Excluded From Church Plan Status under ERISA Section 3(33)(B)(ii)**

91.    Under ERISA section 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii), a plan is

specifically excluded from Church Plan status if less than substantially all of the plan participants

are members of the clergy or employed by an organization controlled by or associated with a

church or convention or association of churches.  In this case, there are more than 4,700

participants in the Saint Peter's Plan, and very nearly all of them are or were non-clergy healthcare

workers.

92.    If the more than 4,700 participants in the Saint Peter's Plan do not work for an

organization that is controlled by or associated with a church or convention or association of

churches, then even if the Saint Peter's Plan could otherwise qualify as a Church Plan under

ERISA section 3(33)(A), 29 U.S.C. § 1002(33)(A), they still would be foreclosed from Church

Plan status under section 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii).

93.    As set forth above, Saint Peter's is not controlled by a church or association of

churches, nor does it share common religious bonds and convictions with a church or association

of churches.  Instead, it purports to share only some religious convictions with the Catholic

Church, while deliberately choosing to distance itself from, and/or deny, other religious convictions of the Catholic Church, when it is in its economic interest to do so.

> **c.** **Even _if_ the Saint Peter's Plan Could Otherwise Qualify as a Church Plan under ERISA, the Church Plan Exemption, as Claimed By Saint Peter's, Violates the Establishment Clause of the First Amendment of the Constitution, and Is Therefore Void and Ineffective**

94.     The Church Plan exemption is an accommodation _for churches_ that establish and maintain pension plans, and it allows such plans to be exempt from ERISA.  As set forth in more detail below in Count VIII, the extension of that accommodation to Saint Peter's, which is not a church, violates the Establishment Clause because it harms Saint Peter's workers, puts Saint Peter's competitors at an economic disadvantage, and relieves Saint Peter's of no genuine religious burden created by ERISA.  Accordingly, the Church Plan exemption, as claimed by Saint Peter's, is void and ineffective.

## VII.   CLASS ALLEGATIONS

95.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class of persons similarly situated:  All participants or beneficiaries of any Plan operated as or claimed by Saint Peter's to be a Church Plan as of the date of the filing of this Complaint.  Excluded from the Class are any high-level executives at Saint Peter's or any employees who have responsibility or involvement in the administration of the Plan, or who are subsequently determined to be fiduciaries of the Saint Peter's Plan, including the Individual Defendants.

**A.     Numerosity**

96.     The exact number of Class members is unknown to Plaintiff at this time, but may be readily determined from records maintained by Saint Peter's.  Saint Peter's currently employs more than 2,800 individuals and there were over 4,700 participants whose benefits in the Saint

Peter's pension plan had vested when Saint Peter's made public its intention to convert to a church plan.  Upon information and belief, many of Saint Peter's current and former employees and their beneficiaries are likely members of the Class, and thus the Class is so numerous that joinder of all members is impracticable.

**B.     Commonality**

97.     The issues regarding liability in this case present common questions of law and fact, with answers that are common to all members of the Class, including (1) whether the Plan meets the definition of ERISA-covered Plan or are exempt from ERISA as Church Plan, and, if not, (2) whether the fiduciaries of the Plan have failed to administer and fund the Plan in accordance with ERISA.

98.     The issues regarding the relief are also common to the members of the Class as the relief will consist of (1) a declaration that the Plan is an ERISA covered plan; (2) an order requiring that the Plan comply with the administration and funding requirements of ERISA; and (3) an order requiring Saint Peter's to pay civil penalties to the Class, in the same statutory daily amount for each member of the Class.

**C.     Typicality**

99.     Plaintiff's claims are typical of the claims of the other members of the Class because his claims arise from the same event, practice and/or course of conduct, namely Defendants' failure to maintain the Plan in accordance with ERISA.  Plaintiff's claims are also typical because all Class members are similarly affected by Defendants' wrongful conduct.

100.     Plaintiff's claims are also typical of the claims of the other members of the Class because, to the extent Plaintiff seeks equitable relief, it will affect all Class members equally. Specifically, the equitable relief sought consists primarily of (i) a declaration that the Saint Peter's Plan is not a Church Plan; and (ii) a declaration that the Saint Peter's Plan is an ERISA covered

plan that must comply with the administration and funding requirements of ERISA.   In addition, to the extent Plaintiff seeks monetary relief, it is for civil fines to the Class in the same statutory daily amount for each member of the Class.

101.    Saint Peter's does not have any defenses unique to Plaintiff's claims that would make Plaintiff's claims atypical of the remainder of the Class.

**D.      Adequacy**

102.    Plaintiff will fairly and adequately represent and protect the interests of all members of the Class.

103.    Plaintiff does not have any interests antagonistic to or in conflict with the interests of the Class.

104.    Defendant Saint Peter's and the Individual Defendants have no unique defenses against Plaintiff that would interfere with Plaintiff's representation of the Class.

105.    Plaintiff has engaged counsel with extensive experience prosecuting class actions in general and ERISA class actions in particular.

**E.      Rule 23(b)(1) Requirements.**

106.    The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

107.    The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede the ability of other members of the Class to protect their interests.

**F.     Rule 23(b)(2) Requirements.**

108.    Class action status is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

**G.     Rule 23(b)(3) Requirements.**

109.    If the Class is not certified under Rule 23(b)(1) or (b)(2) then certification under (b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members.  The common issues of law or fact that predominate over any questions affecting only individual members include: (1) whether the Plan is exempt from ERISA as Church Plan, and, if not, (2) whether the fiduciaries of the Plan have failed to administer and fund the Plan in accordance with ERISA; and (3) whether the Church Plan exemption, as claimed by Saint Peter's, violates the Establishment Clause of the First Amendment.  A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

      A.     Individual class members do not have an interest in controlling the prosecution of these claims in individual actions rather than a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plan or affect each class member equally;

      B.     Individual Class members also do not have an interest in controlling the prosecution of these claims because the monetary relief that they could seek in any individual action is identical to the relief that is being sought on their behalf herein;

      C.      There is no other litigation begun by any other Class members concerning the issues raised in this litigation;

D.     This litigation is properly concentrated in this forum, which is where

Defendant Saint Peter's is headquartered; and

E.     There are no difficulties managing this case as a class action.

## VIII.   CAUSES OF ACTION

### COUNT I
### (Claim for Equitable Relief Pursuant to ERISA Section 502(A)(3) Against Defendant Saint Peter's)

110.     Plaintiff repeats and re-alleges the allegations contained in all foregoing paragraphs

herein.

111.     ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or

beneficiary to bring a civil action to obtain "appropriate equitable relief . . .  to enforce any

provisions of this title."  Pursuant to this provision, and 28 U.S.C. §§ 2201 and 2202, and Federal

Rule of Civil Procedure 57, Plaintiff seeks declaratory relief that the Saint Peter's Plan is not a

Church Plan within the meaning of ERISA section 3(33), 29 U.S.C. § 1002(33), and thus is subject

to the provisions of Title I and Title IV of ERISA.

112.     ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), also authorizes a participant or

beneficiary to bring a civil action to "(A) to enjoin any act or practice which violates any provision

of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress

such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

Pursuant to these provisions, Plaintiff seeks orders directing the Saint Peter's Plan's sponsor and

administrator, Saint Peter's, to bring the Saint Peter's Plan into compliance with ERISA, including

the reporting, vesting, and funding requirements of Parts 1, 2 and 3 of ERISA, 29 U.S.C. §§ 1021-

31, 1051-61, 1081-85.

113.     As the Saint Peter's Plan is not a Church Plan within the meaning of ERISA section

3(33), 29 U.S.C. § 1002(33), and meets the definition of a pension plan under ERISA section 3(2),

29 U.S.C. § 1002(2), the Saint Peter's Plan should be declared to be an ERISA-covered pension plan, and the Saint Peter's Plan sponsor, Saint Peter's, should be ordered to bring the Saint Peter's Plan into compliance with ERISA, including by remedying the violations set forth below.

### COUNT II
### (Claim for Violation of Reporting and Disclosure Provisions Against Defendant Saint Peter's)

114.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

### A.    Summary Plan Descriptions

115.    Since at least 2006, Saint Peter's has failed to provide Plaintiff or any member of the Class with a Summary Plan Description with respect to the Saint Peter's Plan that meets the requirements of ERISA section 102, 29 U.S.C. § 1022, and the regulations promulgated thereunder.

116.    Because Saint Peter's has been the Plan Administrator of the Plan at all relevant times, it violated ERISA section 104, 29 U.S.C. § 1024, by failing to provide Plaintiff and members of the Class with adequate Summary Plan Descriptions.

### B.    Annual Reports

117.    Since at least 2006, Saint Peter's has failed to file an annual report with respect to the Saint Peter's Plan with the Secretary of Labor in compliance with ERISA section 103, 29 U.S.C. § 1023, or a Form 5500 and associated schedules and attachments which the Secretary has approved as an alternative method of compliance with ERISA section 103, 29 U.S.C. § 1023.

118.    Because Saint Peter's has been the Plan Administrator of the Saint Peter's Plan at all relevant times, Saint Peter's has violated ERISA section 104(a), 29 U.S.C. § 1024(a), by failing to file annual reports with respect to the Saint Peter's Plan with the Secretary of Labor in compliance with ERISA section 103, 29 U.S.C. § 1023, or Form 5500s and associated schedules

31

and attachments that the Secretary has approved as an alternate method of compliance with ERISA section 103, 29 U.S.C. § 1023.

### C.     Summary Annual Reports

119.    Since at least 2006, Saint Peter's has failed to furnish Plaintiff or any member of the Class with a Summary Annual Report with respect to the Saint Peter's Plan in compliance with ERISA section 104(b)(3) and regulations promulgated thereunder.  29 U.S.C. § 1024(b)(3).

120.    Because Saint Peter's has been the Plan Administrator of the Saint Peter's Plan at all relevant times, Saint Peter's has violated ERISA section 104(b)(3), 29 U.S.C. § 1024(b)(3), by failing to furnish Plaintiff or any member of the Class with a Summary Annual Report with respect to the Saint Peter's Plan in compliance with ERISA section 104(b)(3) and regulations promulgated thereunder.  29 U.S.C. § 1024(b)(3).

### D.     Notification of Failure to Meet Minimum Funding

121.    At no time has Saint Peter's furnished Plaintiff or any member of the Class with a Notice with respect to the Saint Peter's Plan pursuant to ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1), informing them that Saint Peter's had failed to make payments required to comply with ERISA section 302, 29 U.S.C. § 1082, with respect to the Saint Peter's Plan.

122.    Defendant Saint Peter's has been the employer that established and/or maintained the Saint Peter's Plan.

123.    Since at least 2006, Defendant Saint Peter's has failed to fund the Saint Peter's Plan in accordance with ERISA section 302, 29 U.S.C. § 1082.

124.    As the employer maintaining the Saint Peter's Plan, Defendant Saint Peter's has violated ERISA section 302, 29 U.S.C. § 1082, by failing to fund the Saint Peter's Plan, is liable for its own violations of ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1), and as such may be

required by the Court to pay Plaintiff and each class member up to $110 per day (as permitted by

29 C.F.R. section 2575.502(c)(3)) for each day that Defendant has failed to provide Plaintiff and

each Class member with the notice required by ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1).

### E.       Funding Notices

125.     At no time has Saint Peter's furnished Plaintiff or any member of the Class with a

Funding Notice with respect to the Saint Peter's Plan pursuant to ERISA section 101(f), 29 U.S.C.

§ 1021(f).

126.     At all relevant times, Defendant Saint Peter's has been the administrator of the

Saint Peter's Plan.

127.     As the administrator of the Saint Peter's Plan, Defendant Saint Peter's has violated

ERISA section 101(f) by failing to provide each participant and beneficiary of the Saint Peter's

Plan with the Funding Notice required by  ERISA section 101(f), and as such may be required by

the Court to pay Plaintiff and each class member up to $110 per day (as permitted by 29 C.F.R.

section 2575.502(c)(3)) for each day that Defendant has failed to provide Plaintiff and each Class

member with the notice required by ERISA section 101(f).  29 U.S.C. § 1021(f).

### F.       Pension Benefit Statements

128.     Since at least 2006, Saint Peter's has not furnished Plaintiff or any member of the

Class with a Pension Benefit Statement with respect to the Saint Peter's Plan pursuant to ERISA

section 105(a)(1), 29 U.S.C. § 1025(a)(1).

129.     At all relevant times, Defendant Saint Peter's has been the administrator of the

Saint Peter's Plan.

130.     As the administrator of the Saint Peter's Plan, Defendant Saint Peter's has violated

ERISA section 105(a)(1) and as such may be required by the Court to pay Plaintiff and each Class

member up to $110 per day (as permitted by 29 C.F.R. section 2575.502(c)(3)) for each day that

Defendant has failed to provide Plaintiff and each Class member with the Pension Benefit

Statements  required by ERISA section 105(a)(1).  29 U.S.C. § 1025(a)(1).

## COUNT III
### (Claim for Failure to Provide Minimum Funding Against Defendant Saint Peter's)

131.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if

fully set forth herein.

132.    ERISA section 302, 29 U.S.C. § 1082, establishes minimum funding standards for

defined benefit plans that require employers to make minimum contributions to their plans so that

each plan will have assets available to fund plan benefits if the employer maintaining the plan is

unable to pay benefits out of its general assets.

133.    As the employer maintaining the Plan, Saint Peter's was responsible for making the

contributions that should have been made pursuant to ERISA section 302, 29 U.S.C. § 1082, at a

level commensurate with that which would be required under ERISA.

134.    Since at least 2006, Saint Peter's has failed to make contributions in satisfaction of

the minimum funding standards of ERISA section 302, 29 U.S.C. § 1082.

135.    By failing to make the required contributions to the Saint Peter's Plan, either in

whole or in partial satisfaction of the minimum funding requirements established by ERISA

section 302, Defendant Saint Peter's has violated ERISA section 302.  29 U.S.C. § 1082.

## COUNT IV
### (Claim for Failure to Establish the Plan Pursuant to a Written Instrument Meeting the Requirements of ERISA Section 402 Against Defendant Saint Peter's)

136.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if

fully set forth herein.

137.    ERISA section 402, 29 U.S.C. § 1102, provides that every plan will be established pursuant to a written instrument which will provide among other things "for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan" and will "provide a procedure for establishing and carrying out a funding policy and method constituent with the objectives of the plan and the requirements of [Title I of ERISA]."

138.    Although the benefits provided by the Saint Peter's Plan were described to the employees and retirees of Saint Peter's (and/or its affiliates and subsidiaries) in various written communications, the Saint Peter's Plan has not been established pursuant to a written instrument meeting the requirements of ERISA section 402, 29 U.S.C. § 1102.

139.    As Defendant Saint Peter's has been responsible for maintaining the Saint Peter's Plan and has amendment power over the Saint Peter's Plan, Defendant Saint Peter's violated section 402 by failing to promulgate written instruments in compliance with ERISA section 402 to govern the Saint Peter's Plan operations and administration.  29 U.S.C. § 1102.

**COUNT V**
**(Claim for Failure to Establish a Trust Meeting the Requirements of ERISA Section 402**
**Against Defendant Saint Peter's)**

140.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

141.    ERISA section 403, 29 U.S.C. § 1103, provides, subject to certain exceptions not applicable here, that all assets of an employee benefit plan shall be held in trust by one or more trustees, that the trustees shall be either named in the trust instrument or in the plan instrument described in section 402(a), 29 U.S.C. § 1102(a), or appointed by a person who is a named fiduciary.

142.    Although the Saint Peter's Plan assets have been held in trust, the trust does not meet the requirements of ERISA section 403, 29 U.S.C. § 1103.

143.    As Defendant Saint Peter's has been responsible for maintaining the Saint Peter's Plan and has amendment power over the Saint Peter's Plan, Defendant Saint Peter's violated section 403 by failing to put the Saint Peter's Plan assets in trust in compliance with ERISA section 403.  29 U.S.C. § 1103.

## COUNT VI
**(Claim for Civil Money Penalty Pursuant to ERISA Section 502(a)(1)(A) Against Defendant Saint Peter's)**

144.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

145.    ERISA section 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), provides that a participant may bring a civil action for the relief provided in ERISA section 502(c), 29 U.S.C. § 1132(c).

146.    ERISA section 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. section 2575.502c-3, provides that an employer maintaining a plan who fails to meet the notice requirement of ERISA section 101(d), 29 U.S.C. § 1021(d), with respect to any participant and beneficiary may be liable for up to $110 per day from the date of such failure.

147.    ERISA section 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. section 2575.502c-3, provides that an administrator of a defined benefit pension plan who fails to meet the notice requirement of ERISA section 101(f), 29 U.S.C. § 1021(f), with respect to any participant and beneficiary may be liable for up to $110 per day from the date of such failure.

148.    ERISA section 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. section 2575.502c-3, provides that an administrator of a defined benefit pension plan who fails to provide a Pension Benefit Statement at least once every three years to a  participant with a nonforfeitable accrued benefit who is employed by the employer maintaining the plan at the time the statement

36

is to be furnished as required by ERISA section 105(a), 29 U.S.C. § 1025(a), may be liable for up to $110 per day from the date of such failure.

149.   As Defendant Saint Peter's is the employer maintaining the Saint Peter's Plan and the Saint Peter's Plan Administrator and has failed to give the notices required by ERISA section 101(d) and (f), 29 U.S.C. § 1021(d) and (f), and the Pension Benefit Statement required by ERISA section 105(a), 29 U.S.C. § 1025(a), as set forth in Count II Subparts D through F, Defendant Saint Peter's is liable to  Plaintiff and each member of the Class in an amount up to $110 per day from the date of such failures until such time that notices are given and the statement is provided, as the Court, in its discretion, may order.

## COUNT VII
### (Claim for Breach of Fiduciary Duty Against All Defendants)

150.   Plaintiff incorporates and realleges by reference the foregoing paragraphs as if fully set forth herein.

151.   Plaintiff brings this Count VII for breach of fiduciary duty pursuant to ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2).

**A.     Breach of the Duty of Prudence and Loyalty**

152.   ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1), provides in pertinent part that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

(a)     for the exclusive purpose of:

(i)     providing benefits to participants and beneficiaries; and

(ii)     defraying reasonable expenses of administering the plan;

(b)     with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such

37

matters would use in the conduct of an enterprise of a like character and with like

aims . . . [and]

(c)     in accordance with the documents and instruments governing the plan

insofar as such documents and instruments are consistent with the provisions of this

[title I of ERISA] and title IV.

153.    As fiduciaries with respect to the Saint Peter's Plan, Defendants had the authority to enforce each provision of ERISA alleged to have been violated in the foregoing paragraphs pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3).  Having the authority to enforce the provisions of ERISA at those respective times, ERISA section 404(a)(1)(A)-(D), 29 U.S.C. § 1104(a)(1)(A)-(D), imposed on Defendants the respective duty to enforce those provisions in the interest of the participants and beneficiaries of the Saint Peter's Plan during the times that each was a fiduciary of the Saint Peter's Plan.

154.    Since at least 2006, Defendants have not enforced any of the provisions of ERISA set forth in Counts I-V with respect to the Saint Peter's Plan.

155.    By failing to enforce the provisions of ERISA set forth in Counts I-V, Defendants breached the fiduciary duties that they owed to Plaintiff and the Class.

156.    The failure of Defendants to enforce the funding obligations owed to the Plan has resulted in a loss to the Saint Peter's Plan equal to the foregone funding and earnings thereon, and profited Defendant Saint Peter's by providing it the use of money owed to the Saint Peter's Plan for its general business purposes.

**B.      Prohibited Transactions**

157.    ERISA section 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to extend credit to a party in interest, as

defined in ERISA section 3(14), 29 U.S.C. § 1002(14), if he or she knows or should know that such transaction constitutes an extension of credit to a party in interest.

158.    ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to use assets for the benefit of a party in interest, if he or she knows or should know that such transaction constitutes a use of plan assets for the benefit of a party in interest.

159.    ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits the use of plan assets by a fiduciary with respect to a plan in his or her own interest or for his or her own account.

160.    As fiduciaries with respect to the Plan and, with respect to Saint Peter's, as an employer of employees covered by the Plan, and, with respect to Defendants Rak, Ballestero and Stoldt, as Officers of Saint Peter's, the Defendants at all relevant times were parties in interest with respect to the Saint Peter's Plan pursuant to ERISA section 3(14)(A) and (C), 29 U.S.C. § 1002(14)(A) and (C).

161.    By failing to enforce the funding obligations created by ERISA and owed to the Plan, Defendants extended credit from the Saint Peter's Plan to Saint Peter's in violation of ERISA section 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), when Defendants knew or should have known that their failure to enforce the funding obligation constituted such an extension of credit.

162.    By failing to enforce the funding obligations created by ERISA and owed to the Saint Peter's Plan, Defendants used Saint Peter's Plan assets for Saint Peter's own benefit, when Defendants knew or should have known that their failure to enforce the funding obligations constituted such a use of Saint Peter's Plan assets, in violation of ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

163.     By failing to enforce the funding obligations created by ERISA and owed to the Saint Peter's Plan, Defendants used Saint Peter's Plan assets in Saint Peter's interest in violation of ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1).

164.     The failure of Defendants to enforce the funding obligations owed to the Saint Peter's Plan has resulted in a loss to the Saint Peter's Plan equal to the foregone funding and earnings thereon.

165.     The failure of Defendants to enforce the funding obligations owed to the Saint Peter's Plan has profited Defendant Saint Peter's by providing it the use of money owed to the Saint Peter's Plan for its general business purposes.

## COUNT VIII
### (Claim for Declaratory Relief That the Church Plan Exemption, as Claimed By Saint Peter's, Violates the Establishment Clause of the First Amendment of the Constitution, and Is Therefore Void and Ineffective)

166.     Plaintiff incorporates and realleges by reference the foregoing paragraphs as if fully set forth herein.

167.     The Establishment Clause of the First Amendment of the Constitution mandates governmental neutrality between religion and nonreligion. U.S. Const. Amend. I.  The ERISA Church Plan exemption is an accommodation that exempts churches and associations of churches, under certain circumstances, from compliance with ERISA.  The ERISA Church Plan exemption, as claimed by Saint Peter's, is an attempt to extend the accommodation beyond churches and associations of churches, to Saint Peter's—a non-profit hospital conglomerate.  That extension violates the Establishment Clause because it harms Saint Peter's workers, puts Saint Peter's competitors at an economic disadvantage, and relieves Saint Peter's of no genuine religious burden created by ERISA.

A.     Workers are Harmed.  Employers, including Saint Peter's, legally are not required to provide pensions; instead, they choose to provide pensions in order to reap tax rewards and attract and retain employees in a competitive labor market.  Saint Peter's hires without regard to the religious faith of prospective employees; indeed, any choice of faith, or lack thereof, is not a factor in the recruiting and hiring of Saint Peter's employees.  Thus, as a practical matter, and by Saint Peter's own design, its pension plan participants include people of a vast number of divergent faiths, as well as those who belong to no faith.  To be constitutional, an accommodation such as the Church Plan exemption must not impose burdens on nonadherents without due consideration of their interests.  The Church Plan exemption, as invoked by Saint Peter's, places its longtime employees' justified reliance on their pension benefits at great risk, including because the Plan is underfunded by over $70 million.  In addition, Saint Peter's fails to provide the multitude of other ERISA protections designed to safeguard the pensions.  The Church Plan exemption, as applied by Saint Peter's, provides no consideration of the harm to Saint Peter's more than 4,700 Plan participants, including all of those that are non-Catholic.

B.     Rivals are Disadvantaged.  Saint Peter's commercial rivals face substantial disadvantages in their competition with Saint Peter's because the rivals must use their current assets to fully fund their pension plan obligations and provide the other ERISA protections.  To be constitutional, an accommodation such as the Church Plan exemption must take adequate account of any disadvantage it creates for nonbeneficiaries.  The Church Plan exemption, as applied by Saint Peter's, provides no consideration of the disadvantage it creates for Saint Peter's competitors.

C.      No Genuine Religious Burden is Relieved.  Saint Peter's claims the Church

Plan exemption to lighten its pension obligations and liabilities, not to adhere to a religious

faith.  To be constitutional, an accommodation such as the Church Plan exemption, which

exempts compliance with ERISA, must relieve a genuine burden upon the recipient's

*religious practice*.  The Church Plan exemption, as claimed by Saint Peter's, responds to no

genuine burden created by ERISA on any Saint Peter's religious practice.

168.    Plaintiff seeks a declaration by the Court that the Church Plan exemption, as

claimed by Saint Peter's, is an unconstitutional accommodation under the Establishment Clause of

the First Amendment, and is therefore void and ineffective.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants on all

claims and requests that the Court award the following relief:

A.      Declaring that the Saint Peter's Plan is an employee benefit plan within the meaning

of ERISA section 3(2), 29 U.S.C. § 1002(2), is a defined benefit pension plan within the meaning

of ERISA section 3(35), 29 U.S.C. § 1002(35), and is not a Church Plan within the definition of

section 3(33) of ERISA, 29 U.S.C. § 1002(33).  Ordering Saint Peter's to reform the Saint Peter's

Plan to bring the Saint Peter's Plan into compliance with ERISA and to have the Saint Peter's Plan

comply with ERISA including as follows:

1.      Revising Plan documents to reflect that the Plan is a defined benefit plan

regulated by ERISA.

2.      Requiring Saint Peter's to fund the Saint Peter's Plan in accordance with

ERISA's funding requirements, disclose required information to the Saint Peter's Plan

participants and beneficiaries, and otherwise comply with all other reporting, vesting, and

funding requirements of Parts 1, 2 and 3 of Title I of ERISA, 29 U.S.C. §§ 1021-31, 1051-61, 1081-85.

3.      Reforming the Saint Peter's Plan to comply with ERISA's vesting and accrual requirements and providing benefits in the form of a qualified joint and survivor annuity.

4.      Requiring the adoption of an instrument governing the Saint Peter's Plan that complies with ERISA section 402, 29 U.S.C. § 1102.

5.      Requiring Saint Peter's to comply with ERISA reporting and disclosure requirements, including by filing Form 5500 reports, distributing ERISA-compliant Summary Plan Descriptions, Summary Annual Reports and Participant Benefit Statements, and providing Notice of the Saint Peter's Plan funding status and deficiencies.

6.      Requiring the establishment of a Trust in compliance with ERISA section 403, 29 U.S.C. § 1103.

B.      Requiring Saint Peter's, as a fiduciary of the Plan, to make the Saint Peter's Plan whole for any losses and disgorge any Saint Peter's profits accumulated as a result of fiduciary breaches.

C.      Appointing an Independent Fiduciary to hold the Saint Peter's Plan assets in trust, to manage and administer the Saint Peter's Plan and their assets, and to enforce the terms of ERISA.

D.      Requiring Saint Peter's to pay a civil money penalty of up to $110 per day to Plaintiff and each Class member for each day it failed to inform Plaintiff and each Class member of its failure to properly fund the Plan.

E.      Requiring Saint Peter's to pay a civil money penalty of up to $110 per day to Plaintiff and each Class member for each day it failed to provide Plaintiff and each Class member with a Funding Notice.

F.      Requiring Saint Peter's to pay a civil money penalty of up to $110 per day to Plaintiff and each Class member for each day it failed to provide a benefit statement under ERISA section 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B).

G.      Ordering declaratory and injunctive relief as necessary and appropriate, including enjoining the Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA, with respect to the Saint Peter's Plan.

H.      Declaring with respect to Count VIII, that the Church Plan exemption, as claimed by Saint Peter's, is an unconstitutional accommodation under the Establishment Clause of the First Amendment, and is therefore void and ineffective.

I.      Awarding to Plaintiff attorneys' fees and expenses as provided by the common fund doctrine, ERISA section 502(g), 29 U.S.C. § 1132(g) and/or other applicable doctrine.

J.      Awarding to Plaintiff taxable costs pursuant to ERISA section 502(g), 29 U.S.C. § 1132(g), 28 U.S.C. § 1920, and other applicable law.

K.      Awarding to Plaintiff pre-judgment interest on any amounts awarded pursuant to law.

L.      Awarding, declaring or otherwise providing Plaintiff and the Class all relief under ERISA section 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper.

DATED May 7, 2013.


COHEN MILSTEIN SELLERS & TOLL PLLC

44

/s/ Daniel S. Sommers
Daniel S. Sommers (DS-1492)
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
Tel: (202) 408-4600
Fax: (202) 408-4699
Email:  dsommers@cohenmilstein.com

Karen L. Handorf
Monya M. Bunch
Matthew A. Smith
Bruce F. Rinaldi
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
Tel: (202) 408-4600
Fax: (202) 408-4699
Email:  khandorf@cohenmilstein.com
        mbunch@cohenmilstein.com
        msmith@cohenmisltein.com
        brinaldi@cohenmilstein.com

KELLER ROHRBACK L.L.P.
Lynn Lincoln Sarko
Havila Unrein
Matthew M. Gerend
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900
Fax: (206) 623-3384
Email:  lsarko@kellerrohrback.com
        hunrein@kellerrohrback.com
        mgerend@kellerrohrback.com

KELLER ROHRBACK P.L.C.
Ron Kilgard
Laurie Ashton
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088
Fax: (602) 248- 2822
Email:  rkilgard@kellerrohrback.com
        lashton@kellerrohrback.com

*Attorneys for Plaintiffs*