<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

———————————————————

LAURENCE KAPLAN, on behalf of himself, : 
individually, and on behalf of others similarly :
situated,                                                          :
                                                                      :
                            Plaintiff,                         :
                                                                      :          Civil Action No. 13-2941 (MAS)(TJB)
                 v.                                             :
                                                                      :
SAINT PETER'S HEALTHCARE SYSTEM, :          **MEMORANDUM OPINION**
RONALD C. RAK, an individual, SUSAN      :
BALLESTERO, an individual, GARRICK        :
STOLDT, an individual, and JOHN and JANE:
DOES, each an individual, 1-20,                :
                                                                      :
                            Defendants.                       :
———————————————————:

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon the motions of Defendants Saint Peter's Healthcare System, Ronald C. Rak, Susan Ballestero, and Garrick Stoldt (collectively, "SPHS" or "Defendants") pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). (Defs.' Br., ECF No. 42-1.) Plaintiff Laurence Kaplan ("Plaintiff" or "Mr. Kaplan") opposed Defendants' motions (Pl.'s Opp'n, ECF No. 48) and Defendants replied (Defs.' Reply, ECF No. 54).

Plaintiff brought this putative class action on behalf of participants and beneficiaries of the Saint Peter's Healthcare System Retirement Plan (the "Plan"), alleging that the Plan is being improperly maintained by SPHS as a "church plan" under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. This case requires the Court to determine the metes and bounds of ERISA's church plan exemption, as defined in 29 U.S.C. § 1002(33). The Court, in particular, must determine whether a non-profit healthcare corporation may establish and maintain a church plan if it is controlled by or associated with a church. If answered in the

affirmative, the Court must then determine whether this interpretation of the church plan definition violates the Establishment Clause of the United States Constitution.

After carefully considering the Parties' submissions and hearing oral argument on March 27, 2014, the Court holds that, as a matter of law, SPHS's employee pension Plan is not a church plan. Therefore, for the reasons set forth below and other good cause shown, Defendants' Motion to Dismiss is DENIED.

## I.   BACKGROUND

### A.   Overview of the Employee Retirement Income Security Act

In 1974, Congress passed ERISA, which "is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). It is a federal law that regulates private industry pension plans, retirement plans, profit-sharing plans and health insurance coverage. For such plans, ERISA establishes rules and minimum standards that are meant to protect plan participants. Nothing in ERISA mandates employers to create these plans; it only sets the standards for those that choose to establish them.

In alignment with its purpose, ERISA "seek[s] to ensure that employees will not be left empty handed once employers have guaranteed them certain benefits." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). "To increase the chances that employers will be able to honor their benefits commitments—that is, to guard against the possibility of bankrupt pension funds—Congress incorporated several key measures into ERISA." *Id.* These measures include, among other things, minimum funding and vesting requirements for all ERISA covered plans and rules concerning reporting, disclosures, and fiduciary responsibilities. *See, e.g.*, 29 U.S.C. § 1082.

Although private sector employee benefit plans typically come under ERISA's purview, there are limited exemptions. One such exemption is the church plan. Church plans were

exempted from ERISA because the examination of a church's books by the government might be regarded as "an unjustified invasion of the confidential relationship that is believed to be appropriate with regard to churches and their religious activities." Report of Senate Finance Comm., No. 93-383 (Aug. 21, 1973). As a result, a church plan is exempt from ERISA's requirements unless an election is made under the Internal Revenue Code ("IRC"), 26 U.S.C. § 410(d). 29 U.S.C. § 1003(b)(2).

### B.    The Plan

SPHS is a non-profit healthcare corporation headquartered in New Brunswick, New Jersey. (Compl., ECF No. 1, ¶¶ 25, 44.) According to Plaintiff, SPHS does not receive funding from the Catholic Church or other religious entities but, instead, relies on revenue bonds to raise money. (*Id.* ¶¶ 47, 49, 85.) SPHS owns Saint Peter's University Hospital and Saint Peter's Health and Management Services Corporation, among other companies. (*Id.* ¶ 44.) SPHS employs over 2,800 people and, in 1974, established the Plan, which is a non-contributory defined benefit pension plan. (*Id.* ¶¶ 25, 45, 56, 68; *see also id.* ¶¶ 61-62, 66-67, 70-72.) For over thirty years, the Plan was operated as an ERISA plan—meaning, it complied with ERISA's requirements regarding funding, reporting, and insurance premiums paid to the Pension Benefit Guarantee Corporation ("PBGC")—and represented such to its employees via Plan documents and other written materials. (*Id.* ¶¶ 56-57.)

In 2006, during the rise of the nationwide economic downturn, SPHS "concluded that [its Plan] was a church plan" and proceeded to file an application for church-plan status with the Internal Revenue Service ("IRS"). (*Id.* ¶ 58.) Meanwhile, SPHS continued to pay insurance premiums to PBGC as an ERISA plan. (*Id.*) Notwithstanding its IRS application, SPHS waited until November 2011 to notify its employees of its application for church-plan status. (*Id.* ¶ 59.)

On August 14, 2013, in a private letter ruling, the IRS concluded that SPHS's Plan is a church plan as defined in ERISA.[1] (Stoldt Supplemental Cert., ECF No. 45-1, Ex. A.)

### C.    Plaintiff's Grievance

Mr. Kaplan is one of many current or former employees of SPHS purportedly affected by SPHS's alleged conversion of its Plan from an ERISA plan to a church plan, exempt from ERISA. (Compl. ¶ 24.) Mr. Kaplan worked for SPHS from 1985-1999. (*Id.*) He is a participant in the Plan maintained by SPHS because he is or will be eligible for pension benefits under the Plan. (*Id.*) Mr. Kaplan brings this action, pursuant to Rule 23(b)(1) and (b)(2), on behalf of himself and others who are participants or beneficiaries of "any Plan operated or claimed by [SPHS] to be a [c]hurch [p]lan as of [May 7, 2013,]" the date of the Complaint. (*Id.* ¶ 95.)

Plaintiff's principal grievance is that SPHS is improperly maintaining its Plan to the detriment of its employees. (*Id.* ¶ 2.) Strictly speaking, he alleges that SPHS is employing church-plan status to evade ERISA's various requirements including underfunding the Plan by over $70 million. (*Id.* ¶¶ 14, 65.) Mr. Kaplan's concerns are manifested in his eight-count Complaint, alleging various ERISA violations including violations of ERISA's requirements for reporting and disclosure, minimum funding, establishment of a trust, and for breach of fiduciary duties. He seeks, among other things, an order declaring that the Plan is not a church plan exempt from ERISA or, in the alternative, that the church plan exemption, as claimed by SPHS, is an unconstitutional accommodation under the Establishment Clause.[2]

---

[1] SPHS received this ruling after the Complaint was filed.

[2] The United States has filed a Notice to Intervene regarding Plaintiff's constitutional claim. (ECF No. 56.)

## II.   <u>DISCUSSION</u>

Defendants move to dismiss Plaintiff's claims on two grounds: (1) lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), for Plaintiff's claims arising under ERISA; and (2) failure to state a claim for which relief can be granted, pursuant to Rule 12(b)(6), regarding Plaintiff's Establishment Clause claim. The Court will address each ground, in turn.

### A.    The Court Has Subject Matter Jurisdiction of Plaintiff's ERISA Claims

Before proceeding to review the merits of a case, the Court has a duty to assure itself that it has subject matter jurisdiction. Plaintiff alleges that the Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) for his claims brought under Title I of ERISA and 28 U.S.C. § 1331 based on a federal question. (Compl. ¶ 19.) Defendants do not dispute the Court's federal question jurisdiction as to Plaintiff's constitutional claim, but instead challenge subject matter jurisdiction of Plaintiff's ERISA claims. (Defs.' Br. 14.)

A defendant may challenge the court's subject matter jurisdiction with either a facial or factual attack. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000), *modified by Simon v. United States*, 341 F.3d 193, 195 (3d Cir. 2003). Defendants have launched a factual attack, appending various extrinsic certifications and exhibits to their motion. (*See* ECF No. 42.) The extrinsic documents purportedly support their position that SPHS's Plan is a church plan exempt from ERISA and, therefore, outside of this Court's subject matter jurisdiction. (*See* Defs.' Br. 14-33.)

As amended in 1980, the current definition of a church plan provides, in pertinent part:

(A) The term "church plan" means a plan established and maintained (to the extent required in clause (ii) of subparagraph (B)) for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of Title 26.

* * * *

(C) For purposes of this paragraph--

(i) A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

(ii) The term employee of a church or a convention or association of churches includes--

(I) a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry, regardless of the source of his compensation;

(II) an employee of an organization, whether a civil law corporation or otherwise, which is exempt from tax under section 501 of Title 26 and which is controlled by or associated with a church or a convention or association of churches; and

(III) an individual described in clause (v).

(iii) A church or a convention or association of churches which is exempt from tax under section 501 of Title 26 shall be deemed the employer of any individual included as an employee under clause (ii).

(iv) An organization, whether a civil law corporation or otherwise, is associated with a church or a convention or association of churches if it shares common religious bonds and convictions with that church or convention or association of churches.

* * * *

29 U.S.C. § 1002(33).[3]

1.    Parties' Positions

According to SPHS, its Plan is a church plan exempt from ERISA for two primary reasons: (1) because SPHS and its Retirement Plan Committee, charged with maintenance of the Plan, are controlled by and associated with the Roman Catholic Church, as outlined under § 1002(33)(C)(i); and (2) because SPHS's employees are considered employees of the Roman Catholic Church under § 1002(33)(C)(ii)(II). (Defs.' Br. 1, 21.)

---

[3] The IRC contains a virtually identical definition. *See* 26 U.S.C. § 414(e).

At the base of SPHS's factual assertions, however, is a significant legal one: that a pension plan established and maintained by a tax exempt corporation controlled by or associated with a church is a church plan. (Defs.' Br. 15.) Plaintiff not only disputes Defendants' factual assertions, but his interpretation of the church plan definition differs in that he reads the definition as allowing only a church or a convention or association of churches—which SPHS is not—to establish and maintain a church plan. (Pl.'s Opp'n 1-2.) Despite their different interpretations of the church plan definition, neither party asserts that the definition is ambiguous. (*See* Defs.' Br. 17; Pl.'s Opp'n 10-11.)

The Parties' dispute is one centered on, and resolved by, the statutory construction of ERISA's church plan definition, to which the Court now turns.

2.    <u>SPHS's Plan is Not a Church Plan</u>

When interpreting a statute, a court "must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). To ascertain Congress' intent, the Court "begin[s] with the language of the statute. The first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)); *accord United States v. Cooper*, 396 F.3d 308, 310 (3d Cir. 2005). Where the text provides a clear answer to the interpretive question, the analysis ends there as well. *Cooper*, 396 F.3d at 310 (citing *Steele v. Blackman*, 236 F.3d 130, 133 (3d Cir. 2001)). "In all events, it is not [the Court's] task to assess the consequences of each approach and adopt the one that produces the least mischief. [The Court's] charge is to give effect to the law Congress enacted." *Lewis v. City of Chicago*, 560 U.S. 205, 217 (2010).

a)    <u>*Plain Text Analysis*</u>

As previously stated, the interpretive question here is whether a non-profit entity, purportedly controlled by or associated with a church, may both establish and maintain a church plan. Based on the plain text of the statute, the simple answer is no. Starting with subsection A, it is clear that

7

Congress intended for a church plan—first and foremost—to be ***established*** by a church. Once the church establishes the plan, the church must also ***maintain*** it. From these two requirements, a church plan is born—hence, "[t]he term 'church plan' *means* a plan established and maintained . . . by a church or by a convention or association of churches . . . ." 29 U.S.C. § 1002(33)(A) (emphasis added). However, in subsection C(i), Congress expanded the maintenance requirement outlined in subsection A: a church plan, as defined in subsection A,

> includes a plan ***maintained*** by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

29 U.S.C. § 1002(33)(C)(i) (emphasis added). Put differently, Congress has explicitly provided two ways to fall within the church plan exemption: (1) a plan established and maintained by a church, or (2) a plan established by a church and maintained by a tax-exempt organization, the principal purpose or function of which is the administration or funding of the plan, that is either controlled by or associated with a church. Once a church plan is established in one of these ways, subsection C(ii) delineates what individuals may participate in the church plan as employees of the church.

The key to this interpretation is to recognize that subsection A is the gatekeeper to the church plan exemption: although the church plan definition, as defined in subsection A, is expanded by subsection C to include plans ***maintained*** by a tax-exempt organization, it nevertheless requires that the plan be ***established*** by a church or a convention or association of churches. In other words, if a church does not establish the plan, the inquiry ends there. If, on the other hand, a church establishes the plan, the remaining sections of the church plan definition are triggered.

       b)       <u>*SPHS's Interpretation*</u>

Defendants, nevertheless, argue that the definition does not mean what it says. To bolster its more general argument that a tax-exempt organization controlled by or associated with a church may

8

establish and maintain a church plan, SPHS grasps upon two specific propositions. SPHS first highlights the fact that ERISA does not define the term "church." (Defs.' Br. 17.) To fill this statutory crevice, SPHS provides its own definition to show that its Plan meets the requirements of the church plan exemption. According to SPHS, reading subsection C "into" subsection A, "a 'church' for the purposes of the statute is broader than simply an institution for religious worship[.]" (*Id.* at 18.) Specifically, SPHS asserts that subsection C expands the definition of a church to include "any federally tax exempt corporation controlled by or in association with such an institution that establishes and maintains a retirement plan for its employees, and a retirement plan established by the corporation for those employees is a church plan." (*Id.*) At oral argument, Defendants further justified their interpretation by contending that Plaintiff's interpretation would render the term "includes" in subsection C(i) and the entirety of subsection C meaningless. (Mar. 27, 2014 Rough Tr. 22:11-24; *see also* Defs.' Resp. to Pl.'s 2d Notice, ECF No. 59, 3-5.) SPHS's interpretation, however, is contrary to the plain text and the Court will address each of Defendant's arguments, in turn.

First, when interpreting a statute, the Court must be guided by the principle that Congress says what it means and means what it says. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000); *In re Phila. Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010). It is no secret that ERISA is an "enormously complex and detailed statute[.]" *Conkright v. Frommert*, 559 U.S. 506, 509 (2010). As such, the Court concludes that Congress was cautious in crafting the definition of a church plan and therefore the definition means what it says—that a church plan must, from the outset, be established by a church and can be maintained by an organization controlled by or associated with a church. In essence, Defendants urge the Court to read subsection C(i) as follows:

> A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan **[established and]** maintained by an organization, whether a civil law corporation or otherwise . . . if such organization is controlled by or associated with a church or a convention or association of churches.

9

Congress could have added this language to subsection C, but decidedly did not. To be sure, Congress made the above distinction in the definition of a "governmental plan," which is the definition immediately preceding the church plan definition. The governmental plan definition states, in pertinent part:

> The term "governmental plan" means a plan established *or* maintained for its employees by  the Government of the United States, by the government of any State or political subdivision thereof, *or* by any agency or instrumentality of any of the foregoing . . . . The term "governmental plan" includes a plan which is established *and* maintained by an Indian tribal government . . . a subdivision of an Indian tribal government . . . *or* an agency or instrumentality of either[.]

29 U.S.C. § 1002(32) (emphasis added).

Second, Defendants' interpretation ignores—and renders superfluous—Section A which requires a church to establish a church plan. *See Alexander v. Riga*, 208 F.3d 419, 430 (3d Cir. 2000) (when interpreting a statute, a court must give effect, if possible, to every word and clause of a statute). If the Court were to accept SPHS's interpretation, any tax-exempt organization can establish its own pension plan, maintain it, and then employ the church plan exemption by purporting to be controlled by or associated with a church. In this context, a tax-exempt organization itself would have to be considered a church under the statute because a church is the only entity allowed to establish a church plan. Defendants' contention in this regard is unreasonable. The Court cannot conclude that Congress intended to create this slippery slope, especially considering that the point of enacting ERISA was to promote the interest of employees and their beneficiaries. Opening the door to expand the church plan exemption to this extent would place more employees at risk of having insufficient benefits upon retirement. What must be kept in mind is that ERISA is a remedial statute, so any exemptions included thereunder should be construed narrowly. *See Rodriguez v. Compass Shipping Co.*, 451 U.S. 596, 614 n.33 (1981). Defendants' interpretation would achieve quite the opposite.

10

On the other hand, Defendants insist that Plaintiff's and the Court's interpretation of the definition would render the term "includes," as provided in subsection C(i), meaningless. The Court disagrees. The Court's interpretation expands the definition of a church plan for the limited purpose of allowing a plan that is first established by a church to include a plan that is maintained by a tax-exempt organization. The term "includes" merely provides an alternative to the maintenance requirement but does not eliminate the establishment requirement. In addition, the Court's interpretation does not render the entire subsection of C meaningless. As stated above, after a church establishes a plan, subsection C provides clarity as to who can participate in the church's plan and the requirements for a tax-exempt organization, other than the church, to maintain a church-established plan. Defendants' interpretation would expand the church plan definition to untenable bounds and, in the process, change the plain text of the statute.

Third, when examining the text of a statute, the Court must interpret statutory words as taking their ordinary, common meaning unless otherwise defined by Congress. *See Perrin v. United States*, 444 U.S. 37, 42 (1979). The Court does not venture to define "church" but, needless to say, the Court cannot conclude that Congress intended for a tax-exempt agency, controlled by or associated with a church, to be considered a church under the statute. Despite SPHS's own definition of a church, it does not appear to be arguing that it is a church. (*See* Defs.' Br. 18; *see also* Defs.' Resp. to Pl.'s 2d Notice 5.) This became evident at oral argument when it seemingly retreated from its original position. (Mar. 27, 2014 Rough Tr. 24:5-7.)

Finally, the Court's reading of the statute is consonant with the two appellate decisions that have addressed the church plan definition. In both *Lown v. Continental Casualty Co.*, 238 F.3d 543 (4th Cir. 2001) and *Chronister v. Baptist Health*, 442 F.3d 648 (8th Cir. 2006), the Fourth and Eighth Circuits concluded that the entities at issue did not meet the definition of a church plan based on factual findings. *See Lown*, 238 F.3d at 548 (considering whether a disability plan was a church plan, but finding that Baptist Healthcare and the South Carolina Baptist Convention mutually ended their

11

affiliation); *Chronister*, 442 F.3d at 652 (finding that Baptist Health severed its ties with the Arkansas Baptist State Convention in 1966). The courts were not faced with the legal issue present before the Court and therefore did not need to address it.

Furthermore, the case law relied upon by Defendants is unpersuasive. Defendants primarily rely on *Thorkelson v. Publishing House of Evangelical Lutheran Church*, 764 F. Supp. 2d 1119 (D. Minn. 2011), for the proposition that a tax-exempt organization controlled by or associated with a church can establish and maintain a church plan. (Defs.' Br. 23, 30.) In *Thorkelson*, plaintiffs made the same arguments as Mr. Kaplan—that the benefit plan for defendant Augsburg Fortress Publishers ("AFP"), a non-profit publisher for the Lutheran Church, was not a church plan because it was sponsored by AFP. *Thorkelson*, 764 F. Supp. 2d at 1125. Interpreting the church plan definition, the court concluded that AFP's plan was a church plan exempt from ERISA. *Id.* at 1126. Even though plaintiff conceded that AFP was controlled by the Lutheran Church, the court focused its statutory analysis on whether the plan was sponsored by a tax-exempt entity that is controlled by or associated with a church. *Id.* at 1126-27. However, its interpretation did not apply § 1002(33)(A), which requires—from the outset—a plan to be established by a church. The court also noted that defendants' position was supported by case law and agency decisions of the IRS and Department of Labor ("DOL"). *Id.* at 1125.

On the other hand, a recent decision from the Northern District of California is more persuasive. In *Rollins v. Dignity Health*, No. C13–1450 TEH, 2013 WL 6512682 (N.D. Cal. Dec. 12, 2013), plaintiff brought similar ERISA claims as Mr. Kaplan, alleging that defendant's pension plan was not a church plan because it was sponsored by a non-profit healthcare organization and not a church. *Rollins*, 2013 WL 6512682, at *2. After a thorough analysis of the statutory text, the court concluded that

> notwithstanding section C, which permits a valid church plan to be maintained by some church-affiliated organizations, section A still requires that a church establish a church plan. Because the statute states that a church plan may only be established "by

a church or by a convention or association of churches," only a church or a convention or association of churches may establish a church plan. 29 U.S.C. 1002(33)(A). Dignity's effort to expand the scope of the church plan exemption to any organization maintained by a church-associated organization stretches the statutory text beyond its logical ends.

*Id.* at *5. The *Rollins* court's interpretation of the church plan definition is in accord with this Court's decision.

Defendants reiterate that *Thorkelson* is in alignment with thirty years of judicial decisions, but none of these previous decisions undertook a detailed statutory analysis of the church plan definition as Judge Henderson did in *Rollins*. Instead, these prior decisions often bypassed subsection A of the definition and immediately applied subsection C(i), made conflicting determinations regarding the limitations of C(i), or even misstated the text of subsection C(i). *See, e.g.*, *Rhinehart v. Life Ins. Co. of N. Am.*, No. C08-5486 RBL, 2009 WL 995715, at *2 (W.D. Wash. Apr. 14, 2009) (misquoting subsection A as providing that a church plan means a plan "established *or* maintained" by a church and concluding that subsection C(i) does not expand the definition of a church plan) (emphasis added); *Catholic Charities of Maine, Inc. v. City of Portland*, 304 F. Supp. 2d 77, 85 (D. Me. 2004) (adding words to the plain text when it concluded that "ERISA brings a plan *established or* maintained by a non-church organization within the general definition of 'church plan' if that organization is 'controlled by' or 'associated with' a church") (emphasis added); *Friend v. Ancillia Sys. Inc.*, 68 F. Supp. 2d 969, 973 (N.D. Ill. 1999) (pre-*Lown* decision considering whether a church plan is required to be maintained by an organization, the principal purpose of which is administering or funding the plan, and holding that this was not a requirement).

The Court finds that Plaintiff's interpretation of the church plan definition provides a common sense reading of the statute based on its plain text. Accordingly, for the foregoing reasons, which are dispositive, the Court finds, as a matter of law, that SPHS's Plan is not a church plan and that the Court has subject matter jurisdiction of Plaintiff's ERISA claims.

### 3.     Legislative History Does Not Justify a Departure from the Plain Text

Both Parties seek refuge in the legislative history by pointing particularly to comments made on the congressional floor that purportedly support their reading of the statute. However, "where the text of a statute is unambiguous, the statute should be enforced as written and '[o]nly the most extraordinary showing of contrary intentions in the legislative history will justify a departure from that language.'" *In re Phila. Newspapers, LLC*, 599 F.3d at 314 (quoting *United States v. Albertini*, 472 U.S. 675, 680 (1985)). The Parties have not made such a showing here. *See Estate of Arrington v. Michael*, 738 F.3d 599, 606 (3d Cir. 2013) ("[S]elective invocation of fragments of the floor debate is an object lesson in the perils of appealing to . . . legislative history as a guide to statutory meaning . . . . The law is what Congress enacts, not what its members say on the floor.") (citations omitted).[4]

### 4.     The IRS Private Letter Ruling Is Contrary to the Plain Text

Were the Court to conclude that the church plan definition is ambiguous as to what entity can establish and maintain a church plan, the Court could defer to an agency's reasonable interpretation of the statute. *See Chevron*, 467 U.S. at 842-43. Although the Court has determined Congress' intent based on the plain text, it seems appropriate to discuss the DOL and IRS private letter rulings; not only because SPHS has received an IRS private letter ruling on this issue, but because these rulings seem to be somewhat responsible for the overbroad application of the church plan exemption. *See* Gen. Counsel Mem. ("GCM") 39007 (July 1, 1983) (post-amendment interpretation of the church plan definition, which concluded that plans established and maintained by two Catholic orders—not

---

[4] The Court notes, however, that in 1978, when Representative Barber B. Conable, Jr. introduced a bill to amend the church plan definition in the Internal Revenue Code of 1954, the proposed language of what is now subsection C(i) read, in pertinent part: "A plan established and maintained by a church . . . shall include a plan *established and maintained* by an organization . . . ." 124 Cong. Rec. 12108 (May 2, 1978) (emphasis added). The subsequent 1980 amendment of the church plan definition excluded the word "established" from subsection C(i). *See, e.g.*, *Doe v. Chao*, 540 U.S. 614, 622 (2004) (acknowledging that "drafting history show[s] that Congress cut the very language in the bill that would have authorized any presumed damages").

churches—that operated nursing homes and hospitals, were church plans). Since the 1983 GCM, dozens of IRS private letter rulings have held that a church-related agency can establish its own church plan. The DOL has also issued advisory opinions on church-related agencies, concluding that their plans are church plans. *See, e.g.*, Advisory Op. 94-04A (Feb. 17, 1994) (interpreting the church plan definition as follows: "In accordance with Section 3(33)(C)(iii) . . . the Church is deemed the employer of these individuals for purposes of the church plan definition in section 3(33); and the Church, as employer, *is deemed to have established and to maintain the Plans.*") (emphasis added).

Defendants argue that, "though not binding on the Courts, [these rulings] are entitled to deference in accord with their persuasive power" to the extent that they are reasonable and consistent with the text and legislative history. (Defs.' Br. 20; *see also id.* at 21-22.) In response, Plaintiff asserts that the agency determinations should not be given deference because they are inconsistent, unpersuasive, and interpret the statute differently than the courts. (Pl.'s Opp'n 15-16.) Defendants concede that courts and agencies interpret the church plan definition differently, but maintain that agency decisions are entitled to deference. (Defs.' Reply 5-6.) Moreover, Defendants assert that congressional silence regarding the church plan definition gives the agency decisions the force of law. (Mar. 27, 2014 Rough Tr. 6:5-10; 18:6-10.)

Although SPHS has received a private letter ruling, the Court cannot give it deference for several reasons. As an initial matter, the ruling conflicts with the plain text of the statute and is therefore unreasonable. "The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *See Chevron*, 467 U.S. at 843 n.9. Furthermore, the IRS private letter ruling is conclusory, lacking any statutory analysis, and cannot be used as precedent because the ruling was issued in a non-adversarial setting based on information supplied by SPHS. *See* 26 U.S.C. § 6110(k)(3); *see also Christensen v. Harris Cnty.*, 529 U.S. 576, 586-87 (2000) (pointing out that an agency's opinion letters,  policy

statements, agency manuals, and enforcement guidelines – unlike regulations adopted through "formal adjudication or notice-and-comment rulemaking" – "do not warrant *Chevron*-style deference"). In addition, courts have long held that congressional silence, alone, in the wake of administrative rulings does not give the rulings the force of law. *See Brown v. Gardner*, 513 U.S. 115, 121-22 (1994) ("As we have recently made clear, congressional silence 'lacks persuasive significance,' . . . particularly where administrative regulations are inconsistent with the controlling statute . . . .") (citations and internal quotations omitted); *Aaron v. SEC*, 446 U.S. 680, 694 n.11 (1980) ("[I]t is our view that the failure of Congress to overturn the Commission's interpretation falls far short of providing a basis to support a construction . . . so clearly at odds with its plain meaning and legislative history.") (citation omitted); *Girouard v. United States*, 328 U.S. 61, 69 (1946) ("It is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law."); *cf. Lorillard, Div. of Loew's Theatres, Inc. v. Pons*, 434 U.S. 575, 580-81 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it *re-enacts a statute without change* . . . .") (internal citations omitted) (emphasis added). The church plan definition has not been amended since 1980 and Defendants cannot now use congressional silence to turn agency rulings into law.[5]

---

[5] On this point, Defendants appear to make a secondary argument that when an agency, such as the IRS, is charged with the responsibility of administering a "congressional act," deference should be given to its rulings. (*See* Mar. 27, 2014 Rough Tr. 5:23-6:1.) However, Defendants have not cited any precedent showing that Congress delegated authority for the IRS to issue regulations to define terms within the ERISA church plan definition. *Compare Christopher v. Smithkline Beecham Corp.*, 132 S. Ct. 2156, 2162, 2165 (2012) (noting that Congress delegated authority to the DOL to issue regulations and define the term "outside salesman" in the Fair Labor Standards Act, 29 U.S.C. § 213(a)(1), which states, in part, "any employee employed . . . in the capacity of an outside salesman (*as such terms are defined and delimited from time to time by regulations of the Secretary* . . . .")) (emphasis added), *with Bellas v. CBS, Inc.*, 221 F.3d 517, 524, 532 (3d Cir. 2000) (stating that Congress contemplated the Treasury Department setting forth the definition of "retirement-type subsidy" in ERISA, but nevertheless holding that the IRS's interpretation was at odds with the statute and the legislative history) (citing ERISA, 29 U.S.C. § 1054(g)(2)(A), which states, in part, "a plan amendment which has the effect of . . . eliminating or reducing . . . a retirement-type subsidy (*as defined in regulations*) . . . .") (emphasis added).

For the reasons stated above, Defendants' motion to dismiss pursuant to Rule 12(b)(1) is denied.[6]

**B.    Violation of Establishment Clause of First Amendment**

Plaintiff's Establishment Clause claim is based upon the Court finding that SPHS's Plan is a church plan as defined in ERISA. (Pl.'s Opp'n 32.) Because the Court finds that, as a matter of law, SPHS's Plan is not a church plan, it is unnecessary for the Court to address this claim. As such, Defendants' motion to dismiss pursuant to Rule 12(b)(6) is denied.

**III.    CONCLUSION**

For the reasons set forth above, and other good cause shown, it is hereby ordered that Defendants' Motions to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) are DENIED. An Order will be entered consistent with this Opinion.

  s/ Michael A. Shipp                         
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

DATED: March 31, 2014

---

[6] Because the Court finds, as a matter of law, that the Plan is not a church plan, the Court does not reach the merits of Defendants' factual assertions in connection with their Rule 12(b)(1) motion to dismiss or the Parties' dispute regarding whether the church plan exemption is jurisdictional. For the same reason, Plaintiff's Motion to Strike certain certifications and exhibits (ECF No. 47) is denied as moot.