Daniel S. Sommers (DS-1492)
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone:  (202) 408-4600

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAURENCE KAPLAN, on behalf of himself, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>SAINT PETER'S HEALTHCARE SYSTEM, RONALD C. RAK, an individual, SUSAN BALLESTERO, an individual, GARRICK STOLDT, an individual, and JOHN and JANE DOES, each an individual, 1-20,<br><br>        Defendants. | Civil Action No.<br>13−cv−02941−MAS−TJB<br><br>Electronically Filed<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS** |

## **Table of Contents**

Introduction ..................................................................................................1

Argument.......................................................................................................2

    I.     Defendants' Motion Effectively Asks the District Court to Recall the Third Circuit's Mandate .......................................2

    II.    Defendants Have not Established that the Supreme Court will Accept Review, Much Less Rule in their Favor ...................4

        A.    There is No Reasonable Probability that the Supreme Court will Grant Certiorari........................................5

        B.    It is Not Substantially Likely the Supreme Court Would Reverse...............................................................10

        C.    None of the Remaining Factors Favor a Stay Pending *Certiorari* ................................................................13

Conclusion ...................................................................................................18

i

## <u>Table of Authorities</u>

**Cases**                                                                    **Page(s)**

*Am. Civil Liberties Union of N. J. ex rel. Lander v. Schundler*, 168 F.3d 92 (3d Cir. 1999) ................................................................................................6

*Black v. Cutter Labs.*, 351 U.S. 292 (1956)................................................................6

*Bryant v. Ford Motor Co.*, 886 F.2d 1526 (9th Cir. 1989), *cert. denied*, 493 U.S. 1076 (1990)..........................................................................................3

*Casey v. Planned Parenthood of Se. Pa.*, 14 F.3d 848 (3d Cir. 1994) .....................2

*Catholic Charities of Me., Inc. v. City of Portland*, 304 F. Supp. 2d 77 (D. Me. 2004) ................................................................................................7

*Chronister v. Baptist Health*, 442 F.3d 468 (8th Cir. 2006)....................................6

*Commc'ns Workers of Am. v. Alcatel-lucent USA Inc.*, No. 15-8143, 2015 WL 7573206 (D.N.J. Nov. 25, 2015) ................................................................15

*Coyle v. Hornell Brewing Co.*, No. 08-2797, 2009 WL 1652399 (D.N.J. June 9, 2009) ................................................................................................15

*Davis v. Lawrence-Cedarhurst Bank*, 206 F.2d 388 (2d Cir. 1953), *cert. denied*, 346 U.S. 877 (1953)................................................................................3

*ETSI Pipeline Project v. Missouri*, 484 U.S. 495 (1988) ........................................6

*Gerald Chamales Corp. v. Oki Data Ams', Inc.*, 247 F.R.D. 453 (D.N.J. 2007)....13

*Gonzales v. Oregon*, 546 U.S. 243 (2006)................................................................8

*Hall v. USAble Life*, 774 F. Supp.2d 953 (E.D Ark. 2011) ......................................6

*Kaplan v. Saint Peter's Healthcare Sys.*, 810 F.3d 175 (3d Cir. 2015).......... *passim*

*Lowe v. S.E.C.*, 472 U.S. 181 (1985). .......................................................................7

*Lown v. Cont'l Cas. Co.*, 238 F.3d 543 (4th Cir. 2001) ...........................................6

*McGeshick v. Choucair*, 72 F.3d 62 (7th Cir. 1995) ................................................2

## Table of Authorities (cont'd)

*Medina v. Catholic Health Initiatives*, No. 13- 01249, 2014 WL 4244012 (D. Colo. Aug. 26, 2014). ...............................................................................7

*Nachman Corp. v. Pension Ben. Guar. Corp.*, 446 U.S. 359 (1980) .......................9

*Nara v. Frank*, 494 F.3d 1132 (3d Cir. 2007)...........................................................4

*Overall v. Ascension Health*, 23 F. Supp. 3d 816 (E.D. Mich. 2014) ......................7

*Renegotiation Bd. v. Bannercraft Clothing Co. Inc.*, 415 U.S. 1 (1974)................15

*Rostker v. Goldberg*, 448 U.S. 1306 (1980) ...........................................................14

*Samantar v. Yousuf*, 560 U.S. 305 (2010) ..............................................................11

*Stapleton v. Advocate Health Care Network*, No. 15-1368, 2016 WL 1055784 (7th Cir. Mar. 17, 2016) ................................................................................3, 5

*Torres v. Bella Vista Hosp., Inc.*, 639 F. Supp. 2d 188 (D.P.R. 2009).....................6

*United States v. Commonwealth of Pa.*, 533 F.2d 107 (3d Cir. 1976) ...................16

*United States v. Pechiney Plastic Packaging, Inc.* No. 09-5692, 2013 WL 3336792 (D.N.J. July 2, 2013)................................................................... 14, 17

*W. Penn Allegheny Health Sys., Inc. v. UPMC*, No. 09-0480, 2011 WL 334477 (W.D. Pa. Jan. 31, 2011).............................................................................4

*Whitman v. Am. Trucking Ass'n*, 531 U.S. 457 (2001) ...........................................12

**Statutes**

29 U.S.C. § 1001 .....................................................................................................19

29 U.S.C.§ 1002(33) ........................................................................................*passim*

29 U.S.C.§1002(32) ................................................................................................11

**Rules**

Fed. R. App. P. 41 ........................................................................................ 5, 6, 7, 16

Sup. Ct. R. 10 .......................................................................................................8, 10

## Table of Authorities (cont'd)

**Other Authorities**

John H. Langbein et al., Pension and Employee Benefit Law (5th ed. 2010).........19

*Pension Benefit Guaranty Corp. (P.B.G.C.)* 78-1, 1978 WL 5724 (Jan. 5, 1978)..13

Tom Cummins, et al, *Appellate Review III: October Term 2012 and Counting*, 4
    J.L.: Periodical Laboratory of Leg. Scholarship 385 (2014)..........................8

iv

## Introduction

Plaintiff vigorously opposes Defendants' latest request to unnecessarily delay litigating his claims.  Despite a unanimous Third Circuit decision; a refusal to reconsider the matter *en banc*; and Defendants' failure to seek a stay of the mandate, Defendants now seek to stay proceedings pending the filing and disposition of Defendants' forthcoming petition for writ of *certiorari*. Mot. to Stay Proceedings, ECF No. 140.

Defendants' motion is brought pursuant to Federal Rule of Appellate Procedure 41(d)(2)(A).  The request effectively asks this Court to recall the Third Circuit's mandate without any explanation as to why such an extraordinary measure is warranted. Mandate of U.S. Ct. of Appeals, ECF No.130.  To justify further delays in this litigation, Defendants not only must establish a reasonable probability that the Supreme Court will accept review, but also that Defendants' interpretation of ERISA will prevail.

The facts and circumstances suggest that it is far more likely the Supreme Court will not accept review, much less decide the issue in Defendants' favor.  The Supreme Court takes fewer than 1% of cases seeking *certiorari*.  Here, the odds are even worse for Defendants as there is no circuit split regarding the question for which review is sought and the Third Circuit's opinion is consistent with all relevant policy concerns—both as to ERISA and its church plan exemption.

1

Moreover, because this Court and the Third Circuit's decisions were based on the unambiguous statutory text and legislative history, it is exceedingly unlikely the Supreme Court would reverse even if it did issue a writ of *certiorari*.

Finally, Defendants have failed to demonstrate why they would suffer *any* harm—much less irreparable harm—if the parties commenced discovery regarding the scope and extent of Defendants' ERISA violations during the pendency of their petition.   Accordingly, Defendants' motion to further delay adjudication of this matter should be denied.

## Argument

### I.    Defendants' Motion Effectively Asks the *District* Court to Recall the *Appellate* Court's Mandate

Defendants' motion is a procedural oddity. Fed. R. App. P. 41 provides that an appellate court may stay its own mandate rather than revert a case back to the district court for litigation.  Once a mandate issues, the appellate court can revisit the issue when presented with a motion to recall the mandate. *E.g.*, *Casey v. Planned Parenthood of Se. Pa.*, 14 F.3d 848 (3d Cir. 1994) (discussing factors the appellate court should consider when presented with such a motion).

In this case, on December 29, 2015, the Third Circuit affirmed the District Court's March 31, 2014 opinion that only a church may establish an ERISA-exempt church plan.  (U.S. Ct. of Appeals, ECF No. 127).  Defendants moved for

2

rehearing en banc,[1] but the Third Circuit rejected the motion,[2] and the mandate then issued on March 28, 2016. ECF No. 130.  Although Defendants could have asked the Third Circuit to stay the mandate, they did not. Although Defendants could have asked the Third Circuit to recall the mandate, they did not.   Instead, they now ask this Court to recall the mandate.

However, once the mandate issues, the district court is bound to carry the mandate into effect and "cannot vary it, nor examine it for any other purpose than execution."  *Casey*, 14 F.3d at 856 (quoting *Sibbald v. United States*, 37 U.S. 488, 491 (1838)).  Typically, the only circumstance that justifies the recall of a mandate – even when the motion is properly made in an appellate court – is "[a] supervening change in governing law that calls into serious question the correctness of the court's judgment." *McGeshick v. Choucair*, 72 F.3d 62, 63 (7th Cir. 1995); *see also Bryant v. Ford Motor Co*., 886 F.2d 1526 (9th Cir. 1989), *cert. denied*, 493 U.S. 1076 (1990); *Davis v. Lawrence-Cedarhurst Bank*, 206 F.2d 388, 389 (2d Cir. 1953), *cert. denied*, 346 U.S. 877 (1953).

By asking this Court to find that Defendants meet their burden pursuant to Fed R. App. P. 41, this Court must conclude that it is "substantially likely" that the

---

[1] Petition of Defendants Saint Peter's Healthcare System, et al. for Rehearing and Rehearing En Banc, *Kaplan v. Saint Peter's Healthcare Sys*., 810 F.3d 175 (3d Cir. 2015) (No. 15-1172).

[2] Sur Petition for Rehearing, *Kaplan v. Saint Peter's Healthcare Sys*., 810 F.3d 175 (3d Cir. 2015) (No. 15-1172).

3

Supreme Court will reject the analysis set forth in this Court's decision as well as the Third Circuit's opinion confirming its Court's logic.   This burden is even steeper because the Seventh Circuit also has concluded that only a church may establish a church plan that is exempt from ERISA.  *See Stapleton v. Advocate Health Care Network*, No. 15-1368, 2016 WL 1055784, at *7 (7th Cir. Mar. 17, 2016). Accordingly, by asking to stay the litigation pursuant to Fed. R. App. P. 41, Defendants ask this Court to ignore the Third Circuit's judgment that the litigation should proceed.[3]

## II.   Defendants Have Not Established That the Supreme Court Will Accept Review, Much Less Rule in Their Favor

Defendants have not established that a stay is warranted pursuant to Fed. R. App. P. 41. The standard for a stay under Fed. R. App. P. 41(d)(2)(A) "requires the movant to show: (1) a reasonable probability that the Supreme Court will grant certiorari; (2) a reasonable possibility that at least five Justices would vote to reverse this Court's judgment; and (3) a likelihood of irreparable injury absent a stay." *Nara v. Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007).  This is a heavy burden for the movant and may only be met in "exceptional cases."  *See id.*   Those

---

[3] Defendants' sole example of a district court granting a stay pursuant to Fed. R. App. P. 41 is an unpublished case in which the district court did not address the issue of mandate.  *See W. Penn Allegheny Health Sys., Inc. v. UPMC*, No. 09-0480, 2011 WL 334477 (W.D. Pa. Jan. 31, 2011).   There, the court stayed litigation based on a *bona fide* circuit split created by the Third Circuit's decision in contrast to those of the First and Ninth Circuits.

4

circumstances are not met here. The Third Circuit's decision is a well-reasoned construction of the "unambiguous" terms of ERISA § 1002(33), *see Kaplan v. Saint Peter's Healthcare Sys.*, 810 F.3d 175, 183 (3d Cir. 2015), there is no split between appellate courts, and Defendants have not identified any irreparable injury. The request for a stay should therefore be denied.

### A.   There Is No Reasonable Probability that the Supreme Court Will Grant Certiorari

The Supreme Court will grant a petition for a writ of *certiorari* only for compelling reasons.  Sup. Ct. R. 10.  The Supreme Court grants only about 1% of the petitions it receives.[4]  Factors influencing the likelihood the Supreme Court will hear a case include the existence of a split in circuit authority and whether there is an important issue requiring Supreme Court resolution.  *Id.*

The most compelling of these factors is a split in circuit authority.  Tom Cummins, et al, *Appellate Review III: October Term 2012 and Counting*, 4 J.L.: Periodical Laboratory of Leg. Scholarship 385, 388 (2014).  Sup. Ct. R. 10(a) considers a split in circuit authority to mean a split between two or more circuit court decisions.  Rather than a split in authority, the Seventh Circuit in *Stapleton v. Advocate Health Care Network* recently agreed with the Third Circuit in holding

---

[4] "[T]he Court accepts 100-150 of the more than 7,000 cases that it is asked to review each year."  *Supreme Court Procedures*, United States Courts, http://www.uscourts.gov/about-federal-courts/educational-resources/about-educational-outreach/activity-resources/supreme-1 (last visited May 4, 2016).

that "a plan established by a religiously-affiliated hospital is not exempt from ERISA." *Stapleton*, 2016 WL 1055784, at *7.

Defendants concede there is no split in circuit authority, pointing only to dicta within circuit opinions to manufacture a disagreement. Mot. to Stay 8-11, ECF No. 140. Dicta, however, do not have bearing on the Supreme Court's decision to grant *certiorari*, unlike an actual split in circuit authority. *See Black v. Cutter Labs.*, 351 U.S. 292, 297 (1956) (noting the Supreme Court "reviews judgments, not statements in opinions."); *see also ETSI Pipeline Project v. Missouri*, 484 U.S. 495, 516 n.11 (1988) ("there is no reason to address" "pure dictum" on *certiorari*).

Indeed, neither of the circuit cases Defendants cite performed a statutory analysis of the exemption. Neither had occasion to do so because in both cases the courts easily held that the plans were *not* church plans for other reasons. The Fourth Circuit's opinion in *Lown v. Continental Casualty Company* merely noted in passing that a plan established by an entity that is not a church could be a church plan, while holding the exemption did not apply because the hospital was not associated with or controlled by a church. 238 F.3d 543, 547-48 (4th Cir. 2001); *see also Kaplan*, 810 F.3d at 178 (noting the Fourth Circuit's conclusion was "dictum"). Similarly, the opinion in *Chronister v. Baptist Health* did not address whether a church plan must be established by a church – not even in dicta – instead

6

holding that a plan was not a church plan because the employer was not controlled by or associated with a church.  442 F.3d 468, 651-53 (8th Cir. 2006).[5]

In the absence of a split in circuit authority, Defendants instead point to disagreement among district courts.  Mot. to Stay 8-9, ECF No. 140.  These district court opinions not only lack the authority considered by the Supreme Court when deciding whether to grant *certiorari*, *see* Sup. Ct. R. 10(a), but also construe § 1002(33) in a manner that nullifies the statute's "careful limitation," as the Third Circuit has explained. *See Kaplan*, 810 F.3d at 181 (quoting *Bennett v. Spear*, 520 U.S. 154, 173 (1997)).

For instance, *Overall v. Ascension Health* ruled that "if A is exempt and A includes C, then C is also exempt....To find otherwise would render section (C) meaningless."  23 F. Supp. 3d 816, 828 (E.D. Mich. 2014).  This assumes, without analysis, that a plan maintained by an organization described in 29 U.S.C. § 1002(33)(C)(i) need not be established by a church despite the fact that Section

---

[5] District courts' reliance on these cases is of no consequence.  Dicta are not binding on lower courts.  *Am. Civil Liberties Union of N. J. ex rel. Lander v. Schundler*, 168 F.3d 92, 99 (3d Cir. 1999).  Moreover, the mere fact that these district courts relied upon non-binding language from circuit opinions does not overcome the flaws in their reasoning, or lack thereof.  *See Torres v. Bella Vista Hosp., Inc.*, 639 F. Supp. 2d 188, 193 (D.P.R. 2009) (failing to address the unambiguous requirement that a church plan be "established . . . by a church"); *see also Hall v. USAble Life*, 774 F. Supp.2d 953, 957-61 (E.D Ark. 2011) (same); *see also Catholic Charities of Me., Inc. v. City of Portland*, 304 F. Supp. 2d 77, 85 (D. Me. 2004) (same).

A unambiguously requires a plan to be "established … by a church." By reducing § 1002(33) to a formula instead of addressing its text, *Overall* fails to "give effect to every word that Congress used in the statute." *Lowe v. S.E.C.*, 472 U.S. 181, 207 n.53 (1985). Likewise, the court in *Medina v. Catholic Health Initiatives* refused to give independent meaning to the terms "established and maintained" in §1002(33)(A), instead treating them as "a term of art, as used in the statute." No. 13-01249, 2014 WL 4244012, at *2 (D. Colo. Aug. 26, 2014). However, both as a matter of ordinary usage and in ERISA, the words "established" and "maintained" have independent meaning, as demonstrated by use of the word "maintained" without "established" in Section C(i), and the definition of a "governmental plan" as a plan "established or maintained" in §1002(32). *See Gonzales v. Oregon*, 546 U.S. 243, 282 (2006) ("We do not force term-of-art definitions into contexts where they plainly do not fit.").

Until such time as other circuit courts have occasion to thoroughly consider and decide the proper construction of § 1002(33), as the Third and Seventh Circuits have, a grant of *certiorari* is premature. The construction of § 1002(33) applied in the district court opinions Defendants cite is percolating in other circuit courts.[6] Because only the Plaintiff's construction respects the "plain meaning" of

---

[6] *See, e.g.*, *Medina v. Catholic Health Initiatives*, No. 13-1249-REB-KLM, 2015 WL 8144956 (D. Colo. Dec. 8, 2015), *appeal docketed*, No. 16-1005 (10th Cir. Jan. 6, 2016).

8

the statute's exemption and gives meaning to all its requirements, the district court opinions Defendants cite are unlikely to stand. *See Kaplan*, 810 F.3d at 180-81. It is therefore unlikely the Supreme Court would grant *certiorari* where there is uniformity in the holdings of the only circuits to have considered the issue.

Further, Defendants identify no important recurring issue requiring Supreme Court resolution. *Contra* Mot. to Stay 7, ECF No. 140. In circular fashion, Defendants argue the question is important because it is now the subject of litigation. *See* Mot. to Stay 8-10, ECF No. 140. Yet in the absence of a disagreement among binding authorities, the question has been readily resolved by the Third and Seventh Circuit opinions which comport with the policy interests underlying ERISA and the church plan exemption.

ERISA is a remedial statute enacted by Congress "to prevent the 'great personal tragedy' suffered by employees whose vested benefits are not paid when pension plans are terminated." *Nachman Corp. v. Pension Ben. Guar. Corp.*, 446 U.S. 359, 374 (1980). As a remedial statute, ERISA is to be "liberally construed in favor of protecting the participants in employee benefit plans." *Kaplan*, 810 F.3d at 182 (quoting *IUE AFL–CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 127 (3d Cir. 1986)). The exemption of § 1002(33)(A) puts a plan outside many of ERISA's protections. *Id.* The Third Circuit's construction therefore furthers the policy interest underlying ERISA by protecting participants

9

in employee benefit plans, while respecting the unambiguous language of § 1002(33)(A), which requires a plan be established by a church to fall within the exemption.

Finally, the mandate of the Third Circuit does not threaten the uniform enforcement of ERISA laws.  Defendants argue a threat to uniform enforcement exists because the Internal Revenue Service, Department of Labor, and Pension Benefit Guaranty Corporation have issued private letters interpreting the church exemption contrary to the Third Circuit's opinion.  Mot. to Stay 10, ECF No. 140. The positions of the IRS and DOL, however, lack the force of law for having been privately issued, and are not binding on third parties. *See Kaplan*, 810 F.3d at 185.[7] Without a split in binding authority, religiously affiliated organizations are not left with uncertainty.  The unambiguous language of the statute guides whether or not a plan administrator should comply with ERISA.   *Contra* Mot. to Stay 10, ECF No. 140.  Therefore, ERISA will continue to be uniformly enforced.

B.     It Is Not Substantially Likely the Supreme Court Would Reverse

The plain meaning of § 1002(33)(A) is that only a retirement plan established by a church can be exempted from ERISA.  *Kaplan*, 810 F.3d at 180. Section 1002(33)(C) allows a church agency to maintain a plan established by a

---

[7] The PBGC never interpreted the church plan definition.  *Contra* Mot. to Stay 10, ECF No. 140.  In *Pension Benefit Guaranty Corp. (P.B.G.C.)* 78-1, 1978 WL 5724 (Jan. 5, 1978), the PBGC *declined* to opine whether a plan was a church plan, stating that it will follow the position of the IRS with respect to a given plan.  *Id.*

church and still retain the exemption.  *Id.*  This construction is based on the unambiguous terms of the statute.  *Id.* at 183.

In contrast, Defendants' proposed construction makes Section A superfluous by giving no effect to the requirement that the plan is "established … by a church." *Id.*at 184.   Unlike Defendants' interpretation, the Circuit's interpretation gives meaning to both Sections A and C.  *Contra* Mot. to Stay 12-14, ECF No. 140. Whereas section A requires a plan to be both "established and maintained … by a church," 29 U.S.C. § 1002(33)(A), Section C(i) omits the word "established" in reference to plans maintained by other types of organizations.  In effect, "the 1980 amendments provided an alternate way of meeting the maintenance requirement by allowing plans maintained by church agencies to fall within the exemption." *Kaplan*, 810 F.3d at 180.

This construction does not "pass[] over judicial construction of 'includes' in silence."  *Contra* Mot. to Stay 14, ECF No. 140.  Rather, the Circuit recognized that only the maintenance requirement is expanded by the use of "includes."  *Id.*  at 181.   Indeed, "includes" "signal[s] that the list that follows is meant to be illustrative[.]"  *Samantar v. Yousuf*, 560 U.S. 305, 317 (2010). As used in Section C(i), "includes" is illustrative insofar as it permits a plan established in accordance with Section A to be considered a church plan if it is maintained as described in Section C(i).  *Kaplan*, 810 F.3d at 181.  Defendants' construction of "includes"

11

renders a nullity the "established" requirement—a result not approved by Congress. *See id.* at 182.

The Circuit's construction is further supported by the legislative history, which "demonstrates that the purposes of the 1980 amendments were to account for plans established by churches but maintained by church agencies (hence the adoption of § 3(33)(C)(i)) and to extend the sunset provision set to take effect at the end of 1982 (thus the adoption of § 3(33)(C)(ii))." *Id.* at 183.

Defendants argue the statements of Assistant Secretary Halperin, Senator Talmadge, and Senator Javits illustrate a different legislative purpose of altering fundamental details of ERISA. Mot. to Stay 17-19, ECF No. 140. But if Congress was to alter fundamental details of ERISA, they would not do so in "vague terms" by "hid [ing] elephants in mouseholes." *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001). Not one statement Defendants cite shows "that Congress, in addition to being concerned about the sunset provision and plans maintained by pension boards (i.e., church agencies), was also focused on plans established by those agencies." *Kaplan,* 810 F.3d at 185. Mouseholes are where Defendants ask this Court to look.

Furthermore, neither the IRS' interpretation of the 1980 amendment nor the Free Exercise Clause undermine the construction accepted by the Third Circuit. The IRS' opinion came in a general counsel memorandum. *Id.* Without formal

12

adjudication or notice and comment rulemaking, the opinion does not have the force of law and is owed deference "only to the extent that [it has] the power to persuade." *Id.* (quoting *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)). Regardless of whatever "page of history" was before the IRS, *contra* Mot. 19, the IRS did not consider nor attempt to address the proper function of the "established" requirement, and the IRS opinion is therefore not owed deference. *See Kaplan*, 810 F.3d at 185.

Finally, the Third Circuit's construction does not prohibit, in any way, a church from establishing a plan exempt from ERISA. Such a plan, once established by a church, is "explicitly permitted under § 3(33)(C)(ii) to cover agency employees." *Id.* at 186. The fact that ERISA is a remedial statute whose exemptions are construed in favor of protecting participants does not affect nor distort this result. *See id.*

C.   None of the Remaining Factors Favor a Stay Pending *Certiorari*

This Court is faced with different considerations than when it stayed proceedings pending a decision by the Third Circuit. *Contra* Mot. to Stay 19, ECF No. 140. Importantly, when considering whether to grant the pre-appeal stay, this Court was considering an issue of first impression not yet considered by the Third Circuit. Now, to stay the litigation means the Court would be forced to conclude that the Third Circuit erroneously issued its mandate. *See supra* Part I.

13

>    1.    *Defendants Cannot Carry a Lower Burden, Let Alone the Burden Imposed by Fed. R. App. P. 41(d)'s Standard*

District courts, when analyzing motions to stay discovery under procedurally proper circumstances and without issues of mandate, have considered whether a "[c]lear case of hardship or inequity" exists. *See Gerald Chamales Corp. v. Oki Data Ams', Inc.*, 247 F.R.D. 453, 456 (D.N.J. 2007) (quoting *Landis v. N. Am. Co.*, 57 S.Ct. 163, 255 (1936). Defendants have failed to demonstrate a clear case of hardship or inequality.

Whether a stay would cause hardship or inequality depends on the certainty of the risk of which the movant complains. *See United States v. Pechiney Plastic Packaging, Inc.* No. 09-5692 (PGS), 2013 WL 3336792, at *4 (D.N.J. July 2, 2013) (denying stay because the risk of wasted resources was "speculative"). Here, the potential harm of which Defendants complain is speculative. The likelihood the Supreme Court would take this case is incredibly low, and the chance of reversal is even lower. *See supra* Part II. Defendants therefore cannot establish hardship or inequality.

>    2.    *The Balance of Interests Is in Permitting Litigation to Proceed*

Defendants have not met their burden needed to show denying the stay will cause them "irreparable injury." *Rostker v. Goldberg*, 448 U.S. 1306, 1307 (1980). Defendants must demonstrate that irreparable harm is *likely*, not just possible, if the stay is not granted. *See Goldberg*, 448 U.S. at 1308 (Brennan, J., in chambers).

14

When discussing the likelihood of harm, Defendants give no consideration to the small probability the Supreme Court will grant *certiorari* and reverse the Third Circuit's decision.    **Mot. to Stay** 19-20, ECF No. 140.  It follows that because there is little likelihood of the Supreme Court accepting review, Defendants cannot plausibly claim that there is irreparable harm to proceeding with discovery.

Notwithstanding this threshold issue, Defendants argue that discovery related to issues of "control and association" will cause irreparable injury.  **Mot. to Stay** 20, ECF No. 140.  Such an argument is a red herring.  Discovery related to whether St. Peter's is controlled by or associated with a church is not likely to be necessary here, because both this Court and the Third Circuit have held unequivocally that St. Peter's "*cannot* establish an exempt church plan."[8]    *E.g., Kaplan*, 810 F.3d at 183 (emphasis added).

In any event, Defendants' vague and inaccurate assertion about discovery involves a litigation cost, and the costs of actively litigating at this stage cannot be said to cause Defendants "irreparable injury."  It is well established that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co. Inc.*, 415 U.S. 1,

---

[8] Moreover, Plaintiff's pending motion for partial summary judgment seeks a declaration that the Plan is not a church plan and an order requiring ERISA compliance.  ECF No. 77.  If granted, no discovery would be required on "control and association" issues.

15

24 (1974).  And rather than cost savings, stays can create case management issues resulting in "unnecessary litigation expenses and problems." *Coyle v. Hornell Brewing Co.*, No. 08-2797, 2009 WL 1652399, at *3 (D.N.J. June 9, 2009).  The pending summary judgment motion also is unlikely to irreparably harm Defendants.  Defendants assert that they would be irreparably harmed by an injunction requiring their compliance with ERISA.  Mot. to Stay 20-21, ECF 140.  This assertion is based on the false premise that Defendants were not required to comply with ERISA all along.  Where Defendants have acted unlawfully, it is hardly injurious to require that they comply with unambiguous statutory language that requires the Plan's compliance with ERISA. *See Kaplan*, 810 F.3d at 180.

Moreover, Defendants' explanation for the basis of their injury, conclusory statements about a need to "divert resources" from "charitable outreach" should they be required to comply with ERISA, do not support a showing of irreparable injury.  *See Commc'ns Workers of Am. v. Alcatel-lucent USA Inc.*, No. 15-8143, 2015 WL 7573206, at *2 (D.N.J. Nov. 25, 2015).  Regardless, the injuries of which Defendants complain are economic in nature.  Mot. to Stay 20-21, ECF No. 140.  Economic injuries, especially from changes that "could be undone," Mot. 21, are hardly irreparable.  *See United States v. Commonwealth of Pa.*, 533 F.2d 107, 110 n. 9 (3d Cir. 1976) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.").

16

A stay had been in place for nearly eight months while Defendants unsuccessfully sought review by the Third Circuit and by an *en banc* panel. (Order Granting ECF No. 74, ECF No. 111). There simply is no basis to continue this delay until the Supreme Court makes a decision on *certiorari*. Congress enacted ERISA in light of the highly publicized failures of several private pension plans that left long-term employees without their promised benefits. John H. Langbein et al., Pension and Employee Benefit Law 67-77 (6th ed. 2015). Whether Mr. Kaplan is currently receiving his benefits says nothing about the safeguards in place to ensure the Plan's future ability to pay benefits. Congress put in place standards to make sure promised benefits are sustainable; "trust us" was not that standard. *See* 29 U.S.C. § 1001(b)-(c). Plaintiff and other Plan participants should not be delayed further in the enforcement of their right to all ERISA protections.

Finally, the public has an interest in the enforcement of ERISA laws. *See* John H. Langbein et al., *supra*, 78-83. Indeed, the Third Circuit's decision serves the interest of protecting participants in employee benefit plans. *Kaplan*, 810 F.3d at 182. The premise that there would be judicial waste is speculative in light of the off-chance the Supreme Court grants *certiorari* and reverses the opinion of the Third Circuit. *See Pechiney,* 2013 WL 3336792, at *4-5. Although judicial resources are sparse and valuable, the low probability of cost-savings is

17

outweighed by Plaintiff's and the public's interest in the enforcement of ERISA laws.

## **<u>Conclusion</u>**

For the foregoing reasons, Plaintiff respectfully opposes Defendants' motion to stay the litigation by asking this Court to effectively recall the Third Circuit's mandate and to revisit its determination that this litigation is ripe to proceed.

18

Dated:  May 18, 2016             Respectfully submitted,


                                      /s/ Daniel S. Sommers
                                 Daniel S. Sommers (DS-1492)
                                 Karen L. Handorf
                                 Michelle C. Yau
                                 Mary J. Bortscheller
                                 Cohen Milstein Sellers & Toll PLLC
                                 1100 New York Ave. NW
                                 Suite 500, West Tower
                                 Washington, DC 20005
                                 Telephone:  (202) 408-4600
                                 Email: dsommers@cohenmilstein.com
                                         khandorf@cohenmilstein.com
                                         myau@cohenmilstein.com
                                         mbortscheller@cohenmilstein.com


                                 KELLER ROHRBACK L.L.P.
                                 Lynn Lincoln Sarko
                                 Havila Unrein
                                 Matthew Gerend
                                 1201 Third Avenue, Suite 3200
                                 Seattle, WA 98101
                                 Tel: (206) 623-1900 / Fax: (206) 623-3384
                                 Email: lsarko@kellerrohrback.com
                                         hunrein@kellerrohrback.com
                                         mgerend@kellerrohrback.com


                                 KELLER ROHRBACK P.L.C.
                                 Ron Kilgard
                                 Laurie Ashton
                                 3101 North Central Avenue, Suite 1400
                                 Phoenix, AZ 85012
                                 Tel: (602) 248-0088 / Fax: (602) 248- 2822
                                 Email: rkilgard@kellerrohrback.com
                                         lashton@kellerorhback.com

                                 *Attorneys for Plaintiff*


                                 19

2139216.1