Scott M. Lempert (Bar # 035281995)
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAURENCE KAPLAN, on behalf of himself, individually, and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>SAINT PETER'S HEALTHCARE SYSTEM, RETIREMENT PLAN COMMITTEE FOR THE SAINT PETER'S HEALTHCARE SYSTEM RETIREMENT PLAN, LESLIE D. HIRSCH, an individual, PAMELA TEUFEL, an individual, GARRICK STOLDT, an individual, LISA DRUMBORE, an individual, RONALD C. RAK, an individual, SUSAN BALLESTERO, an individual, and JOHN and JANE DOES, each an individual, 1-20, )<br><br>Defendants. ) | Civil Action No. 3:13-cv-02941 MAS-TJB<br><br><br>**AMENDED COMPLAINT** |

**Table of Contents**

I.      IDENTIFICATION OF PARTIES (LOCAL RULE 10.1) ................................................ 1

II.     INTRODUCTION ................................................................................................. 1

III.    JURISDICTION AND VENUE ............................................................................. 5

IV.     PARTIES ............................................................................................................. 6

V.      THE BACKGROUND OF THE CHURCH PLAN EXEMPTION ................................. 9

     A.      The Adoption of ERISA ............................................................................ 9

     B.       The Scope of the Church Plan Exemption in 1974 ............................. 10

     C.      The Changes to the Church Plan Exemption in 1980 .......................... 11

VI.     SAINT PETER'S ................................................................................................. 12

     A.      Saint Peter's Operations ........................................................................ 12

     B.      The Saint Peter's Plan ........................................................................... 15

          1.      Saint Peter's Plan Meets the Definition of an ERISA Defined Benefit Plan ................................................................................ 17

          2.      Saint Peter's is the Plan Sponsor, Plan Administrator and a Fiduciary; in the Alternative, the Retirement Plan Committee is the Plan Administrator and is a Fiduciary, and the Individual Defendants are also Fiduciaries ................................................. 18

          3.      The Saint Peter's Plan Is Not a Church Plan ............................. 21

          4.      Even if the Saint Peter's Plan Could Otherwise Qualify as a Church Plan under ERISA, the Church Plan Exemption, as Claimed By Saint Peter's, Violates the establishment Clause of the First Amendment of the Constitution, and Is Therefore Void and Ineffective ................................................................................ 26

VII.    CLASS ALLEGATIONS ...................................................................................... 27

     A.      Numerosity ............................................................................................ 27

     B.      Commonality .......................................................................................... 27

     C.      Typicality ............................................................................................... 28

     D.      Adequacy ............................................................................................... 29

     E.      Rule 23(b)(1) Requirements .................................................................. 29

     F.      Rule 23(b)(2) Requirements .................................................................. 30

     G.      Rule 23(b)(3) Requirements .................................................................. 30

i

VIII.   CAUSES OF ACTION .................................................................................. 31

    COUNT I ....................................................................................................... 31

    COUNT II ...................................................................................................... 32

    COUNT III ..................................................................................................... 36

    COUNT IV ..................................................................................................... 36

    COUNT V ...................................................................................................... 37

    COUNT VI ..................................................................................................... 38

    COUNT VII .................................................................................................... 38

    COUNT VIII ................................................................................................... 40

    COUNT IX ..................................................................................................... 47

    COUNT X ...................................................................................................... 51

    COUNT XI ..................................................................................................... 54

    COUNT XII .................................................................................................... 56

    COUNT XIII ................................................................................................... 59

    COUNT XIV ................................................................................................... 61

PRAYER FOR RELIEF ............................................................................................ 62

2331227 v1

Plaintiff Laurence Kaplan, individually and on behalf of all those similarly situated, as well as on behalf of the Saint Peter's Healthcare System Retirement Plan, as defined herein, by and through his attorneys, hereby alleges as follows:

## I.    IDENTIFICATION OF PARTIES (LOCAL RULE 10.1)

1.    Plaintiff Laurence Kaplan's address is 5 Cardigan Dr., Toms River, NJ 08757.

2.    Defendants Saint Peter's Healthcare System's ("St. Peter's") and Retirement Plan Committee's  principal place of business is at 254 Easton Avenue, New Brunswick, NJ 08901.

3.    Plaintiff does not know with certainty the addresses of the individual Defendants, Leslie Hirsch, Pamela Teufel, Garrick Stoldt, Lisa Drumbore, Ronald Rak, and Susan Ballestero. Plaintiff also does not know the addresses of Defendants John and Jane Does 1-20; the identity of these individuals will be determined after discovery.

## II.    INTRODUCTION

4.    Defendant Saint Peter's Healthcare System ("Saint Peter's" or "Defendant") operates a hospital conglomerate and provides healthcare services in the communities it serves.

5.    This class action is brought on behalf of participants and beneficiaries of the Saint Peter's Healthcare System Retirement Plan, which is maintained by Saint Peter's (referred to as the "Saint Peter's Plan" or simply the "Plan").

6.    Although the Plan was for decades operated as a plan covered by the Employee Retirement Income Security Act ("ERISA")—and participants were promised ERISA protections—Saint Peter's now operates the Plan as an ERISA-exempt "church plan." This case is about Saint Peter's failure to properly maintain its pension plan under ERISA. In the alternative, if its pension plan is not subject to ERISA, Saint Peter's has breached its contractual and fiduciary duties under state law. In particular, Saint Peter's has failed to provide ERISA

1

protections and insurance of pension plan benefits that it promised to Plaintiff and Class members in exchange for their employment. Additionally, Saint Peter's has failed to adequately fund the Plan, creating a significant risk that the Plan will be unable to pay the benefits to which Defendant's employees are entitled.

7.     As demonstrated herein, Saint Peter's failures harm its more than 4,700 Plan participants, who worked for Saint Peter's, in part, in exchange for Saint Peter's promise to provide an ERISA-covered pension plan pursuant to which it would fund, insure, and pay pension benefits and who rely on these benefits for their retirement.

8.     As its name implies, ERISA was crafted to protect employee retirement funds. A comprehensive history of ERISA put it this way:

> Employees should not participate in a pension plan for many years only to lose their pension . . . because their plan did not have the funds to meet its obligations. The major reforms in ERISA—fiduciary standards of conduct, minimum vesting and funding standards, and a government-run insurance program—aimed to ensure that long-service employees actually received the benefits their retirement plan promised.

James Wooten, THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, at 3 (U. Cal. 2004).

9.     Saint Peter's is violating numerous provisions of ERISA —including, on information and belief, underfunding the Saint Peter's Plan by over $130 million — while erroneously claiming that the Plan is exempt from ERISA's protections because it is a "church plan." But the Saint Peter's Plan does not meet the definition of a church plan under ERISA because a church plan must generally be "maintained" by a church or convention or association of churches and Saint Peter's, which maintains the Plan, plainly is not a church or a convention or association of churches.

10.     Saint Peter's may claim that the Saint Peter's Plan is "maintained" by an internal Saint Peter's retirement committee and thus qualifies for a special accommodation for plans

maintained by church-associated "organizations" whose "principal purpose" is funding or administering benefit plans.  But it is Saint Peter's, and not any committee, that maintains the Saint Peter's Plan as that term is used under ERISA, and Saint Peter's principal purpose is providing healthcare, not funding or administering retirement plans.  Even if the committee did "maintain" the Plan, the Plan still would not qualify as a 'church plan" because the committee is an internal committee of Saint Peter's and is not a distinct "organization," as required by ERISA's "principal purpose" accommodation.

11.     Furthermore, even if the Saint Peter's Plan was somehow "maintained" by a permissible entity, the church plan exemption still would not apply because other aspects of the definition are not satisfied, including that neither Saint Peter's nor Saint Peter's internal retirement committee are "controlled by" or "associated with" a church, within the meaning of ERISA. Saint Peter's is a non-profit hospital system, not unlike other non-profit hospital systems with which Saint Peter's competes in its commercial activities. It is not owned or operated by a church and does not receive funding from a church.  No denominational requirement exists for Saint Peter's employees.  Indeed, Saint Peter's tells prospective employees that any choice of faith or lack thereof, is not a factor in the recruiting and hiring of Saint Peter's employees.  In choosing to recruit and hire from the population at large, Saint Peter's must also be willing to accept neutral, generally applicable regulations, such as ERISA, imposed to protect those employees' legitimate interests.

12.     Even if the Court determined that the Saint Peter's Plan fell within the scope of the church plan exemption, the Church Plan exemption would then be, as applied to Saint Peter's, an unconstitutional accommodation in violation of the Establishment Clause of the First Amendment.  Saint Peter's claims, in effect, that it must be relieved of its ERISA financial

2331227 v1

obligations because Saint Peter's claims certain religious beliefs. The Establishment Clause, however, does not allow such economic preference for religious adherents that is not available to non-adherents, at least where, as here, an accommodation is not required to relieve a substantial burden on religious practice or to avoid government entanglement in religion. Extension of the church plan exemption to Saint Peter's: (A) is not necessary to further the stated purpose of the exemption; (B) harms Saint Peter's workers and retirees; (C) puts Saint Peter's competitors at an economic disadvantage; (D) relieves Saint Peter's of no genuine religious burden created by ERISA; and (E) creates more government entanglement with alleged religious beliefs than compliance with ERISA creates.

13.     Saint Peter's claim of church plan status for its defined benefit plan fails under both ERISA and the First Amendment.  Plaintiff seeks an Order requiring Saint Peter's to comply with ERISA and afford the Class all the protections of ERISA with respect to the Saint Peter's Plan, as well as an Order finding that the Church Plan exemption, as claimed by Saint Peter's, is unconstitutional because it violates the Establishment Clause of the First Amendment.

14.     Yet even if the Church Plan exemption does apply to the Saint Peter's Plan and even if the application of the exemption is constitutionally permissible, Saint Peter's has nonetheless breached its contractual and fiduciary obligations to Plaintiff and Class members by failing to provide a pension plan covered under ERISA and backed by insurance, as promised when offers of employment were extended and thereafter. St. Peter's has also breached the terms of the Plan documents and has breached its common law fiduciary duties by failing to make required contributions to the Saint Peter's Plan trust. The other Defendants have breached their fiduciary duties by failing to enforce this funding obligation. By refusing to fund the Plan, in contravention of their obligations under the Plan documents, fiduciary duties, and repeated

4

promises to Plan participants, Defendants left the Plan severely underfunded, to the tune of over $130 million.

15.   Because of Saint Peter's failure to maintain an ERISA-compliant Plan backed by insurance, and because of Saint Peter's continuing refusal to adequately fund the Plan, there exists a substantial risk that the Plan will be unable to pay the accrued pension benefits to which Plaintiffs and the other Class members are entitled. Accordingly, Plaintiffs seek an Order requiring Defendants to either operate the Plan in accordance with ERISA as promised, or at least to make all contributions to the Plan trust necessary to fund, on an actuarial basis, all accrued pension benefits.

### III.   JURISDICTION AND VENUE

16.   **Subject Matter Jurisdiction.**  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so related to Plaintiffs' other claims in this action that they form part of the same case or controversy.

17.   **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant Saint Peter's because Saint Peter's is headquartered and transacts business in, and has significant contacts with, this District, and because ERISA provides for nationwide service of process. ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

18.   This Court has personal jurisdiction over all the Individual Defendants (defined below) because, upon information and belief, they are Officers of Saint Peter's and work in this District and because ERISA provides for nationwide service of process. *Id.* The Court also has personal jurisdiction over the Individual Defendants pursuant to Federal Rule of Civil Procedure

5

4(k)(1)(A) because they are all subject to a court of general jurisdiction in New Jersey as a result of Defendant Saint Peter's transacting business in and/or having significant contacts with this District.

19.     **Venue.** Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because (a) the Plan is administered in this District, (b) some or all of the violations of ERISA took place in this District, and/or (c) Saint Peter's and the individual defendants may be found in this District.

20.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Saint Peter's is headquartered in this District, and systematically and continuously does business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## IV.     PARTIES

21.     <u>Plaintiff Laurence Kaplan</u>.  Plaintiff Laurence Kaplan was an employee of Saint Peter's from 1985 until 1999. Plaintiff Kaplan is a participant in a pension plan maintained by Saint Peter's because he is or will become eligible for pension benefits under the Plan to be paid at normal retirement age. Additionally and alternatively, Plaintiff Kaplan has a colorable claim to benefits under a pension plan maintained by Saint Peter's and is a participant within the meaning of ERISA section 2(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the Saint Peter's Plan pursuant to ERISA sections 502(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3), 29 U.S.C. § 1132(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3).

22.     <u>Defendant Saint Peter's</u>.  Saint Peter's is a 501(c)(3) non-profit corporation organized under, and governed by, the New Jersey Non-Profit Corporation Act, Title 15A of the New Jersey Statutes. Saint Peter's is headquartered in New Brunswick, New Jersey. Saint Peter's is the employer responsible for maintaining the Saint Peter's Plan and is, therefore, the

6

plan sponsor of the Saint Peter's Plan within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B). Defendant Saint Peter's is designated as the "administrator" of the Saint Peter's Plan by the terms of the instrument under which the Saint Peter's Plan is operated. In the alternative, if no administrator is designated in the documents governing the Saint Peter's Plan, Saint Peter's is the employer that establishes or maintains the Saint Peter's Plan and thus is the plan sponsor of the Saint Peter's Plan within the meaning of ERISA section 3(16)(A), 29 U.S.C. § 1002(16)(A). Defendant Saint Peter's is also a fiduciary of the Saint Peter's Plan within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A).

23. <u>Defendant Retirement Plan Committee for the Saint Peter's Healthcare System Retirement Plan.</u> Defendant Retirement Plan Committee is an internal committee that is a subset of Defendant Saint Peter's, and is acting as an agent of Defendant Saint Peter's, is designated as the "administrator" of the Saint Peter's Plan by the terms of the instrument under which the Saint Peter's Plan is operated. Defendant Retirement Plan Committee is also a fiduciary of the Saint Peter's Plan within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A).

24. <u>Defendant Leslie D. Hirsch.</u> Defendant Leslie D. Hirsch is the President and Interim Chief Executive Officer of Saint Peter's. Upon information and belie, Defendant Hirsch's responsibilities include fiduciary oversight of the Saint Peter's Plan.

25. <u>Defendant Pamela Teufel.</u> Defendant Pamela Teufel is Vice President and Chief Human Relations Officer of Saint Peter's. Defendant Teufel regularly communicates with Plan participants about the Saint Peter's Plan and, upon information and belief, Defendant Teufel's responsibilities include fiduciary oversight of the Saint Peter's Plan. Accordingly, Defendant Teufel is a fiduciary within the meaning of ERISA.

26.     <u>Defendant Garrick Stoldt</u>. Defendant Garrick Stoldt is Vice President and Chief Financial Officer of Saint Peter's. Defendant Stoldt regularly communicates with Plan participants about the Saint Peter's Plan and, upon information and belief, Defendant Stoldt's responsibilities include fiduciary oversight of the Saint Peter's plan. Accordingly, Defendant Stoldt is a fiduciary of the Plan within the meaning of ERISA.

27.     <u>Defendant Lisa Drumbore</u>.  Defendant Lisa Drumbore is Vice President and Chief Experience Officer of Saint Peter's. Upon information and belief, Defendant Drumbore's responsibilities include fiduciary oversight of the Saint Peter's Plan. Accordingly, Defendant Dumbore is a fiduciary within the meaning of ERISA.

28.     <u>Defendant Ronald C. Rak.</u>  Defendant Ronald C. Rak was President and Chief Executive Officer of Saint Peter's from 2007 through March of 2017. Defendant Rak regularly communicated with Plan participants about the Saint Peter's Plan and, upon information and belief, Defendant Rak's responsibilities included fiduciary oversight of the Saint Peter's Plan. Accordingly, during the relevant time period, Defendant Rak was a fiduciary of the Plan within the meaning of ERISA.

29.     <u>Defendant Susan Ballestero</u>.  Defendant Susan Ballestero was Vice President and Chief Human Relations Officer of Saint Peter's from 2006 through March of 2017. Defendant Ballestero regularly communicated with Plan participants about the Saint Peter's Plan and, upon information and belief, Defendant Ballestero's responsibilities included fiduciary oversight of the Saint Peter's Plan. Accordingly, during the relevant time period, Defendant Ballestero was a fiduciary of the Plan within the meaning of ERISA.

30.     <u>Defendants John and Jane Does 1-20</u>.  Defendants John and Jane Does 1-20 are individuals who through discovery are found to have fiduciary responsibilities with respect to the

Saint Peter's Plan and are fiduciaries within the meaning of ERISA. These individuals will be added by name as defendants in this action upon motion by Plaintiff at an appropriate time. Defendants Hirsch, Teufel, Stoldt, Drumbore, Rak, Ballestero, and John and Jane Does 1-20 are referred to herein collectively as the "Individual Defendants."

## V.     THE BACKGROUND OF THE CHURCH PLAN EXEMPTION

### A.     The Adoption of ERISA

31.     Following years of study and debate, and with broad bi-partisan support, the Congress adopted ERISA in 1974, and the statute was signed into law by President Ford on Labor Day of that year. Among the factors that led to the enactment of ERISA were the widely publicized failures of certain defined benefit pension plans, especially the plan for employees of Studebaker Corporation, an automobile manufacturing company which defaulted on its pension obligations in 1965. *See generally* John Langbein *et al.*, PENSION AND EMPLOYEE BENEFIT LAW 78-83 (2010) ("The Studebaker Incident").

32.     As originally adopted in 1974, and today, ERISA protects the retirement savings of pension plan participants in a variety of ways. As to participants in traditional defined benefit pension plans, such as the plan at issue here, ERISA mandates, among other things, that such plans be currently funded and actuarially sound, that participants' accruing benefits vest pursuant to certain defined schedules, that the administrators of the plan report certain information to participants and to government regulators, that the fiduciary duties of prudence, diversification, loyalty, and so on apply to those who manage the plans, and that the benefits promised by the plans be guaranteed, up to certain limits, by the Pension Benefit Guaranty Corporation. *See, e.g.*, ERISA §§ 303, 203, 101-106, 404-406, 409, 4007, 4022, 29 U.S.C. §§ 1083, 1053, 1021-1026, 1104-1106, 1109, 1307, 1322.

9

33.     ERISA is centered on pension plans, and particularly defined benefit pension plans, as is reflected in the very title of the Act, which addresses "retirement income security." However, ERISA also subjects to federal regulation defined contribution pension plans (such as 401(k) plans) and welfare plans, which provide health care, disability, severance and related non-retirement benefits. ERISA § 3(34) and (1), 29 U.S.C. § 1002(34) and (1).

**B.      The Scope of the Church Plan Exemption in 1974**

34.     As adopted in 1974, ERISA provided an exemption for certain plans, in particular governmental plans and Church Plans. Plans that met the statutory definitions were exempt from all of ERISA substantive protections for participants. ERISA § 4(a) and (b), 29 U.S.C. § 1003(a) and (b).

35.     ERISA defined a Church Plan as a plan "established and maintained for its employees by a church or by a convention or associations of churches." [1]

36.     Under the 1974 legislation, although a Church Plan was required to be established and maintained by a church, it could also include employees of certain pre-existing agencies of such church, but only until 1982. ERISA § 3(33)(C) (1974), 29 U.S.C. § 1002(33)(C) (1974) (current version as amended at 29 U.S.C. § 1002(33) (West 2013)). Thus, under the 1974 legislation, a pension plan that was not established and maintained by a church could not be a Church Plan. *Id.*

---

[1] ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A). ERISA is codified in both the labor and tax provisions of the United States Code, titles 29 and 26 respectively. Many ERISA provisions appear in both titles. For example, the essentially identical definition of Church Plan in the Internal Revenue Code is found at 26 U.S.C. § 414(e).

### C.      The Changes to the Church Plan Exemption in 1980

37.      The church plan definition was amended in 1980. Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), Pub. L. No. 96-364, § 407, 94 Stat. 1208 (1980). The amended definition is current law.

38.      The grandfather and sunset provisions, concerning employees of church agencies, were dropped. Congress achieved this by including a new definition of "employee" in subsection (C)(ii)(II) of section 3(33) of ERISA. 29 U.S.C. § 1002(33)(C)(ii)(II) (1980) (current version at 29 U.S.C. § 1002(33)(C)(ii)(II) (2012)). As amended, an "employee" of a church or a convention/association of churches includes an employee of an organization "which is controlled by or associated with a church or a convention or association of churches." *Id*. The phrase "associated with" is then defined in ERISA § 3(33)(C)(iv) to include only those organizations that "share[] common religious bonds and convictions with that church or convention or association of churches." 29 U.S.C. § 1002(33)(C)(iv) (1980) (current version at 29 U.S.C. § 1002(33)(C)(iv) (2012)). Accordingly, this new definition of "employee" permitted a "church plan" to include among its participants employees of organizations controlled by or associated with the church, convention, or association of churches.

39.      The 1980 amendments also permitted church plans to be maintained either by a church or by "an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches." ERISA § 3(33)(C)(i) (1980), 29 U.S.C. § 1002(33)(C)(i) (1980) (emphasis added) (current version at 29 U.S.C. § 1002(33)(C)(i) (2012)).

11

For convenience, this type of organization is referred to here, as it is in the case law, as a "principal-purpose organization."

40.     Finally, the Supreme Court recently interpreted the 1980 amendments and held that a church plan that is maintained by a principal-purpose organization need not have been established by a church. *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1658 (2017). The Supreme Court expressly declined to interpret the meaning of "principal purpose organization" or to express an opinion on whether the plans at issue in the cases before it were maintained by principal purpose organizations. *Id*. at 1657 n.2.

41.     However, a typical hospital benefit plan is plainly not maintained by a principal-purpose organization. It is maintained by the hospital itself, usually through its Board of Directors. Even if the hospital were "controlled by or associated with" a church, it cannot maintain its own "church plan" because its principal purpose or function is the provision of health care, not "the administration or funding of a plan or program for the provision of retirement benefits." ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

## VI.     SAINT PETER'S

### A.     Saint Peter's Operations.

42.     Defendant Saint Peter's is a New Jersey not-for-profit corporation organized under, and governed by, the New Jersey Non-Profit Corporation Act, Title 15A of the New Jersey Statutes. Saint Peter's owns Saint Peter's University Hospital, an acute care 478 licensed bed teaching hospital located in New Brunswick, New Jersey; Saint Peter's Health & Management Services Corporation; Saint Peter's Foundation; Margaret McLaughlin McCarrick Care Center; Saint Peter's Properties Corporation (Properties); Risk Assurance Company of Saint Peter's University Hospital ; Saint Peter's Solar Energy Solutions, Inc.; Sports Physical Therapy Institute of New Brunswick, Inc.; Saint Peter's Faculty Foundation PC; Gianna

Physician Practice of New York, P.C.; Saint Peter's Healthcare System Physician Associates, P.C.; The National Gianna Center for Women's Health and Fertility, Inc.; Saint Peter's Advanced Care, P.C.; Saint Peter's Specialty Physicians, P.C.; and Park Avenue Collections Corporation. Collectively, these entities made over $440 million in revenue and gains in 2015.

43.     According to their website, Saint Peter's employs more than 3,600 healthcare professionals and support personnel, as well as over 1,000 doctors and dentists.

44.     Like other non-profit hospital systems, Saint Peter's relies upon revenue bonds to raise money.

45.     The management of Saint Peter's is comprised primarily of lay people, and Executive Officers of Saint Peter's receive compensation in line with executive officers of other hospital systems. At least nine officers or key employees received reportable compensation in excess of half a million dollars in 2010. In 2015, Defendant Ronald Rak earned $997,682.

46.     As stated in its filed Form 990s, Saint Peter's has no members. Even if the hospital did have one or more members, pursuant to its by-laws and Form 990 reports filed with the IRS, the hospital's board of directors consists of 20 members, the vast majority of whom are not appointed by a hospital member.  Accordingly, Saint Peter's board of directors is independent of, and has no association with, the Catholic Church.

47.     Likewise, members of Saint Peter's internal retirement committee are appointed by the hospital's board of directors.  This internal retirement committee is independent of, and has no association with, the Catholic Church.

48.     Saint Peter's does not receive funding from the Catholic Church or other religious organizations, and it is operated by laypeople.

49.     Saint Peter's specifically does not limit employment to those of the Catholic faith, but instead hires employees without any reference to creed or religion.

50.     Similarly, Saint Peter's imposes no denominational requirements on patients or clients.

51.     Saint Peter's does not claim to be a church and it is not one.

52.     Saint Peter's also is not a convention or association or churches, nor does it claim to be one.

53.     Saint Peter's does not claim that any church has any liability for any of Saint Peter's debts or obligations, nor does any church have any role in the maintenance and/or administration of the Saint Peter's Plan.

54.     The principal purpose or function of Saint Peter's is not the administration or funding of a plan or program for the provision of retirement or welfare benefits, or both, for the employees of a church or a convention or association of churches. Rather, the principal purpose or function of Saint Peter's is the provision of healthcare. The Third Circuit reached the same conclusion. *Kaplan v. Saint Peter's Healthcare System, et al.,* 810 F.3d 175, 183, n.8 (3d Cir. 2015) ("Saint Peter's itself does not appear to meet the principle purpose test, as its principle purpose is the provision of healthcare and not the administration or funding of the retirement plan.")

55.     Saint Peter's does not impose its beliefs or religious practices on its clients/patients.  In fact, Saint Peter's offers contact with the minister, priest, rabbi, or spiritual leader of its patients' choosing.

56.     Saint Peter's collaborates with medical institutions that claim no religious affiliation of any kind, such as Drexel University and Children's Hospital of Philadelphia.

57.     Saint Peter's purports to disclose, and not keep confidential, its own financial records. For example, Saint Peter's is required and in some cases has voluntarily elected to comply with a broad array of elaborate state and federal regulations and reporting requirements, including Medicare and Medicaid. In addition, Saint Peter's makes public its consolidated financial statements, which describe Saint Peter's representations as to its own operations and financial affairs. Finally, Saint Peter's financial information is regularly disclosed to the rating agencies and the public when tax exempt revenue bonds are issued.

### B.     The Saint Peter's Plan

58.     Saint Peter's maintains the Saint Peter's Plan, which is a non-contributory defined benefit pension plan covering substantially all of Saint Peter's employees hired before July 1, 2010. From its inception in 1974 until it was frozen in 2010, the Saint Peter's Plan was operated as an ERISA-covered plan. It was funded in accordance with ERISA, met ERISA reporting requirements, and paid premiums to the Pension Benefit Guarantee Corporation ("PBGC"), the federal agency that provides pension insurance to ERISA covered plans. Saint Peter's was also insured by the PBGC.

59.     From its inception until at least sometime in 2006, Saint Peter's continuously represented in Plan documents, public statements, written letters, in-person meetings, and other communications with its employees that it operated an ERISA-covered plan. For example:

- As late as January 2006, Plan participants were told that the Plan was covered under ERISA and by the PBGC. Participants were informed that, as participants in the Plan, they were entitled to certain rights and protections under ERISA and were provided with a formal "Statement of ERISA Rights." Plan participants were also informed that if the Plan terminated

without enough money to pay all benefits, the PBGC would step in to pay

pension benefits.

- Plan participants were given annual reports informing them that, with regard
  to ERISA's minimum funding standards, an actuary's statement showed that
  enough money was contributed to the plan to keep it funded in accordance
  with the minimum funding standards of ERISA.

60. In 2006, Saint Peter's, for the first time in the 32-year history of its Plan, concluded that it was a church plan not subject to ERISA and sought a private letter ruling with the IRS confirming church-plan status of the Plan for tax purposes. However, even after seeking the IRS letter, Saint Peter's continued paying insurance premiums to the PBGC with respect to the Plan.

61. Saint Peter's did not notify its employees that it sought a private letter ruling regarding its claim that the Plan was a church plan until November 2011. A favorable letter ruling was received on August 13, 2013 from the IRS.

62. This was in spite of the fact that John Matuska, Saint Peter's former Chief Financial Officer, Chief Operating Officer and Chief Executive Officer and a member of the Retirement Plan Committee from 1977 through 2001, informed the IRS that the Saint Peter's Plan has never been, nor was it ever considered to be, a church plan.

63. Sometime in 2010, the Saint Peter's Plan was amended such that effective July 1, 2010, any employee hired after June 30, 2010 would not be eligible to participate in the Plan. Additionally, active participation in the Plan was frozen for any employee who terminated employment before July 1, 2010 and is rehired after that date and for any employee who

16

terminated employment on or after July 1, 2010, unless he or she is rehired before the first anniversary of their termination.

64.     Sometime in 2012, Saint Peter's established a defined contribution plan for employees hired as of July 1, 2010. Saint Peter's announced that the defined contribution plan would be operated as an ERISA-covered plan and would not claim Church Plan status.

65.     Saint Peter's also sponsors a health benefit plan that it operates as an ERISA-covered plan.

66.     Saint Peter's funds the plan and has the power to amend and terminate the Plan.

67.     The Saint Peter's Plan names as plan administrator an internal Saint Peter's committee (Defendant Retirement Plan Committee) of three or more persons who are designated by Saint Peter's and act as the agent of Saint Peter's.

68.     As of December 31, 2016, the Saint Peter's Plan was underfunded by more than $130 million.

### 1.     Saint Peter's Plan Meets the Definition of an ERISA Defined Benefit Plan

69.     The Saint Peter's Plan is a plan, fund, or program that was established or maintained by Saint Peter's and which by its express terms and surrounding circumstances provides retirement income to employees and/or results in the deferral of income by employees to the termination of their employment or beyond. As such, the Saint Peter's Plan meets the definition of an "employee pension benefit plan" within the meaning of ERISA section 3(2)(A), 29 U.S.C. § 1002(2)(A).

70.     The Saint Peter's Plan does not provide for an individual account for each participant and does not provide benefits solely upon the amount contributed to a participant's account. As such, the Saint Peter's Plan is a defined benefit plan within the meaning of ERISA

section 3(35), 29 U.S.C. § 1002(35), and is not an individual account plan or a "defined

contribution plan" within the meaning of ERISA section 3(34), 29 U.S.C. § 1002(34).

> **2.  Saint Peter's is the Plan Sponsor, Plan Administrator and a Fiduciary; in the Alternative, the Retirement Plan Committee is the Plan Administrator and is a Fiduciary, and the Individual Defendants are also Fiduciaries**

71.     As an employer establishing and/or maintaining the Saint Peter's Plan, Defendant

Saint Peter's is and has been the Plan Sponsor of the Saint Peter's Plan within the meaning of

ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B), at least since 1974.

72.     As Defendant Saint Peter's is and has been the Plan Sponsor of the Saint Peter's

Plan, and the Retirement Plan Committee acts as an agent for Defendant Saint Peter's, Defendant

Saint Peter's is also the Plan Administrator of the Plan within the meaning of ERISA section

3(16)(A), 29 U.S.C. § 1002(16)(A).  As such, Defendant Saint Peter's also is and has been a

fiduciary with respect to the Plan within the meaning of ERISA section 3(21)(A)(iii), 29 §

1002(21)(A)(iii), because the Plan Administrator, by the very nature of the position, has

discretionary authority or responsibility in the administration of the Plan.

73.     Defendant Saint Peter's is also a fiduciary with respect to the Saint Peter's Plan

within the meaning of ERISA section 3(21), 29 U.S.C. § 1002(21), because it exercises

discretionary authority or discretionary control respecting management of the Saint Peter's Plan,

exercises authority and control respecting management or disposition of the Saint Peter's Plan

assets, and/or has discretionary authority or discretionary responsibility in the administration of

the Saint Peter's Plan.

74.      Defendant Retirement Plan Committee, pursuant to the terms of the instrument

under which the Saint Peter's Plan is operated, is acting as an agent of Defendant Saint Peter's,

and designated as the "administrator" of the Saint Peter's Plan.  As such, Defendant Retirement

Plan Committee is also considered the Plan Administrator of the Plan within the meaning of

18

ERISA section 3(16)(A), 29 U.S.C. § 1002(16)(A).  Defendant Retirement Plan Committee also

is and has been a fiduciary with respect to the Plan within the meaning of ERISA section

3(21)(A)(iii), 29 § 1002(21)(A)(iii), because the Plan Administrator, by the very nature of the

position, has discretionary authority or responsibility in the administration of the Plan.

      75.    Defendant Hirsch, as the President and Chief Executive Officer of Saint Peter's, is

also a fiduciary with respect to the Saint Peter's Plan within the meaning of ERISA section

3(21), 29 U.S.C. § 1002(21), because, upon information and belief, he exercises discretionary

authority or discretionary control respecting management of the Saint Peter's Plan, exercises

authority and control respecting management or disposition of the Saint Peter's Plan assets,

and/or has discretionary authority or discretionary responsibility in the administration of the

Saint Peter's Plan.

      76.    Defendant Teufel, as the Vice President and Chief Human Resources Director of

Saint Peter's, is also a fiduciary with respect to the Saint Peter's Plan within the meaning of

ERISA section 3(21), 29 U.S.C. § 1002(21), because, upon information and belief, she exercises

discretionary authority or discretionary control respecting management of the Saint Peter's Plan,

exercises authority and control respecting management or disposition of the Saint Peter's Plan

assets, and/or has discretionary authority or discretionary responsibility in the administration of

the Saint Peter's Plan.

      77.    Defendant Stoldt, as the Vice President and Chief Financial Officer of Saint

Peter's, is also a fiduciary with respect to the Saint Peter's Plan within the meaning of ERISA

section 3(21), 29 U.S.C. § 1002(21), because, upon information and belief, he exercises

discretionary authority or discretionary control respecting management of the Saint Peter's Plan,

exercises authority and control respecting management or disposition of the Saint Peter's Plan

assets, and/or has discretionary authority or discretionary responsibility in the administration of the Saint Peter's Plan.

78.     Defendant Drumbore, as the Vice President and Chief Experience Officer of Saint Peter's, is also a fiduciary with respect to the Saint Peter's Plan within the meaning of ERISA section 3(21), 29 U.S.C. § 1002(21), because, upon information and belief, she exercises discretionary authority or discretionary control respecting management of the Saint Peter's Plan, exercises authority and control respecting management or disposition of the Saint Peter's Plan assets, and/or has discretionary authority or discretionary responsibility in the administration of the Saint Peter's Plan.

79.     Defendant Rak, as former President and Chief Executive Officer of Saint Peter's from 2007 through March of 2017, was also a fiduciary with respect to the Saint Peter's Plan within the meaning of ERISA section 3(21), 29 U.S.C. § 1002(21), because, upon information and belief, he exercised discretionary authority or discretionary control respecting management of the Saint Peter's Plan, exercised authority and control respecting management or disposition of the Saint Peter's Plan assets, and/or had discretionary authority or discretionary responsibility in the administration of the Saint Peter's Plan.

80.     Defendant Ballestero, as former Vice President and Chief Human Resources Director of Saint Peter's from 2006 through March of 2017, was also a fiduciary with respect to the Saint Peter's Plan within the meaning of ERISA section 3(21), 29 U.S.C. § 1002(21), because, upon information and belief, she exercised discretionary authority or discretionary control respecting management of the Saint Peter's Plan, exercised authority and control respecting management or disposition of the Saint Peter's Plan assets, and/or had discretionary authority or discretionary responsibility in the administration of the Saint Peter's Plan.

### 3.    The Saint Peter's Plan Is Not a Church Plan

81.    Saint Peter's claims the Saint Peter's Plan is a Church Plan under ERISA section 3(33), 29 U.S.C. § 1002(33), and the analogous section of the Internal Revenue Code ("IRC"), and is therefore exempt from ERISA's coverage under ERISA section 4(b)(2), 29 U.S.C. § 1003(b)(2).

### a.    Only Two Types of Entities May Maintain a Church Plan, and Saint Peter's is Neither.

82.    Under ERISA section 3(33), 29 U.S.C. § 1002(33), only the following two provisions address which types of entities may maintain a church plan:

- First, under ERISA section 3(33)(A), 29 U.S.C. § 1002(33)(A), a church plan may be maintained by a church or by a convention or association of churches; and

- Second, under ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), a church plan may be maintained by an organization, the principal purpose or function of which is the administration or funding of a retirement plan, if such organization is controlled by or associated with a church or convention or association of churches.

83.    Although other portions of ERISA section 3(33)(C) address, among other matters, who can be *participants* in Church Plans—in other words, which employees can be in Church Plans, etc.—these other portions of ERISA section 3(33)(C) do not add any other type of entity that may *maintain* a church plan. 29 U.S.C. § 1002(33)(C).

84.    The Saint Peter's Plan does not qualify as a church plan under either ERISA section 3(33)(A) or section 3(33)(C)(i), 29 U.S.C. § 3(33)(A) or (C)(i). First, the Saint Peter's Plan is not maintained by any church or convention or association of churches within the

meaning of ERISA section 3(33)(A), 29 U.S.C. § 1002(33)(A). The Saint Peter's Plan is maintained by Saint Peter's for its own employees. Because Saint Peter's is not a church or a convention or association of churches, and does not claim to be a church or a convention or association of churches, the Saint Peter's Plan may not qualify as a church plan within the meaning of ERISA section 3(33)(A), 29 U.S.C. § 1002(33)(A).

85.     Second, the Saint Peter's Plan is not maintained by an "organization" described in ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i)—i.e., one whose principal purpose or function is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both. Because the principal purpose or function of Saint Peter's is to provide healthcare services rather than to administer or fund benefit plans, the Plan does not qualify as a church plan within the meaning of ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

86.     In the alternative, to the extent Saint Peter's claims that the Saint Peter's Plan is "maintained" by a principal purpose organization within the meaning of ERISA section 3(33)(C)(i) because it is administered by a committee within Saint Peter's that has a principal purpose of administering benefit plans, the claim fails because the committee purportedly "administering" the Plan does not have the full range of powers and responsibilities required to "maintain" a plan.  The entity that maintains the plan "has the primary ongoing responsibility (and potential liability) to plan participants." *Advocate*, 137 S. Ct. at 1661.  The only entity with the power to "maintain" the Saint Peter's Plan, which includes the power to fund, continue, amend and/or terminate the Plan, is Saint Peter's, not its internal retirement committee.  The claim further fails because even if a committee within Saint Peter's "maintained" the Plan, such

an internal committee of Saint Peter's does not qualify as a distinct principal-purpose "organization" within the meaning of ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

### b. Even if the Saint Peter's Plan Was Maintained by a Permissible Entity, It Nonetheless Fails to Satisfy Other Elements of the Church Plan Definition.

87.     Under both ERISA section 3(33)(A) and (C)(i), a church plan must be maintained for the employees of a church or a convention or association of churches. 29 U.S.C. § 1002(33)(A), (C)(i).  Participants in the Saint Peter's Plan work for Saint Peter's, a non-profit hospital system. Saint Peter's is not a church or convention or association of churches, and its employees are not employees of a church or convention or association of churches.

88.     Under ERISA section 3(33)(C)(ii), 29 U.S.C. § 1002(33)(C)(ii), however, an employee of a tax-exempt organization that is controlled by or associated with a church or a convention or association of churches may also be considered an employee of a church. But the Saint Peter's Plan also fails this part of the definition, because Saint Peter's is not controlled by or associated with a church or a convention or association of churches within the meaning of ERISA.

89.     Saint Peter's is organized as a non-profit corporation under New Jersey law.

90.     Saint Peter's is governed by a Board of Directors.

91.     Saint Peter's Board of Directors owes fiduciary duties to the non-profit corporation.

92.     Saint Peter's is not controlled by a church or convention or association of churches.

93.     Saint Peter's is not owned by a church or convention or association of churches.

94.     Saint Peter's is not operated by a church or convention or association of churches.

95.     Saint Peter's is not operated by the Catholic Church and does not receive funding from the Catholic Church.[2]

96.     Moreover, Saint Peter's is not "associated with" a church or convention or association of churches within the meaning of ERISA section 3(33)(C)(ii). 29 U.S.C. § 1002(33)(C)(ii). Under ERISA section 3(33)(C)(iv), 29 U.S.C. § 1002(33)(C)(iv), an organization "is associated with a church or a convention or association of churches if it shares common religious bonds and convictions with that church or convention or association of churches." Saint Peter's does not share common religious bonds and convictions with a church or association of churches.

97.     Saint Peter's does not impose any denominational requirement on its employees. Instead, Saint Peter's recruits and hires from the greatest employment pool possible—one not restricted by any faith.

98.     Saint Peter's has a practice of affiliating with hospitals that claim no religious affiliation, including Rutgers Biomedical and Health Sciences, Kean University, and The Children's Hospital of Philadelphia.  In choosing to compete in the commercial areas of healthcare services, Saint Peter's must be willing to accept neutral regulations, such as ERISA, imposed to protect its employees' legitimate interests.

99.     Saint Peter's provides non-denominational chapels and encourages its clients to seek the faith of their own choosing.

100.     Saint Peter's does not impose any denominational requirements on its patients.

---

[2] Notably, if Saint Peter's was "controlled by" the Catholic Church, then the Catholic Church itself would be exposed to significant potential liability stemming from medical malpractice and other legal claims related to the provision of medical care by Saint Peter's.

101.    For these same reasons, the Saint Peter's Plan further fails to satisfy the requirements of ERISA section 3(33)(C)(i) because, even if the Saint Peter's Plan was "maintained" by the an internal committee and even if the committee qualified as a principal-purpose "organization," ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), requires that a principal purpose organization be "controlled by or associated with" a church or a convention or association of churches.  Saint Peter's internal committee, like Saint Peter's, is not controlled by or associated with a church or convention or association of churches" within the meaning of ERISA.

> **c.    Even if the Saint Peter's Plan Could Otherwise Qualify as a Church Plan under ERISA Section 3(33)(A) or (C)(i), It is Excluded From Church Plan Status under ERISA Section 3(33)(B)(ii)**

102.    Under ERISA section 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii), a plan is specifically excluded from church plan status if less than substantially all of the plan participants are members of the clergy or employed by an organization controlled by or associated with a church or convention or association of churches.  Even if the Saint Peter's Plan could otherwise qualify as a church plan under ERISA sections 3(33)(A) or (C)(i), 29 U.S.C. §§ 1002(33)(A), (C)(i), the Saint Peter's Plan still would be foreclosed from church plan status under section 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii) because, on information and belief, the Saint Peter's Plan covers more than an insubstantial number of employees that work for subsidiaries or affiliates that are not controlled by or associated with any church or convention or association of churches that are not tax-exempt.

4.    **Even if the Saint Peter's Plan Could Otherwise Qualify as a Church Plan under ERISA, the Church Plan Exemption, as Claimed By Saint Peter's, Violates the establishment Clause of the First Amendment of the Constitution, and Is Therefore Void and Ineffective**

103.    The church plan exemption is an accommodation *for churches* that establish and maintain pension plans, and it allows such plans to be exempt from ERISA.

104.    The Establishment Clause guards against the establishment of religion by the government. The government "establishes religion" where, as here, it exempts religious entities, but not secular entities, from a neutral, generally applicable law and such exemption is not required to alleviate a substantial burden on religious practice or to avoid government entanglement in religion. ERISA is a neutral statute that governs pension benefits, and thus application of the church plan exemption to Saint Peter's relieves Saint Peter's of no genuine religious burden. Moreover, application of the church plan exemption to Saint Peter's creates more government entanglement with alleged religious beliefs than compliance with ERISA. Accordingly, application of the church plan exemption to Saint Peter's is not a valid religious accommodation. Extension of the church plan exemption to Saint Peter's and other hospital systems that are not themselves churches, but that claim ties to a church, while not exemption analogous secular hospital systems, unconstitutionally privileges religious adherents over non-adherents.

105.    Such a naked preference for religion is particularly improper where, as here, the burdens of the exemption are imposed on Saint Peter's employees. Extension of the church plan exemption to Saint Peter's privileges Saint Peter's for its claimed religious beliefs at the expense of its employees, who are told that religion is not a prerequisite to their employment, yet who are then denied the benefit of insured, funded pensions, as well as many other important ERISA

protections. Similarly, Saint Peter's has a privileged economic advantage over its competitors in the commercial arena it has chosen, based solely on Saint Peter's claimed religious beliefs.

106.    As set forth in more detail below in Count IX, the extension of the church plan exemption to Saint Peter's, which is not a church, violates the Establishment Clause and thus is void and ineffective.

## VII.    CLASS ALLEGATIONS

107.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class of persons similarly situated: All participants or beneficiaries of any Plan operated as or claimed by Saint Peter's to be a Church Plan as of the date of the filing of this Amended Complaint. Excluded from the Class are any high-level executives at Saint Peter's or any employees who have responsibility or involvement in the administration of the Plan, or who are subsequently determined to be fiduciaries of the Saint Peter's Plan, including the Individual Defendants.

### A.    Numerosity

108.    The exact number of Class members is unknown to Plaintiff at this time, but may be readily determined from records maintained by Saint Peter's.    On information and belief, there were over 4,700 participants whose benefits in the Saint Peter's pension plan had vested when the Plan was frozen and when Saint Peter's made public its intention to convert to a church plan, and thus the Class is so numerous that joinder of all members is impracticable.

### B.    Commonality

109.    The issues regarding liability in this case present common questions of law and fact, with answers that are common to all members of the Class, including (1) whether the Plan meets the definition of ERISA-covered plan or is exempt from ERISA as a church plan, (2) whether Defendants have failed to administer, fund, and otherwise operate the Plan in

27

accordance with ERISA; (3) whether the church plan exemption, as claimed by Saint Peter's, violates the Establishment Clause of the First Amendment; and (4) whether Defendants failed to comply with their obligations to fund the Plan under either ERISA, the Plan documents, or common law.

110.   The issues regarding the relief are also common to the members of the Class as the relief will consist of (1) a declaration that the Plan is an ERISA covered plan; (2) an order requiring that the Plan comply with the administration and funding requirements of ERISA; (3) an order requiring Saint Peter's to pay civil penalties to the Class, in the same statutory daily amount for each member of the Class; and/or (4) an order requiring Saint Peter's to comply with its obligations to run an ERISA-compliant Plan.

### C.    Typicality

111.   Plaintiff's claims are typical of the claims of the other members of the Class because his claims arise from the same event, practice and/or course of conduct, namely Defendants' failure to maintain the Plan in accordance with ERISA, the requirements of the Plan documents, and/or the common law. Plaintiff's claims are also typical because all Class members are similarly affected by Defendants' wrongful conduct.

112.   Plaintiff's claims are also typical of the claims of the other members of the Class because, to the extent Plaintiff seeks equitable relief, it will affect all Class members equally. Specifically, the equitable relief sought consists primarily of (i) a declaration that the Saint Peter's Plan is not a church plan;  (ii) a declaration that the Saint Peter's Plan is an ERISA covered plan that must comply with the administration, funding, and other requirements of ERISA; (iii) injunctive relief requiring Defendants to comply with the administration, funding, and other requirements of ERISA, the Plan documents, and/or the common law; and (iv) an order

requiring Saint Peter's to comply with its obligations under state law to fund the Plan, as promised, pursuant to ERISA.

113.     In addition, Plaintiff's claims for monetary relief is for civil fines to the Class in the same statutory daily amount for each member of the Class.

114.     Saint Peter's does not have any defenses unique to Plaintiff's claims that would make Plaintiff's claims atypical of the remainder of the Class.

**D.     Adequacy**

115.     Plaintiff will fairly and adequately represent and protect the interests of all members of the Class.

116.     Plaintiff does not have any interests antagonistic to or in conflict with the interests of the Class.

117.     Defendant Saint Peter's and the Individual Defendants have no unique defenses against Plaintiff that would interfere with Plaintiff's representation of the Class.

118.     Plaintiff has engaged counsel with extensive experience prosecuting class actions in general and ERISA class actions in particular.

**E.     Rule 23(b)(1) Requirements.**

119.     The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

120.     The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede the ability of other members of the Class to protect their interests.

**F.      Rule 23(b)(2) Requirements.**

121.     Class action status is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

**G.      Rule 23(b)(3) Requirements.**

122.     If the Class is not certified under Rule 23(b)(1) or (b)(2) then certification under (b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members. The common issues of law or fact that predominate over any questions affecting only individual members include: (1) whether the Plan is exempt from ERISA as Church Plan, (2) whether the fiduciaries of the Plan have failed to administer and fund the Plan in accordance with ERISA; (3) whether the Church Plan exemption, as claimed by Saint Peter's, violates the Establishment Clause of the First Amendment; and (4) whether Saint Peter's has failed to comply with its obligations to fund the Plan under ERISA, the Plan documents, or the common law. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

A.    Individual class members do not have an interest in controlling the prosecution of these claims in individual actions rather than a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plan or affect each class member equally;

B.    Individual Class members also do not have an interest in controlling the prosecution of these claims because the monetary relief that they could seek in any individual action is identical to the relief that is being sought on their behalf herein;

C.      There is no other litigation begun by any other Class members concerning the issues

raised in this litigation;

D.       This litigation is properly concentrated in this forum, which is where Defendant

Saint Peter's is headquartered; and

E.      There are no difficulties managing this case as a class action.


## VIII.   CAUSES OF ACTION

### COUNT I
### (Claim for Equitable Relief Pursuant to ERISA Section 502(A)(3) Against Defendant Saint Peter's)

123.    Plaintiff repeats and re-alleges the allegations contained in all foregoing

paragraphs herein.

124.    ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or

beneficiary to bring a civil action to obtain "appropriate equitable relief . . . to enforce any

provisions of this title." Pursuant to this provision, and 28 U.S.C. §§ 2201 and 2202, and Federal

Rule of Civil Procedure 57, Plaintiff seeks declaratory relief that the Saint Peter's Plan is not a

Church Plan within the meaning of ERISA section 3(33), 29 U.S.C. § 1002(33), and thus is

subject to the provisions of Title I and Title IV of ERISA.

125.    ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), also authorizes a participant or

beneficiary to bring a civil action to "(A) to enjoin any act or practice which violates any

provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief

(i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of

the plan." Pursuant to these provisions, Plaintiff seeks orders directing the Saint Peter's Plan's

sponsor and administrator, Saint Peter's, to bring the Saint Peter's Plan into compliance with

ERISA, including the reporting, vesting, and funding requirements of Parts 1, 2 and 3 of ERISA, 29 U.S.C. §§ 1021- 31, 1051-61, 1081-85.

126.    ERISA section 502(a)(2), 29 U.S.C. § 1132(2), authorizes a participant or beneficiary to bring a civil action for appropriate relief under 29 U.S.C. § 1109(a), against a fiduciary "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" and the fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate." ERISA § 409(a), 29 U.S.C. § 1109(a). Because the operation of the Plans as non-ERISA Plans was a breach of Defendants' fiduciary duties, Defendants breached their fiduciary duties and Plaintiffs also seek Plan-wide equitable and remedial relief under ERISA section 502(a)(2).

127.    As the Saint Peter's Plan is not a church plan within the meaning of ERISA section 3(33), 29 U.S.C. § 1002(33), and meets the definition of a pension plan under ERISA section 3(2), 29 U.S.C. § 1002(2), the Saint Peter's Plan should be declared to be an ERISA-covered pension plan, and Defendants should be ordered to bring the Saint Peter's Plan into compliance with ERISA, including by remedying the violations set forth below.

## COUNT II
### (Claim for Violation of Reporting and Disclosure Provisions Against Defendant Saint Peter's, or in the alternative, the Retirement Plan Committee)

128.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

### A.    Summary Plan Descriptions

129.    Since at least 2006, Saint Peter's, or in the alternative, the Retirement Plan Committee, has failed to provide Plaintiff or any member of the Class with a Summary Plan

Description with respect to the Saint Peter's Plan that meets the requirements of ERISA section 102, 29 U.S.C. § 1022, and the regulations promulgated thereunder.

130.    Because Saint Peter's, or in the alternative, the Retirement Plan Committee, has been the Plan Administrator of the Plan at all relevant times, it violated ERISA section 104, 29 U.S.C. § 1024, by failing to provide Plaintiff and members of the Class with adequate Summary Plan Descriptions.

### B.    Annual Reports

131.    Since at least 2006, Saint Peter's, or in the alternative, the Retirement Plan Committee, has failed to file an annual report with respect to the Saint Peter's Plan with the Secretary of Labor in compliance with ERISA section 103, 29 U.S.C § 1023, nor have they filed a Form 5500 and associated schedules and attachments, which the Secretary has approved as an alternative method of compliance with ERISA section 103, 29 U.S.C. § 1023.

132.    Because Saint Peter's, or in the alternative, the Retirement Plan Committee,  has been the Plan Administrator of the Saint Peter's Plan at all relevant times, Saint Peter's, or in the alternative, the Retirement Plan Committee, has violated ERISA section 104(a), 29 U.S.C. § 1024(a), by failing to file annual reports with respect to the Saint Peter's Plan with the Secretary of Labor in compliance with ERISA section 103, 29 U.S.C. § 1023, or Form 5500s and associated schedules and attachments that the Secretary has approved as an alternate method of compliance with ERISA section 103, 29 U.S.C. § 1023.

### C.    Summary Annual Reports

133.    Since at least 2006, Saint Peter's, or in the alternative, the Retirement Plan Committee, has failed to furnish Plaintiff or any member of the Class with a Summary Annual Report with respect to the Saint Peter's Plan in compliance with ERISA section 104(b)(3) and regulations promulgated thereunder.  ERISA § 104(b)(3), 29 U.S.C. § 1024(b)(3).

134.     Because Saint Peter's, or in the alternative, the Retirement Plan Committee, has

been the Plan Administrator of the Saint Peter's Plan at all relevant times, Saint Peter's, or in the

alternative, the Retirement Plan Committee, has violated ERISA section 104(b)(3), 29 U.S.C. §

1024(b)(3), by failing to furnish Plaintiff or any member of the Class with a Summary Annual

Report with respect to the Saint Peter's Plan in compliance with ERISA section 104(b)(3) and

regulations promulgated thereunder.  ERISA § 104(b)(3), 29 U.S.C. § 1024(b)(3).

### D.      Notification of Failure to Meet Minimum Funding

135.     At no time has Saint Peter's furnished Plaintiff or any member of the Class with a

Notice with respect to the Saint Peter's Plan pursuant to ERISA section 101(d)(1), 29 U.S.C. §

1021(d)(1), informing them that Saint Peter's had failed to make payments required to comply

with ERISA section 302, 29 U.S.C. § 1082, with respect to the Saint Peter's Plan.

136.     Defendant Saint Peter's is the employer that maintains the Saint Peter's Plan.

137.     Since at least 2006, Defendant Saint Peter's has failed to fund the Saint Peter's

Plan in accordance with ERISA section 302, 29 U.S.C. § 1082.

138.     As the employer maintaining the Saint Peter's Plan, Defendant Saint Peter's has

violated ERISA section 302, 29 U.S.C. § 1082, by failing to fund the Saint Peter's Plan, is liable

for its own violations of ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1), and as such may be

required by the Court to pay Plaintiff and each class member up to $110 per day (as permitted by

29 C.F.R. section 2575.502(c)(3)) for each day that Defendant has failed to provide Plaintiff and

each Class member with the notice required by ERISA section 101(d)(1), 29 U.S.C. §

1021(d)(1).

### E.      Funding Notices

139.     At no time has Saint Peter's, or in the alternative, the Retirement Plan Committee,

furnished Plaintiff or any member of the Class with a Funding Notice with respect to the Saint

Peter's Plan pursuant to ERISA section 101(f), 29 U.S.C. § 1021(f).

140.     At all relevant times, Defendant Saint Peter's, or in the alternative, the Retirement

Plan Committee, has been the administrator of the Saint Peter's Plan.

141.     As the administrator of the Saint Peter's Plan, Defendant Saint Peter's, or in the

alternative, the Retirement Plan Committee, has violated ERISA section 101(f) by failing to

provide each participant and beneficiary of the Saint Peter's Plan with the Funding Notice

required by ERISA section 101(f), and as such may be required by the Court to pay Plaintiff and

each class member up to $110 per day (as permitted by 29 C.F.R. section 2575.502(c)(3)) for

each day that Defendant has failed to provide Plaintiff and each Class member with the notice

required by ERISA section 101(f).  ERISA § 101(f), 29 U.S.C. § 1021(f).

### F.      Pension Benefit Statements

142.     Since at least 2006, Saint Peter's, or in the alternative, the Retirement Plan

Committee, has not furnished Plaintiff or any member of the Class with a Pension Benefit

Statement with respect to the Saint Peter's Plan pursuant to ERISA section 105(a)(1), 29 U.S.C.

§ 1025(a)(1).

143.     At all relevant times, Defendant Saint Peter's, or in the alternative, the Retirement

Plan Committee, has been the administrator of the Saint Peter's Plan.

144.     As the administrator of the Saint Peter's Plan, Defendant Saint Peter's, or in the

alternative, the Retirement Plan Committee, has violated ERISA section 105(a)(1) and as such

may be required by the Court to pay Plaintiff and each Class member up to $110 per day (as

permitted by 29 C.F.R. section 2575.502(c)(3)) for each day that Defendant has failed to provide

Plaintiff and each Class member with the Pension Benefit Statements required by ERISA section 105(a)(1).  29 U.S.C. § 1025(a)(1).

## COUNT III
### (Claim for Failure to Provide Minimum Funding Against Defendant Saint Peter's)

145.  Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

146.  ERISA section 302, 29 U.S.C. § 1082, establishes minimum funding standards for defined benefit plans that require employers to make minimum contributions to their plans so that each plan will have assets available to fund plan benefits if the employer maintaining the plan is unable to pay benefits out of its general assets.

147.  As the employer maintaining the Plan, Saint Peter's was responsible for making the contributions that should have been made pursuant to ERISA section 302, 29 U.S.C. § 1082, at a level commensurate with that which would be required under ERISA.

148.  Since at least 2006, Saint Peter's has failed to make contributions in satisfaction of the minimum funding standards of ERISA section 302, 29 U.S.C. § 1082.

149.  By failing to make the required contributions to the Saint Peter's Plan, either in whole or in partial satisfaction of the minimum funding requirements established by ERISA section 302, Defendant Saint Peter's has violated ERISA section 302, 29 U.S.C. § 1082.

## COUNT IV
### (Claim for Failure to Establish the Plan Pursuant to a Written Instrument Meeting the Requirements of ERISA Section 402 Against Defendant Saint Peter's)

150.  Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

151.  ERISA section 402, 29 U.S.C. § 1102, provides that every plan will be established pursuant to a written instrument which will provide among other things "for one or more named

36

fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan" and will "provide a procedure for establishing and carrying out a funding policy and method constituent with the objectives of the plan and the requirements of [Title I of ERISA]."

152.    Although the benefits provided by the Saint Peter's Plan were described to the employees and retirees of Saint Peter's (and/or its affiliates and subsidiaries) in various written communications, the Saint Peter's Plan has not been established pursuant to a written instrument meeting the requirements of ERISA section 402, 29 U.S.C. § 1102.

153.    Saint Peter's has been responsible for maintaining the Saint Peter's Plan and has amendment power over the Saint Peter's Plan, and violated section 402 by failing to promulgate written instruments in compliance with ERISA section 402 to govern the Saint Peter's Plan operations and administration.  ERISA § 402, 29 U.S.C. § 1102.

## COUNT V
### (Claim for Failure to Establish a Trust Meeting the Requirements of ERISA Section 402 Against Defendant Saint Peter's)

154.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

155.    ERISA section 403, 29 U.S.C. § 1103, provides, subject to certain exceptions not applicable here, that all assets of an employee benefit plan shall be held in trust by one or more trustees, that the trustees shall be either named in the trust instrument or in the plan instrument described in section 402(a), 29 U.S.C. § 1102(a), or appointed by a person who is a named fiduciary. ERISA § 403(a), 29 U.S.C. § 1103(a).

156.    Although the Saint Peter's Plan assets have been held in trust, the trust does not meet the requirements of ERISA section 403, 29 U.S.C. § 1103.

157.    As Defendant Saint Peter's has been responsible for maintaining the Saint Peter's Plan and has amendment power over the Saint Peter's Plan, Defendant Saint Peter's violated section 403 by failing to put the Saint Peter's Plan assets in trust in compliance with ERISA section 403.  29 U.S.C. § 1103.

## COUNT VI
### (Claim for Clarification of Future Benefits Under ERISA Sections 502(a)(1)(B) and 502(a)(3) Against All Defendants)

158.    Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

159.    ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides, in part, that a participant or beneficiary may bring a civil action to "clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

160.    Plaintiffs and members of the Class have not been provided ERISA-compliant benefit statements.

161.    Pursuant to ERISA sections 502(a)(1)(B), 502(a)(3), 29 U.S.C. § 1132(a)(1)(B), 1132(a)(3), once the Plans are made compliant with ERISA, Plaintiffs seek to clarify their rights under the terms of the Plans and to require the Defendant Saint Peter's, or in the alternative, the Retirement Plan Committee, to provide Plaintiffs and the Class with ERISA-compliant benefit statements.

## COUNT VII
### (Claim for Civil Money Penalty Pursuant to ERISA Section 502(a)(1)(A) Against Defendant Saint Peter's, or in the alternative, the Retirement Plan Committee)

162.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

163.     ERISA section 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), provides that a participant may bring a civil action for the relief provided in ERISA section 502(c), 29 U.S.C. § 1132(c).

164.     ERISA section 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. section 2575.502c-3, provides that an employer maintaining a plan who fails to meet the notice requirement of ERISA section 101(d), 29 U.S.C. § 1021(d), with respect to any participant and beneficiary may be liable for up to $110 per day from the date of such failure.

165.     ERISA section 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. section 2575.502c-3, provides that an administrator of a defined benefit pension plan who fails to meet the notice requirement of ERISA section 101(f), 29 U.S.C. § 1021(f), with respect to any participant and beneficiary may be liable for up to $110 per day from the date of such failure.

166.     ERISA section 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. section 2575.502c-3, provides that an administrator of a defined benefit pension plan who fails to provide a Pension Benefit Statement at least once every three years to a participant with a nonforfeitable accrued benefit who is employed by the employer maintaining the plan at the time the statement is to be furnished as required by ERISA section 105(a), 29 U.S.C. § 1025(a), may be liable for up to $110 per day from the date of such failure.

167.     Because Defendant Saint Peter's, as the employer, has failed to give the notices required by ERISA section 101(d), 29 U.S.C. § 1021(d) as set forth in Count II Subpart D, Defendant Saint Peter's is liable to Plaintiff and each member of the Class in an amount up to $110 per day from the date of such failures until such time that notices are given and the statement is provided, as the Court, in its discretion, may order.

2331227 v1

168.     As Defendant Saint Peter's, or in the alternative, the Retirement Plan Committee, is the Saint Peter's Plan Administrator and has failed to give the notices required by ERISA section 101(f), 29 U.S.C. § 1021(f), and the Pension Benefit Statement required by ERISA section 105(a), 29 U.S.C. § 1025(a), as set forth in Count II Subparts E & F, Defendant Saint Peter's is liable to Plaintiff and each member of the Class in an amount up to $110 per day from the date of such failures until such time that notices are given and the statement is provided, as the Court, in its discretion, may order.

## COUNT VIII
### (Claim for Breach of ERISA Fiduciary Duty Against All Defendants)

169.     Plaintiff incorporates and realleges by reference the foregoing paragraphs as if fully set forth herein.

170.     Plaintiff brings this Count VIII for breach of fiduciary duty pursuant to ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2).

**A.     Breach of the Duty of Prudence and Loyalty**

171.     ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1), provides in pertinent part that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

(a)     for the exclusive purpose of:

      (i)     providing benefits to participants and beneficiaries; and

      (ii)     defraying reasonable expenses of administering the plan;

(b)     with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . [and]

(c)     in accordance with the documents and instruments governing the plan insofar as such

documents and instruments are consistent with the provisions of this [title I of

ERISA] and title IV.

ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

172.    As fiduciaries with respect to the Saint Peter's Plan, Defendants had the authority

to enforce each provision of ERISA alleged to have been violated in the foregoing paragraphs

pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3). Having the authority to enforce the

provisions of ERISA at those respective times, ERISA section 404(a)(1)(A)-(D), 29 U.S.C. §

1104(a)(1)(A)-(D), imposed on Defendants the respective duty to enforce those provisions in the

interest of the participants and beneficiaries of the Saint Peter's Plan during the times that each

was a fiduciary of the Saint Peter's Plan.

173.    Since at least 2006, Defendants have not enforced any of the provisions of ERISA

set forth in Counts I-V with respect to the Saint Peter's Plan.

174.    By failing to enforce the provisions of ERISA set forth in Counts I-V, Defendants

breached the fiduciary duties that they owed to Plaintiff and the Class.

175.    The failure of Defendants to enforce the funding obligations owed to the Plan has

resulted in a loss to the Saint Peter's Plan equal to the foregone funding and earnings thereon,

and profited Defendant Saint Peter's by providing it the use of money owed to the Saint Peter's

Plan for its general business purposes.

### B.    Prohibited Transactions

176.    ERISA section 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits a fiduciary

with respect to a plan from directly or indirectly causing a plan to extend credit to a party in

interest, as defined in ERISA section 3(14), 29 U.S.C. § 1002(14), if he or she knows or should

know that such transaction constitutes an extension of credit to a party in interest.

41

177.     ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to use assets for the benefit of a party in interest, if he or she knows or should know that such transaction constitutes a use of plan assets for the benefit of a party in interest.

178.     ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits the use of plan assets by a fiduciary with respect to a plan in his or her own interest or for his or her own account.

179.     As fiduciaries with respect to the Plan and, with respect to Saint Peter's, as an employer of employees covered by the Plan, the Retirement Plan Committee, as Plan administrator, and, with respect to Defendants Hirsch, Teufel, Stoldt, Drumbore, Rak, and Ballestero, as Officers of Saint Peter's, the Defendants at all relevant times were parties in interest with respect to the Saint Peter's Plan pursuant to ERISA section 3(14)(A) and (C), 29 U.S.C. § 1002(14)(A) and (C).

180.     By failing to enforce the funding obligations created by ERISA and owed to the Plan, Defendants extended credit from the Saint Peter's Plan to Saint Peter's in violation of ERISA section 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), when Defendants knew or should have known that their failure to enforce the funding obligation constituted such an extension of credit.

181.     By failing to enforce the funding obligations created by ERISA and owed to the Saint Peter's Plan, Defendants used Saint Peter's Plan assets for Saint Peter's own benefit, when Defendants knew or should have known that their failure to enforce the funding obligations constituted such a use of Saint Peter's Plan assets, in violation of ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

182.     By failing to enforce the funding obligations created by ERISA and owed to the Saint Peter's Plan, Defendants used Saint Peter's Plan assets in Saint Peter's interest in violation of ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1).

183.     The failure of Defendants to enforce the funding obligations owed to the Saint Peter's Plan has resulted in a loss to the Saint Peter's Plan equal to the foregone funding and earnings thereon.

184.     The failure of Defendants to enforce the funding obligations owed to the Saint Peter's Plan has profited Defendant Saint Peter's by providing it the use of money owed to the Saint Peter's Plan for its general business purposes.

### C.     Failure to Monitor Fiduciaries
(This sub-Count alleges fiduciary breach against Defendant Saint Peter's)

185.     As alleged above, during the Class Period, Defendant Saint Peter's was a named fiduciary pursuant to ERISA section 402(a)(1), 29 U.S.C. § 1102(a)(1), or a de facto fiduciary within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A), or both. Thus, it was bound by the duties of loyalty, exclusive purpose, and prudence.

186.     The scope of the fiduciary responsibilities of Saint Peter's included the responsibility to appoint, and remove, and thus, monitor the performance of other fiduciaries.

187.     Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries perform their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.

188.     The monitoring duty further requires that appointing fiduciaries have procedures in place so that they may review and evaluate, on an ongoing basis, whether the "hands-on" fiduciaries are doing an adequate job (for example, by requiring periodic reports on their work

43

and the plan's performance, and by ensuring that they have a prudent process for obtaining the information and resources they need). In the absence of a sensible process for monitoring their appointees, the appointing fiduciaries would have no basis for prudently concluding that their appointees were faithfully and effectively performing their obligations to plan participants or for deciding whether to retain or remove them.

189.    Furthermore, a monitoring fiduciary must provide the monitored fiduciaries with the complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets, or that may have an extreme impact on the plan and the fiduciaries' investment decisions regarding the plan.

190.    Defendant Saint Peter's breached its fiduciary monitoring duties by, among other things: (a) failing to appoint persons who would run the Plan as an ERISA Plan; (b) failing to ensure that the monitored fiduciaries appreciated the true extent of not running the Plan as an ERISA Plan; (c) to the extent any appointee lacked such information, failing to provide complete and accurate information to all of their appointees such that they could make sufficiently informed fiduciary decisions with respect to the Plan; and (d) failing to remove appointees whose performance was inadequate in that they continued to run the Plan as a non-ERISA Plan, and who breached their fiduciary duties under ERISA.

191.    The failure of Defendant Saint Peter's to enforce the funding obligations owed to the Plan has resulted in a loss to the Plan equal to the foregone funding and earnings thereon, and profited Defendant Saint Peter's by providing it the use of money owed to the Plan for its general business purposes.

2331227 v1

### D. Co-Fiduciary Liability

192.     As alleged above, all Defendants were named fiduciaries pursuant to ERISA section 402(a)(1), 29 U.S.C. § 1102(a)(1), or de facto fiduciaries within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A), or both. Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

193.     ERISA section 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he knows of a breach and fails to remedy it, knowingly participates in a breach, or enables a breach. Defendants breached all three provisions.

194.     **Knowledge of a Breach and Failure to Remedy.**  ERISA section 405(a)(3),  29 U.S.C. § 1105, imposes co-fiduciary liability on a fiduciary for a fiduciary breach by another fiduciary if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. Each of the Defendants knew of the breaches by the other fiduciaries and made no efforts, much less reasonable ones, to remedy those breaches.

195.     Because Defendants knew that the Plan was not being run as an ERISA Plan, Defendants knew that the other Defendants were breaching their duties by not complying with ERISA. Yet, they failed to undertake any effort to remedy these breaches.

196.     **Knowing Participation in a Breach.** ERISA section 405(a)(1), 29 U.S.C. § 1105(1), imposes liability on a fiduciary for a breach of fiduciary responsibility by another fiduciary with respect to the same plan if he knowingly participates in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach.

Saint Peter's knowingly participated in the fiduciary breaches of the other Defendants in that it benefited from the Plan not being run as an ERISA Plan.

197.    **Enabling a Breach.** ERISA section 405(a)(2), 29 U.S.C. § 1105(2), imposes liability on a fiduciary if, by failing to comply with ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled another fiduciary to commit a breach.

198.    The failure of Defendant Saint Peter's to monitor the Plan Administrator (Saint Peter's, or in the alternative, the Retirement Plan Committee), enabled the Plan Administrator to breach their duties.

199.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan is currently underfunded, meaning that the Plan does not have sufficient assets to pay all accrued benefits they have promised to their participants and beneficiaries and are legally obligated to pay under ERISA.

200.    The failure of Defendants to enforce the funding obligations owed to the Plan has resulted in a loss to the Plan equal to the foregone funding and earnings thereon, and profited Defendant Saint Peter's by providing it the use of money owed to the Plan for its general business purposes.

E.    **Predecessor Liability**

201.     A fiduciary has a continuing duty to remedy breaches of predecessor fiduciaries, including breaches in the failure to comply with ERISA.

202.    For the reasons stated above, the predecessor Plan fiduciaries, including Defendants Rak, Ballestero and Stoldt, breached their fiduciary duties by failing to run the Plan as an ERISA plan. The successor fiduciary defendants, including Defendants Hirsch, Teufel,

46

Stoldt, Drumbore, were aware that their predecessor fiduciaries had breached their duties in ending the Plan's compliance with ERISA.

203.     The successor fiduciary defendants breached their duties by failing to take adequate steps to remedy their predecessors' breaches, including failure to (i) enforce ERISA funding obligations, (ii) pay Pension Benefit Guaranty Corporation (PBGC) insurance premiums, and (iii) provide Plan participants with ERISA's reporting and disclosure materials (including the provision of summary plan descriptions, annual reports, summary annual reports, funding notices, and pension benefit statements).

204.     As a result of the successor fiduciary defendants' breaches, the Plan suffered losses equal to the foregone funding and earnings thereon, and profited Defendant Saint Peter's by providing it the use of money owed to the Plan for its general business purposes.

### COUNT IX
**(Claim for Declaratory Relief That the Church Plan Exemption, as Claimed by Saint Peter's, Violates the Establishment Clause of the First Amendment of the Constitution, and Is Therefore Void and Ineffective)**

205.     Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

206.     The church plan exemption exempts churches and conventions and associations of churches, under certain circumstances, from compliance with ERISA.

207.     Application of the church plan exemption to hospitals like Saint Peter's—entities that have chosen to compete with commercial businesses by entering the economic arena and trafficking in the marketplace—would effect an exemption from a neutral, generally applicable statute that is available to hospital systems with some connection to religion but not to analogous secular hospital systems.

2331227 v1

208.     An exemption from a neutral, generally applicable statute that is available

exclusively to religious entities is an unconstitutional establishment of religion unless the

exemption is necessary to alleviate a substantial, state-imposed burden on religious exercise or to

avoid substantial government entanglement in religion. Application of the church plan exemption

to hospitals like Saint Peter's accomplishes neither purpose.

209.     An exemption from ERISA for hospitals like Saint Peter's is not required to

alleviate a substantial, state-imposed burden on religious exercise. ERISA is a neutral statute that

governs pension benefits. It is materially indistinguishable from the array of neutral

Congressional enactments that do not significantly burden religious exercise when applied to

commercial activities. Saint Peter's maintains multiple other, separate ERISA-governed plans,

which further evidences that ERISA creates no undue burden on any genuine religious practice

of Saint Peter's.

210.     An exemption from ERISA for hospitals like Saint Peter's is not required to avoid

government entanglement in religion. ERISA does not require government entanglement in

religion. Although Congress enacted the church plan exemption to avoid "examination of books

and records" that "might be regarded as an unjustified invasion of the confidential relationship

with regard to churches and their religious activities,"[3] this purpose has no application to

hospitals like Saint Peter's. Saint Peter's is not a church and is neither run by, nor financially

connected to, any church. Unlike a church, Saint Peter's has *no confidential books and records* to

shield from government scrutiny because Saint Peter's already purports to disclose all material

financial records and relationships when it seeks Medicare and Medicaid reimbursements and

---

[3] S. Rep. No. 93-383 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4889, 4965.

issues tax-exempt bonds. Thus, application of the exemption to hospitals like Saint Peter's is not necessary to further Congress' stated purpose for enacting the church plan exemption.

211.    Indeed, an exemption from ERISA for hospitals like Saint Peter's creates more government entanglement in religion than would the application of ERISA. Saint Peter's claim to the church plan exemption requires courts and government agencies to examine religious "convictions" of hospitals like Saint Peter's to determine whether they are "shared" with a church, in the absence of any actual church responsibility for the pensions. This *creates* entanglement between government and putative religious beliefs. ERISA compliance, on the other hand, requires *zero* entanglement with religion for Saint Peter's because ERISA is a neutral statute that regulates pension protections and Saint Peter's has no relevant confidential books, records or relationships.

212.    Because it is not necessary to alleviate substantial government burden on religious exercise or to avoid government entanglement in religion, application of the church plan exemption to hospitals like Saint Peter's serves no purpose but to demonstrate government endorsement of religion.

213.    Even if the application of the church plan exemption to hospitals like Saint Peter's were a permissible religious accommodation, it still would run afoul of the Establishment Clause because the costs and burdens of the exemption are imposed on Saint Peter's workers. To be constitutional, a religious accommodation must not impose burdens on non-adherents without due consideration of their interests. Saint Peter's tells prospective employees that their choice of faith, or lack thereof, is not a factor in the recruiting and hiring of its employees. Thus, as a practical matter, and by Saint Peter's own design, the Plan's participants include people of a vast number of divergent faiths. The church plan exemption, as claimed by Saint Peter's, places its

thousands of longtime employees' justified reliance on their pension benefits at great risk, including because the Plan is uninsured and underfunded. In addition, Saint Peter's fails to provide the multitude of other ERISA protections designed to safeguard its employees' pension. The church plan exemption, as claimed by Saint Peter's, provides no consideration of the harm that it causes to Saint Peter's employees.

214.     The church plan exemption, as applied to hospitals like Saint Peter's, also fails because it does not provide consideration for the harms imposed on competing hospital systems that do not claim religious affiliations. Saint Peter's commercial rivals face material disadvantages in their competition with Saint Peter's because the rivals must use their current assets to fully fund, insure (through premiums to the PBGC), and administer their pension plans, as well as providing other ERISA protections. In claiming that the Plan is an exempt church plan, Saint Peter's enjoys a material competitive advantage because it is able to divert significant cash, which otherwise would be required to fund, insure (through premiums to the PBGC), and administer the Plan, to its competitive growth strategy. The church plan exemption, as claimed by Saint Peter's, provides no consideration of the disadvantage it creates for Saint Peter's competitors.

215.     Plaintiffs seek a declaration by the Court that the church plan exemption, as claimed by Saint Peter', is unconstitutional under the Establishment Clause of the First Amendment, and is therefore void and ineffective.

## COUNT X[4]

### (Alternative Claim for Breach of Contract and Specific Performance Against Defendant Saint Peter's)

216.     Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

217.     Saint Peter's has repeatedly promised to fund the Plaintiff's pension and the other Class members, and to pay defined benefit pensions upon retirement in exchange for their continued employment.

218.     At all relevant times, Saint Peter's was the "sponsor" and "employer" with respect to the Saint Peter's Plan.

219.     In exchange for employment, Plaintiff and other Class members were offered remuneration which included defined benefit pension plans that would be operated in compliance with ERISA and all of the protections that ERISA entails.

220.     In the Saint Peter's Plan documents, including applicable plan restatements and summary plan descriptions, Saint Peter's as the "employer" made promises to: (1) pay to Plaintiff and other Class members, upon retirement, defined benefit pensions in amounts that increased with each year of service; and (2) make ongoing contributions to the Saint Peter's Plan trust that were sufficient, on an actuarial basis, to pay for the accrued pension benefits.

221.     The promises made by Saint Peter's to make contributions sufficient to pay promised benefits were further implied in fact and law by the benefit promises contained in the Plan restatements, summary plan descriptions, and benefit statements issued to the Plaintiff and the other Class members.

---

[4] Counts X through XIV state alternative claims for relief under State law in the event the Court determines that the Saint Peter's Plan is a Church Plan exempt from ERISA.

51

222.    The promises made in the Saint Peter's Plan documents were clearly communicated to the Plaintiff and the other Class members, including through summary plan descriptions, benefits statements, and other Saint Peter's Plan documents, such that the Plaintiff and the other Class members could reasonably understand that Saint Peter's had made an offer, in exchange for their continued service, to operate an ERISA-compliant Plan, pursuant to which it would make ongoing contributions to the Saint Peter's Plan trusts sufficient to pay for their accrued pension benefits.

223.    Mr. Kaplan and other Class members accepted Saint Peter's offer by commencing or continuing to work after learning of Saint Peter's promise to pay and fund pension benefits pursuant to an ERISA-covered Plan.

224.    The Plaintiff and the other Class members' continued work for Saint Peter's constituted consideration for the promises contained in the Saint Peter's Plan documents.

225.    Accordingly, the Saint Peter's Plan documents constitute enforceable contracts.

226.    By continuing to work for Saint Peters, the Plaintiff and the other Class members performed their obligations under the contracts and satisfied the conditions required to trigger Saint Peter's duty to provide retirement benefits pursuant to an ERISA-compliant Plan, including but not limited to making sufficient contributions to fund accrued pension benefits.

227.    Defendant Saint Peter's breached its obligations under the contracts by failing to follow the provisions of ERISA as promised, including by failing to make contributions to the Saint Peter's Plan trust that were sufficient to pay for all the accrued pension benefits.

228.    Defendant Saint Peter's further breached the implied covenant of good faith and fair dealing, as Saint Peter's failed to exercise good faith in the performance of its obligations to

comply with ERISA, including the obligation to make contributions sufficient, on an actuarial basis, to fund accrued benefits.

229.    Saint Peter's willfully failed to perform, evaded the spirit of the bargain, and failed to act consistent with the reasonable expectations of the Plaintiff and the Class to the extent it (a) decided that the Plan would no longer be ERISA-compliant; (b) sought to satisfy its funding obligation by making only partial contributions to the Plan trust; or (c) interpreted its funding obligation as being satisfied by its partial contributions, which as of 2017 resulted in the Saint Peter's Plan being funded at only 56% of its accrued benefit obligations.

230.    A promise to pay pension benefits—as was made in the Saint Peter's Plan documents and repeated in benefit statements and other communications sent to Plaintiff and the other Class members—is meaningful only if there is money in the Plan trust that is sufficient, on an actuarial basis, to pay the accrued benefits. Plaintiff believed, and a reasonable plan participant would expect, that in light of the promise to pay defined pension benefits upon retirement and the promise to make contributions sufficient to fund that promise, Saint Peter's would have made contributions sufficient, on an actuarial basis, to fund the full amount of the accrued benefit. This expectation is even more reasonable given that the Plan that Plaintiff and Class members agreed to participate in was promised to be an ERISA-compliant Plan.

231.    Defendant Saint Peter's had an improper motive to make insufficient contributions to the Saint Peter's Plan: Plaintiffs and the other Class members continued in their employment, relying in whole or in part on Saint Peter's promises, while Saint Peter's simultaneously used millions of dollars for its own account that should have been contributed to the Saint Peter's Plan.

232.    Because Defendant Saint Peter's breached its obligation to provide an ERISA-compliant Plan and have failed to make contributions to the Saint Peter's Plan, Plaintiff and the other Class members have been deprived of their contractual right to an ERISA-compliant, insurance-backed trust sufficiently funded to support their accrued pension benefits. Saint Peter's failure to comply with ERISA and to make sufficient contributions to the Saint Peter's Plan trust has left the Saint Peter's Plan severely underfunded, creating a significant risk that the Saint Peter's Plan will be unable to pay promised pension benefits. This risk is further amplified by Saint Peter's after-the-fact designation of the Saint Peter's Plan as an ERISA-exempt church plan, which has left the Plan uninsured by the Pension Benefit Guaranty Corporation.

233.    Plaintiff and the Class are entitled to specific performance of the obligations contained in the Saint Peter's Plan documents, including (a) Saint Peter's obligation to operate the Plan in accordance with ERISA; (b) Saint Peter's obligation to make contributions to the Saint Peter's Plan trust that are sufficient, on an actuarial basis, to pay for *all* accrued pension benefits; and (c) Saint Peter's implied obligation to act in good faith in the performance of its contractual obligations.

## COUNT XI

### (Alternative Claim for Promissory Estoppel Against Defendant Saint Peter's)

234.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

235.    Plaintiffs assert a state law claim for promissory estoppel against Defendant Saint Peter's to the extent that the Saint Peter Plan did not create an enforceable contractual relationship between Saint Peter's and Plaintiff and the other Class members.

236.     Saint Peter's repeatedly promised to: (1) maintain an ERISA-compliant pension plan which would pay to Plaintiff and other Class members, upon retirement, defined benefit pensions in amounts that increased with each year of service; and (2) make ongoing contributions to the Saint Peter's Plan trust that were sufficient, on an actuarial basis, to pay for the accrued pension benefits.

237.     These promises were clearly communicated to Plaintiff and the other Class members through Saint Peter's Plan documents and communications, including summary plan descriptions, benefit statements, and/or other generally distributed documents and oral assurances.

238.     Saint Peter's expected or reasonably should have expected that Plaintiff and the other Class members would continue to work for Saint Peter's in reliance, in whole or in part, on Saint Peter's promise to follow the strictures of ERISA, including by paying and funding pension benefits in exchange for their completion of years of service. A principal purpose of a pension is to encourage employees to continue working at their job instead of leaving and causing turnover.

239.     Plaintiff and the other Class members continued working at their jobs and earned their years of service for their pension benefits in reliance on the promises made to them by Saint Peter's.

240.     Saint Peter's has repudiated its promise by failing to operate an ERISA-compliant Plan, and by failing to make contributions to the Saint Peter's Plan trust that are sufficient, on an actuarial basis, to pay for the accrued pension benefits.

241.     If Saint Peter's does not adequately fund the promised pension benefits, Plaintiff will not receive the retirement benefits to which they are entitled and on which they relied.

242.     Because Plaintiff and the other Class members continued to work for Saint Peter's in reliance on Saint Peter's promises, they forewent opportunities to seek other employment that would have paid them benefits, including retirement benefits. Plaintiff and the other Class members can never undo those years spent working for Saint Peter's and cannot reverse time to work for an employer that will actually honor its promises to pay pension benefits. Accordingly, if Saint Peter's does not honor its promises to operate the Plan in compliance with ERISA and adequately fund the promised pension benefits, Plaintiffs and the other Class members have relied on this promise to a substantial detriment, as they will retire with far less income than they expected and will have been deprived of the opportunity to make up for that lost income.

243.     Saint Peter's promises must be enforced to avoid this injustice to the Plaintiff and the other members of the Class.

### COUNT XII

### (Alternative Claim for Unjust Enrichment Against Defendant Saint Peter's)

244.     Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

245.     Plaintiff asserts a state law claim for unjust enrichment against Defendant Saint Peter's to the extent that the Saint Peter's Plan did not create an enforceable contractual relationship between Saint Peter's and Plaintiff and the other Class members.

246.     Plaintiff and the other Class members conferred substantial benefits on Saint Peter's, including their continued employment.

247.     Saint Peter's promised to pay and fund defined benefit pensions to Plaintiff and the other Class members pursuant to an ERISA-governed Plan, in order to recruit them and encourage them to continue working at Saint Peter's, as previously alleged.

2331227 v1

248.    In reliance in whole or in part on these promises, Plaintiff and other Class members worked for Saint Peter's for longer periods and lower wages than they would have in the absence of the promised benefits.

249.    Saint Peter's benefitted from the contributions of the Plaintiff and other Class members of their time, effort, experience, training, and ideas.

250.    Saint Peter's directly saved millions of dollars by exempting itself from ERISA and not contributing those amounts to the Saint Peter's Plan, as previously alleged.

251.    Saint Peter's also avoided the cost of higher employee turnover as a result of the Plaintiff and the other Class members remaining employees of Saint Peter's. Costs of employee turnover can include: the time of management and human resources personnel devoted to exit interviews and organizing work left behind by departing employees; severance benefits and variable unemployment insurance costs; advertising for replacement employees; the time of management devoted to reviewing applications and conducting interviews and reference checks; the time of managers and co-workers devoted to training new replacement employees; and reduced productivity of replacement employees due to inexperience.

252.    Saint Peter's retained these benefits to the detriment of Plaintiff and the Class. The millions of dollars that Saint Peter's has retained for its own account should have been paid into the Saint Peter's Plan trust to fund the already accrued pension benefits of Plaintiff and the other Class members, as required under ERISA and promised by Defendants.

253.    Saint Peter's decision to convert the plan to a purported church plan and its failure to make sufficient contributions to the Saint Peter's Plan trust has left the Saint Peter's Plan severely underfunded, creating a significant risk that it will be unable to pay the pension benefits to which Plaintiff and the other Class members are entitled. This risk is further amplified by

57

Saint Peter's designation of the Saint Peter's Plan as an ERISA-exempt Church Plan, which has left them uninsured by the Pension Benefit Guaranty Corporation.

254.    Additionally, Plaintiff and the other Class members continued working for Saint Peter's relying in whole or in part on their reasonable expectations that Saint Peter's would contribute that money into the Saint Peter's Plan trust in exchange for their continued employment. This is particularly true since Saint Peter's never informed Plaintiff or any proposed Class members that the Plan was no longer governed by ERISA, meaning, among other things, no longer backed by insurance, until after the plan was frozen. By working for Saint Peter's in reliance on this reasonable expectation, Plaintiff and the other Class members forewent opportunities to seek alternative employment that would have paid them benefits, including retirement benefits. Plaintiff and the other Class members can never undo those years spent working for Saint Peter's and cannot reverse time to work for an employer that will actually honor its promises to pay pension benefits.

255.    If Saint Peter's does not honor its promises to adequately fund the promised pension benefits, Plaintiff and the other Class members will retire with far less income than they expected and will be deprived of the opportunity to make up for that lost pension income.

256.    Accordingly, Saint Peter's retention of the benefits described herein would violate fundamental principles of justice, equity, and good conscience.

257.    The amount of Defendant Saint Peter's unjust enrichment, including the amounts retained by Saint Peter's that should have been contributed to the Saint Peter's Plan, should be disgorged and paid to the Saint Peter's Plan trust.

## COUNT XIII

**(Alternative Claim for Breach of Common Law Fiduciary Duty Against All Defendants)**

258. Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

259. The Saint Peter's Plan assets are held in trust.

260. Plaintiff and the other Class members are beneficiaries of the Saint Peter's Plan trust.

261. Defendant Saint Peter's, in its role as the employer with respect to the Saint Peter's Plan, is a fiduciary pursuant to the Saint Peter's Plan documents.

262. The Retirement Plan Committee, the Individual Defendants and the Doe Defendants are trustees within the meaning of the common law of trusts.

263. Alternatively, the Retirement Plan Committee, Individual Defendants and the Doe Defendants are fiduciary trust managers or trust protectors within the meaning of the common law of trusts.

264. Additionally, the Retirement Plan Committee, Individual Defendants and the Doe Defendants are fiduciaries pursuant to the Saint Peter's Plan documents.

265. As fiduciaries of the Saint Peter's Plan, Saint Peter's, the Retirement Plan Committee, the Individual Defendants and the Doe Defendants owed the Plaintiff and the other Class members the duty of loyalty, including the duty to act solely in the interests of Plaintiff and the other Class members.

266. This duty was breached when Defendants decided to convert the ERISA-covered Plan to a "church plan" and stopped following the funding requirements of ERISA and insurance requirements.

267.    Defendants had the fiduciary responsibility under the Saint Peter's Plan documents to make contributions to the Plan trust that were sufficient, on an actuarial basis, to fund all accrued benefits.

268.    Defendants breached their duty to make sufficient contributions to the Saint Peter's Plan, as detailed above.

269.    Additionally, because Defendant Saint Peter's retained millions of dollars for its own accounts that it should have contributed to the Saint Peter's Plan trust and because withholding those contributions from the Saint Peter's Plan trusts has left the Saint Peter's Plan severely underfunded and at significant risk that they will be unable to pay all accrued pension benefits, Defendants failed to act solely in the interests of Plaintiff and the other Class members, in breach of their duty of loyalty.

270.    Defendants, as common law trustees, also had a fiduciary duty to preserve and maintain trust assets, which includes the duties to determine what property constitutes the subject matter of the trust, to use reasonable diligence to discover the location of trust property, and to use reasonable diligence to take control of trust property without unnecessary delay. If an entity obligated to make contributions to a trust retains possession of trust assets, this duty entails the duty to hold that entity to its obligation to place trust assets in trust.

271.    Defendants possessed discretionary powers and authority necessary to carry out the provisions of the Saint Peter's Plan.

272.    Defendants breached their fiduciary duties by failing to use reasonable diligence to take control of trust property without unnecessary delay, including by failing to take reasonable steps to hold Saint Peter's to its obligation to make contributions that were sufficient, on actuarial basis, to fund all accrued benefits under the Saint Peter's Plan.

60

273.     As a direct and proximate result of Defendants fiduciary breaches, the Saint Peter's Plan Trust and their beneficiaries, including Plaintiff and the other Class members, have been deprived of contributions to which they are entitled under the terms of the Plan, and the Saint Peter's Plan trusts have become severely underfunded, creating a significant risk that the Saint Peter's Plan will be unable to pay to Plaintiff and the other Class members the pension benefits to which they are entitled under the Plan.

274.     Plaintiff seek an order enforcing these fiduciary duties, and enjoining the ongoing breaches thereof by Defendants, including an order directing the Retirement Plan Committee, the Individual Defendants and the Doe Defendants to review actuarial reports and other relevant information regarding the funded status of the Saint Peter's Plan and use all reasonable diligence to require Saint Peter's to make contributions to the Saint Peter's Plan that are sufficient, on an actuarial basis, to fund all accrued pension benefits.

275.     Defendants are liable to restore the losses to the Saint Peter's Plans caused by their breaches of fiduciary duties alleged in this Count. Plaintiff further requests other equitable relief as appropriate.

## COUNT XIV

### (Request for a Declaratory Judgment)

276.     Plaintiff also seek a declaration that the Plan must be operated in compliance with ERISA and as such, the Defendants must restore all monies to the Plan as necessary to fund the obligations Saint Peter's has to all Plan participants.

277.     There is an adversity of interest between the Plaintiff and other Class members and Defendants, and the threatened harm of receiving less retirement benefits to which Plaintiff and other Class members are entitled is real and substantial.

2331227 v1

278.     A declaration that Defendants are required to comply with ERISA, including by funding the Saint Peter's Plan in accordance with the promises made to the Plaintiff and Class members in the Plan documents and procuring insurance from the Pension Benefit Guaranty Corporation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants on all claims and requests that the Court award the following relief:

A.     Certifying the Class under Rule 23, appointing Plaintiff as Class Representatives, and appointing his attorneys as Class Counsel to represent the members of the Class;

B.     Declaring that the Saint Peter's Plan is an employee benefit plan within the meaning of ERISA section 3(2), 29 U.S.C. § 1002(2), is a defined benefit pension plan within the meaning of ERISA section 3(35), 29 U.S.C. § 1002(35), and is not a Church Plan within the definition of section 3(33) of ERISA, 29 U.S.C. § 1002(33);

C.     Ordering Saint Peter's to reform the Saint Peter's Plan to bring the Saint Peter's Plan into compliance with ERISA and to have the Saint Peter's Plan comply with ERISA including as follows:

1.     Revising Plan documents to reflect that the Plan is a defined benefit plan regulated by ERISA;

2.     Requiring Saint Peter's to fund the Saint Peter's Plan in accordance with ERISA's funding requirements, disclose required information to the Saint Peter's Plan participants and beneficiaries, and otherwise comply with all other reporting, vesting, and funding requirements of Parts 1, 2 and 3 of Title I of ERISA, 29 U.S.C. §§

1021-31, 1051-61, 1081-85;

3.    Reforming the Saint Peter's Plan to comply with ERISA's vesting and accrual requirements and providing benefits in the form of a qualified joint and survivor annuity; and

4.    Requiring the adoption of an instrument governing the Saint Peter's Plan that complies with ERISA section 402, 29 U.S.C. § 1102;

D.    Requiring Defendants to comply with ERISA reporting and disclosure requirements, including by filing Form 5500 reports, distributing ERISA-compliant Summary Plan Descriptions, Summary Annual Reports and Participant Benefit Statements, and providing Notice of the Saint Peter's Plan funding status and deficiencies;

E.    Requiring the establishment of a Trust in compliance with ERISA section 403, 29 U.S.C. § 1103;

F.    Requiring Saint Peter's, as a fiduciary of the Plan, to make the Saint Peter's Plan whole for any losses and disgorge any Saint Peter's profits accumulated as a result of fiduciary breaches;

G.    Appointing an Independent Fiduciary to hold the Saint Peter's Plan assets in trust, to manage and administer the Saint Peter's Plan and their assets, and to enforce the terms of ERISA;

H.    Requiring Saint Peter's to pay a civil money penalty of up to $110 per day to Plaintiff and each Class member for each day it failed to inform Plaintiff and each Class member of its failure to properly fund the Plan;

I.    Requiring Saint Peter's, or in the alternative, the Retirement Plan Committee, to pay a civil money penalty of up to $110 per day to Plaintiff and each Class member for each

day it failed to provide Plaintiff and each Class member with a Funding Notice;

J.      Requiring Saint Peter's, or in the alternative, the Retirement Plan Committee, to pay a civil money penalty of up to $110 per day to Plaintiff and each Class member for each day it failed to provide a benefit statement under ERISA section 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B);

K.      Ordering declaratory and injunctive relief as necessary and appropriate, including enjoining the Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA, with respect to the Saint Peter's Plan;

L.      Declaring with respect to Count IX, that the Church Plan exemption, as claimed by Saint Peter's, is an unconstitutional accommodation under the Establishment Clause of the First Amendment, and is therefore void and ineffective;

M.      In the alternative to the relief requested pursuant to Counts I-IX, if the Court determines that the Saint Peter's Plan is a "church plan" exempt from ERISA, ordering specific performance of Defendant Saint Peter's contractual obligations under the Plan documents, including an order requiring Defendant Saint Peter's to make contributions to the Plan trust that are sufficient, on an actuarial basis, to fund all accrued pension benefits under the Plan and convert the Plan to an ERISA plan;

N.      In the alternative to the relief requested pursuant to Counts I-IX, if the Court determines that the Saint Peter's Plan is a "church plan" exempt from ERISA, enforcing Defendant Saint Peter's promises to make contributions to the Plan trust that are sufficient, on an actuarial basis, to fund all accrued pension benefits under the Plan;

O.      In the alternative to the relief requested pursuant to Counts I-IX, if the Court

64

determines that the Saint Peter's Plan is a "church plan" exempt from ERISA, ordering Defendant Saint Peter's to disgorge and pay to the Plan trust all monies wrongfully obtained or retained and all revenues and profits derived by Defendant Saint Peter's as a result of its unjust enrichment;

P.      In the alternative to the relief requested pursuant to Counts I-IX, if the Court determines that the Saint Peter's Plan is a "church plan" exempt from ERISA, ordering declaratory, injunctive, and other equitable relief as necessary and appropriate, including ordering Saint Peter's to comply with, and enjoining Defendants from further violating, the duties, responsibilities, and obligations imposed on them by the common law and the Saint Peter's Plan documents with respect to the Saint Peter's Plan;

Q.      In the alternative to the relief requested pursuant to Counts I-IX, if the Court determines that the Saint Peter's Plan is a "church plan" exempt from ERISA, requiring the Retirement Plan Committee, Individual Defendants and Doe Defendants, as trustees and fiduciaries of the Saint Peter's Plan, to make the Plan whole for any losses and disgorge any profits accumulated as a result of breaches of their fiduciary duties under the common law and the Plan documents;

R.      In the alternative or in addition to any of the relief requested pursuant to Counts I-XIV, a declaration pursuant to the Declaratory Judgment Act that Defendants must comply with the terms of the Saint Peter's Plan and make contributions which are sufficient, on an actuarial basis, to fund all current and future accrued pension benefits;

S.      Awarding to Plaintiff attorneys' fees and expenses as provided by the common fund

doctrine, ERISA section 502(g), 29 U.S.C. § 1132(g), and/or other applicable

doctrine;

T.      Awarding to Plaintiffs taxable costs pursuant to ERISA section 502(g), 29 U.S.C. §

1132(g); 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d)(1); and 735 ILCS § 5/5-108, § 5/5-

110, and § 5/5-111; and other applicable law;

U.      Awarding to Plaintiff pre-judgment interest on any amounts awarded pursuant to law;

and

V.      Awarding, declaring or otherwise providing Plaintiff and the Class all relief under

ERISA section 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the

Court deems proper.


Dated: August 8, 2018.


 /s/ Scott M. Lempert
Scott M. Lempert Bar # 035281995
Karen L. Handorf
Julie S. Selesnick
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone:  (202) 408-4600
Email:  slempert@cohenmilstein.com
             khandorf@cohenmilstein.com
             jselesnick@cohenmilstein.com

KELLER ROHRBACK L.L.P.
Lynn Lincoln Sarko
Havila Unrein
Matthew Gerend
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900 / Fax: (206) 623-3384
Email: lsarko@kellerrohrback.com
        hunrein@kellerrohrback.com
        mgerend@kellerrohrback.com

KELLER ROHRBACK P.L.C.
Ron Kilgard
Laurie Ashton
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088 / Fax: (602) 248- 2822
Email: rkilgard@kellerrohrback.com
        lashton@kellerorhback.com

*Attorneys for Plaintiff*