NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LAURENCE KAPLAN,

Plaintiff,

v.

SAINT PETER'S HEALTHCARE SYSTEM, et al.,

Defendants.

Civil Action No. 13-2941 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon two motions: (1) Defendants'[1] Motion to Dismiss and Strike (ECF No. 200) and (2) Plaintiff Laurence Kaplan's ("Plaintiff") Motion to Strike (ECF No. 202). Plaintiff opposed Defendants' motion (ECF No. 201), and Defendants replied (ECF No. 209). Defendants opposed Plaintiff's motion (ECF No. 208), and Plaintiff replied (ECF No. 210). Pursuant to 28 U.S.C. §§ 516 and 2403(a), the United States intervened and filed a Memorandum in Support of the Constitutionality of the ERISA[2] Church Plan Exemption. (ECF No. 212.) Plaintiff subsequently filed a notice of supplemental authority. (ECF No. 213.) The Court has carefully considered the arguments and decides the matter without oral argument pursuant to Local

---

[1] The defendants are Saint Peter's Healthcare System ("SPHS"), Ronald C. Rak, Susan Ballestero, Garrick Stoldt, (collectively, "Original Defendants"), Retirement Plan Committee for the Saint Peter's Healthcare System Retirement Plan ("Plan Committee"), Leslie D. Hirsch, Pamela Teufel, and Lisa Drumbore (collectively, "Defendants").

[2] ERISA is the Employee Retirement Income Security Act, 29 U.S.C. 1001 *et seq.*

Civil Rule 78.1. For the reasons set forth herein, Defendants' Motion to Dismiss and Plaintiff's Motion to Strike are denied.

## I. BACKGROUND

On May 7, 2013, Plaintiff initiated this putative class action lawsuit against SPHS and others arguing that the Saint Peter's Healthcare System Retirement Plan (the "SPHS Plan") was not a "church plan" and SPHS was violating provisions of ERISA by operating the SPHS Plan as a church plan. (*See* Compl. ¶ 4, ECF No. 1.) On March 31, 2014, the Court denied Original Defendants' Motion to Dismiss finding that, as a matter of law, the SPHS Plan is not a church plan, as defined in ERISA. *Kaplan v. Saint Peter's Healthcare Sys.* (*Kaplan I*), No. 13-2941, 2014 WL 1284854 (D.N.J. Mar. 31, 2014). On September 19, 2014, the Court granted Original Defendants' Motion to Certify the Court's March 31, 2014 Order for Interlocutory Appeal and to stay proceedings pending the appeal to the Third Circuit. (Sept. 19, 2014 Order, ECF No. 111.) The Third Circuit affirmed the Court's March 31, 2014 decision. *Kaplan v. Saint Peter's Healthcare System* (*Kaplan II*), 810 F.3d 175 (3d Cir. 2015). Defendants sought, and the Supreme Court granted, certiorari. *Saint Peter's Healthcare Sys. v. Kaplan*, 137 S. Ct. 546 (2016). The Supreme Court subsequently reversed the Third Circuit and held that "a plan maintained by a principal-purpose organization . . . qualifies as a 'church plan,' regardless of who established it." *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1663 (2017).

On July 25, 2018, the Honorable Tonianne J. Bongiovanni, U.S.M.J., granted Plaintiff's Motion to Amend. (Letter Order, ECF No. 192.) On August 8, 2018, Plaintiff filed an Amended Complaint. (Am. Compl., ECF No. 195.)

Plaintiff alleges that "[t]his case is about [SPHS's] failure to properly maintain its pension plan under ERISA." (*Id.* ¶ 6.) Specifically, Plaintiff alleges SPHS is "violating numerous provisions of ERISA—including, on information and belief, underfunding the [Plan] by over $130

2

million—while erroneously claiming that the [SPHS] Plan is exempt from ERISA's protections because it is a 'church plan.'" (*Id.* ¶ 9.) Plaintiff alleges that due to SPHS's "failure to maintain an ERISA-compliant Plan backed by insurance, and because of [SPHS's] continuing refusal to adequately fund the [SPHS] Plan, there exists a substantial risk that the [SPHS] Plan will be unable to pay the accrued pension benefits to which Plaintiff[] and the other Class members are entitled." (*Id.* ¶ 15.)

Plaintiff alleges that the SPHS Plan is a "non-contributory defined benefit pension plan" that was established in 1974. (*Id.* ¶¶ 58, 69, 70.) Plaintiff further alleges that from 1974 until 2010, the SPHS Plan "was operated as an ERISA-covered plan[,]" and "was funded in accordance with ERISA, met ERISA reporting requirements, and paid premiums to the Pension Benefit Guarantee Corporation ("PBGC"), the federal agency that provides pension insurance to ERISA covered plans." (*Id.* ¶ 58.) Plaintiff avers that in 2006, SPHS determined that the SPHS Plan "was a church plan not subject to ERISA and sought a private ruling with the [Internal Revenue Service] confirming" the same. (*Id.* ¶ 60.) SPHS received a letter ruling from the Internal Revenue Service on August 13, 2013. (*Id.* ¶ 61.) Plaintiff alleges that as of December 31, 2016, the SPHS Plan was underfunded by more than $130 million. (*Id.* ¶ 68.) Plaintiff alleges that SPHS "funds the [SPHS Plan] and has the power to amend and terminate the [SPHS Plan]." (*Id.* ¶ 66.) SPHS named the Plan Committee as the plan administrator. (*Id.* ¶ 67.)

Plaintiff alleges that the SPHS Plan is an "'employee pension benefit plan' within the meaning of ERISA [S]ection 3(2)(A), 29 U.S.C. § 1002(2)(A)." (*Id.* ¶ 69.) Furthermore, the SPHS Plan is a "defined benefit plan within the meaning of ERISA Section 3(35), 29 U.S.C. § 1002(35)." (*Id.* ¶ 70.) Plaintiff avers that the SPHS Plan is not a church plan pursuant to "ERISA [S]ection

3

3(33)(A)[3] or [S]ection 3(33)(C)(i),[4] 29 U.S.C. §§ 3(33)(A) or (C)(i)." (*Id.* ¶ 84.) Plaintiff alleges that the SPHS Plan is not a church plan under ERISA Section 3(33)(A) because SPHS "is not a church or a convention or association of churches, and does not claim to be" any of the same. (*Id.*) Plaintiff alleges that ERISA Section 3(33)(c)(i) does not apply because the SPHS Plan is not maintained by a "principal purpose organization"[5] as defined in the same section. (*Id.* ¶¶ 85-86.)

---

[3] ERISA Section 3(33)(A) provides:

> The term "church plan" means a plan established and maintained (to the extent required in clause (ii) of subparagraph (B)) for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of Title 26.

29 U.S.C. § 1002(33)(A).

[4] ERISA Section 3(33)(C) provides, in relevant part:

> For purposes of this paragraph—(i) A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, *the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.*

29 U.S.C. § 1002(33)(C) (emphasis added).

[5] The *Stapleton* Court explained that a description of a principal purpose organization follows the word organization in ERISA Section 3(33)(C) (marked in the italics in the prior footnote) and the "main job of such an entity, as the statute explains, is to fund or manage a benefit plan for the employees of churches or . . . of church affiliates." *Stapleton*, 137 S. Ct. at 1656-57. The *Stapleton* Court stated that the "scope of that term—and whether it comprehends the hospitals' internal benefits committees—[was] not at issue" in the matter before it. *Id.* at 1658 n.3. Similarly, although not at issue before the Third Circuit, the Third Circuit stated:

> [SPHS] itself does not appear to meet the principal purpose test, as its principal purpose is the provision of healthcare and not the administration or funding of the retirement plan. [SPHS] contends, however, that [the Plan Committee] qualifies because the Committee's principal purpose is to maintain the plan. However, this may be insufficient.

*Kaplan II*, 810 F.3d at 183 n.8.

Plaintiff alleges that even if the SPHS Plan were maintained by a permissible entity under Section 3(33)(A), the SPHS Plan fails to meet the definition of a church plan for several other reasons. (*Id.* ¶¶ 88, 96, 101, 102.) Plaintiff also alleges that the church plan exemption as claimed by SPHS violates the Establishment Clause of the United States Constitution. (*Id.* ¶¶ 103-06.)

Plaintiff brings this action as a putative class action pursuant to Federal Rule of Civil Procedure 23.[6] (*Id.* ¶ 107.) Plaintiff's putative class definition is "[a]ll participants or beneficiaries of any Plan operated as or claimed by [SPHS] to be a Church Plan of [August 8, 2018,]" excluding "any high level executive at [SPHS] or any employees who have responsibility or involvement in the administration of the plan, or who are subsequently determined to be fiduciaries of [the SPHS Plan], including the Individual Defendants." (*Id.*)

Plaintiff's Amended Complaint asserts fourteen counts. (*See id.* ¶¶ 123-278.) Counts I through VIII are asserted pursuant to various provisions of ERISA. (*See id.* ¶¶ 124-204.) Count IX seeks a declaration that the church plan exemption violates the Establishment Clause. (*Id.* ¶¶ 205-15.) Counts X through XIV are pled as "alternative claims for relief under State law in the event the Court determines that the [SPHS Plan] is a Church Plan exempt from ERISA." (*Id.* at 51 n.4.)

On September 7, 2018, Defendants moved to dismiss the Amended Complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6). (Defs.' Mot. to Dismiss 2, ECF No. 200.) In the alternative, should any claims survive Defendants' Motion to Dismiss, Defendants move to strike paragraph 54 of the Amended Complaint. (*Id.*) On October 29, 2018, Plaintiff opposed Defendants' motions. (Pl.'s Opp'n Br., ECF No. 201.) On the same day, pursuant to Rule 12(f), Plaintiff moved to strike the Certifications of Garrick Stoldt and Monsignor John Fell and related exhibits attached to

---

[6] All references to a Rule or Rules herein are references to the Federal Rules of Civil Procedure.

Defendants' motion. (Pl.'s Mot. to Strike, ECF No. 202.) On December 10, 2018, Defendants opposed Plaintiff's Motion. (Defs.' Opp'n Br., ECF No. 208.) On December 12, 2018, Defendants replied to Plaintiff's opposition. (Defs.' Reply Br., ECF No. 209.) On December 21, 2018, Plaintiff replied to Defendants' opposition. (Pl.'s Reply Br., ECF No. 210.) On February 8, 2019, pursuant to 28 U.S.C. §§ 2403(a) and 517, the United States filed a brief in support of the constitutionality of the church-plan exemption. (Intervenor's Br., ECF No. 212.) On March 28, 2019, Plaintiff filed a Notice of Supplemental Authority providing the Court with a copy of *Cappello v. Franciscan Alliance, Inc.*, No. 16-290, 2019 WL 1382909 (N.D. Ind. Mar. 27, 2019).

## II. LEGAL STANDARD

Because federal courts are courts of limited jurisdiction, the party seeking to invoke the Court's jurisdiction bears the burden of proving the existence of subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Pursuant to Rule 12(b)(1), the Court's jurisdiction may be challenged either facially (based on the legal sufficiency of the claim) or factually (based on the sufficiency of a jurisdictional fact). *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). On a facial attack, the Court considers only the allegations of the complaint and documents referenced therein, construing them in the light most favorable to the plaintiff. *Pearson v. Chugach Gov't Servs., Inc.*, 669 F. Supp. 2d 467, 469-70 (D. Del. 2009). On a factual attack, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

The "'irreducible constitutional minimum' of standing consists of three elements[:] [t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016). "Injury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Id.* at 1547-48 (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)). The plaintiff must establish that he or she suffered an "'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

### III. DISCUSSION

Because Article III standing is a Constitutional prerequisite for the maintenance of this suit, the Court addresses this issue first. The Court, next, addresses the parties' motions to strike. The Court concludes by addressing Defendants' remaining grounds for dismissal.

#### A. **Plaintiff Alleged a Sufficient Injury for Article III Standing**

Defendants argue that Plaintiff cannot establish the requisite injury-in-fact or that there is a "certainly impending' risk that he will be injured." (Defs.' Moving Br. 11-12, ECF No. 200-1.) Defendants aver that Plaintiff does not allege that the SPHS Plan has failed to pay Plaintiff, or any putative class member, the benefits due to him, and thus Plaintiff has suffered no injury. (*Id.* at 11.) Defendants aver that Plaintiff merely alleges that SPHS "has failed to make the minimum funding contributions to the [SPHS] Plan required by ERISA, and that the [SPHS] Plan is underfunded by $130 million." (*Id.* at 12.) Defendants argue that underfunding, without more, does not create standing under ERISA because diminution of plan assets alone is insufficient to establish an injury to a plan participant. (*Id.*)

Defendants cite to *Lee v. Verizon Communications, Inc.*, 837 F.3d 523 (5th Cir. 2016), for the proposition that a plaintiff lacks standing if he or she alleges underfunding of a plan but cannot

7

connect the underfunding to a risk that the plan will be unable to pay benefits in the future or make up any shortfall in the future. (*Id.* at 12-13.) Defendants further argue that Plaintiff also lacks standing to bring his breach of fiduciary duty claim, failure to make required ERISA reports claims, and Establishment Clause claim. (*Id.* at 14-16.)

Plaintiff opposes, arguing that *Spokeo* reaffirmed that "intangible injuries can nevertheless be concrete," that "Congress is well-positioned to identify intangible harms that meet minimum Article III requirements," and that where a statutory provision exists to protect "some concrete interest," the violation of that statutory right is sufficient and a plaintiff "need not allege any *additional* harm beyond the one Congress has identified." (Pl.'s Opp'n Br. 6 (quoting *Spokeo*, 136 S. Ct. at 1549).) Plaintiff further argues that he has "concrete interests in the security of his pension, . . . deprivation of these protections constitutes injury-in-fact, and no *additional* harm is required." (*Id.*) Plaintiff also argues that post-*Spokeo*, the Third Circuit has consistently held that "plaintiffs who allege disclosure violations have standing 'to sue to remedy violations of their statutory rights, even without additional injury.'" (*Id.* at 7 (quoting *Long v. Se. Pa. Trans. Auth.*, 903 F.3d 312, 322 (3d Cir. 2018)).)

Plaintiff argues that Defendants' reliance on *Lee* is "flawed because [*Lee*] relies on the incorrect, non-controlling 'imminent risk' standard only adopted by the Fifth Circuit." (*Id.* at 8.) Finally, Plaintiff argues that because the SPHS Plan is currently underfunded by $135 million (holding assets to pay only 56% of its obligations) and "Defendants claim to have no legal obligation to meet ERISA's minimum funding requirements or to obtain [Pension Benefit Guaranty Company] insurance . . . . That is enough to establish standing." (*Id.* at 9 (citing *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1040 (N.D. Cal. 2018)).)

Here, both parties cite to *Perelman v. Perelman*, 793 F.3d 368 (3d Cir. 2015), in which the Third Circuit provided guidance on the requisite injury a plaintiff must allege to have standing in

8

the ERISA context. The Third Circuit distinguished between the injury a plaintiff seeking injunctive relief must allege versus the injury a plaintiff seeking "monetary equitable relief" must allege. *Perelman*, 793 F.3d at 373. When the plaintiff brings "claims for injunctive relief, [the requisite] injury may exist simply by virtue of the defendant's violation of an ERISA statutory duty, such as failure to comply with disclosure requirements." *Id.*

The Third Circuit has cautioned that when a plaintiff pursues an ERISA claim for a "monetary equitable remedy" the plaintiff must "allege an individualized financial harm traceable to the defendant's alleged ERISA violations." *Id.* At the same time, "[i]n the case of a defined benefit plan, . . . the Supreme Court has established that diminution in plan assets, without more, is insufficient to establish actual injury to any particular participant." *Id.* at 374. This is because "participants in such a plan are entitled only to a fixed periodic payment, and have no 'claim to any particular asset that composes a part of the plan's general asset pool.'" *Id.* (quoting *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 440 (1999)). Nevertheless, the Third Circuit has observed that there is also "some support for the notion that a participant or beneficiary in a defined benefit plan has suffered an injury sufficient to pursue a claim for 'make-whole' equitable monetary relief under § 502(a) where the fiduciary's alleged misconduct 'creates or enhances the risk of default by the entire plan.'" *Id.* (quoting *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 255 (2008)).

> The risk of default by defined benefit plans, of course, is not a novel or abstract concept. Congress has sought rigorously to minimize or eliminate such risk by requiring defined benefit plans "to satisfy complex minimum funding requirements, and to make premium payments to the Pension Benefit Guaranty Corporation for plan termination insurance."

*Id.* (quoting *LaRue*, 552 U.S. at 255).

Here, Plaintiff's allegations regarding the SPHS Plan, a defined benefit plan, sufficiently allege an injury to establish Article III standing. Despite Defendants' characterization, Plaintiff

9

does not allege bare procedural ERISA violations. Instead, Plaintiff claims that the SPHS Plan was operated for over 30 years as if it were subject to ERISA. (Am. Compl. ¶ 58.) Plaintiff avers that today the SPHS Plan is currently underfunded by $130 million and, critically, SPHS disputes whether ERISA imposes any requirements on the SPHS Plan. (*Id.* ¶¶ 68, 81.) Moreover, Plaintiff avers that the SPHS Plan is no longer insured by the PBGC. (*Id* ¶ 58. ("[SPHS] was also insured by the PBGC.").) Taken together, these allegations suggest that Defendants may have enhanced the risk of the SPHS's Plan's default by operating the SPHS Plan as if it were a church plan and exempt from ERISA, which constitutes an injury-in-fact. Moreover, Defendants' certifications and statements regarding SPHS's recent contributions to the SPHS Plan, SPHS's planned future contributions to the SPHS Plan, and the ability of the SPHS Plan to make payments in the future (Defs.' Opp'n Br. 10, 14) indicate there are factual disputes regarding whether the SPHS Plan is underfunded and whether Defendants' actions enhanced the risk of default. Such disputes are more appropriately resolved at summary judgment as occurred in *Perelman*.

Plaintiff and Defendants disagree over the relevance and import of *Perelman* and *Lee*. The Court, however, finds both cases are procedurally and factually distinguishable from the instant matter. In *Perelman*, the plaintiff had the benefit of expert testimony regarding the claimed diminution in value of the plan's assets, and the plaintiff's claims for injunctive relief survived until summary judgment. *Perelman*, 793 F.3d at 373-74. The Third Circuit's conclusion that the Plaintiff failed to "allege the actual harm required to sustain constitutional standing for an individual claim of 'make-whole' equitable relief under § 502(a)(3)" was supported by undisputed evidence that "under a valuation method approved by Congress, the [p]lan was appropriately funded, and [the defendant] had no obligation to make further contributions to stabilize the [p]lan's finances." *Id.* at 375. In this matter, Plaintiff has not had the benefit of discovery and cannot challenge nor rebut Defendants' factual assertions regarding the finances of the SPHS Plan without

the benefit of such discovery. In *Lee*, the Fifth Circuit found that the plaintiff's theory of injury was "dependent on the realization of several additional risks, which collectively render the injury too speculative to support standing." *Lee*, 837 F.3d at 546. Here, Plaintiff's claims are based on Defendants' conclusion that the SPHS Plan is exempt from ERISA and ERISA's protections for participants and beneficiaries. Unlike in *Perelman*, where the defendant implicitly accepted the proposition that ERISA required the defendant to make additional contributions if the SPHS Plan was underfunded, Plaintiff, in the instant matter, alleges that SPHS's position is that ERISA's funding requirements no longer apply to the SPHS Plan. (Am. Compl. ¶ 81.) In *Lee*, the Fifth Circuit's view was that the allegation that the "plan was underfunded, and less financially stable, merely increase[d] the relative likelihood that [the defendant] will have to cover a shortfall." *Lee*, 837 F.3d at 546. In contrast, SPHS's position that the SPHS Plan is a church plan, if true, would potentially erase SPHS's obligation under ERISA to cover any shortfall. The Court, accordingly, finds that Plaintiff has alleged a sufficient injury in fact to support Article III standing.

**B.    The Parties' Motions to Strike are Denied**

Pursuant to Rule 12(f), "[t]he court may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added.) "Motions to strike are disfavored and will be denied 'unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" *Kongtcheu v. Secaucus Healthcare Ctr., LLC*, No. 13-1856, 2014 WL 2436048, at *3 (D.N.J. May 30, 2014) (quoting *In re Schering-Plough Corp./Enhance Sec. Litig.*, No. 08-397, 2009 WL 1410961, at *1 (D.N.J. May 19, 2009)). Other district courts in the Third Circuit have "[r]ecogniz[ed] that briefs are, by their nature, argumentative and sometimes contentious filings, [thus], it is generally held that a brief—as opposed to other forms of pleadings—typically will not be considered a 'pleading' which is

properly the subject of a motion to strike." *Rivera v. United States*, No. 12-1339, 2013 WL 1826396, at *1 (M.D. Pa. Apr. 30, 2013).

Here, Plaintiff's Motion to Strike is procedurally improper and substantively deficient. On its face, Plaintiff's motion does not attack a "pleading" as defined in the Rules,[7] instead, the motion attacks certifications and exhibits attached to a motion. (*See* Pl.'s Moving Br., ECF No. 202-1.) Moreover, even if the certifications and exhibits were proper subjects of a motion to strike, Plaintiff has not met his burden of showing that the materials are "redundant, immaterial, impertinent, or scandalous." *See* Fed. R. Civ. P. 12(f). Specifically, Plaintiff argues that the Court's jurisdictional inquiry does not require determination of the facts of this matter and that a factual inquiry would be inappropriate without Plaintiff having the opportunity to engage in jurisdictional discovery. (*See* Pl.'s Moving Br. 5-8.) Plaintiff, however, fails to acknowledge that when a defendant mounts a factual attack on the Court's subject matter jurisdiction, as Defendants have done here, the Court may look beyond the pleadings to adjudicate the motion. *See generally Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). Here, the certifications and exhibits are material to Defendants' defense and support one of the grounds for Defendants' Motion to Dismiss, *viz.* that the SPHS Plan is a church plan. The Court, accordingly, denies Plaintiff's Motion to Strike.

Defendants' Motion to Strike is procedurally proper but is not supported by sufficient argument or legal authority. Defendants' move to strike paragraph 54 of the Amended Complaint. (Defs.' Mot. to Dismiss 2.) Paragraph 54 reads:

> The principal purpose or function of Saint Peter's is not the administration or funding of a plan or program for the provision of retirement or welfare benefits, or both, for the employees of a church or a convention or association of churches. Rather, the principal purpose or function of Saint Peter's is the provision of

---

[7] Rule 7 identifies seven types of pleadings: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a).

healthcare. The Third Circuit reached the same conclusion. *Kaplan v. Saint Peter's Healthcare System, et al.*, 810 F.3d 175, 183, n.8 (3d Cir. 2015) ("Saint Peter's itself does not appear to meet the principle purpose test, as its principle purpose is the provision of healthcare and not the administration or funding of the retirement plan.")

(Am. Compl. ¶ 54.) Defendants' moving papers do not identify why this paragraph out of the 278 paragraphs in the Amended Complaint is particularly objectionable and should be struck. The Court declines to speculate and notes that this paragraph encompasses one of Plaintiff's primary arguments in support of his ERISA claims. The Court, accordingly, denies Defendants' Motion to Strike.

### C. The Court has Subject Matter Jurisdiction

When a defendant mounts a factual challenge to a complaint's assertion of jurisdiction by presenting competing facts, as Defendants have done here, "no presumptive truthfulness attaches to plaintiff's allegations." *Davis*, 824 F.3d at 346 (quoting *Mortensen*, 549 F.2d at 891). Moreover, "the plaintiff will have the burden of proof that jurisdiction does in fact exist, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (internal quotations and citations omitted). The Court may "weigh and consider evidence outside the pleadings. *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).

Defendants argue that the Court must dismiss this matter for lack of subject matter jurisdiction because the SPHS Plan is a church plan and the church plan exemption strips the Court of subject matter jurisdiction. (Defs.' Moving Br. 17-18.) Defendants cite *Koval v. Washington County Redevelopment Authority*, 574 F.3d 238 (3d Cir. 2009), and numerous other district court and Circuit Court opinions in support of this proposition. (*See id.* (collecting cases).) Defendants also cite the Court's previous Memorandum Opinion certifying the Court's Order for interlocutory appeal where the Court stated it "did not reach the issue of whether an exemption from ERISA

eliminates the Court's subject matter jurisdiction. However, if the Court's statutory interpretation was incorrect, it would require reversal upon final appeal and likely strip this Court of subject matter jurisdiction of Plaintiff's ERISA claims." *Kaplan I*, 2014 WL 4678059, at *2 (citing *Beazer E., Inc. v. The Mead Corp.*, No. 91-408, 2006 WL 2927627, at *2 (W.D. Pa. Oct. 12, 2006)); *Koval*, 574 F.3d at 244. Defendants argue that "the court's power to hear the case must be resolved before further proceeding on the merits" and "the court can and should resolve factual issues relating to its jurisdiction before proceeding further." (Defs.' Moving Br. 18-19.)

In opposition, Plaintiff argues that "whether a pension plan is subject to ERISA is a merits question unrelated to subject matter jurisdiction." (Pl.'s Opp'n Br. 10-11.) Plaintiff states that the language in ERISA's jurisdictional section, 29 U.S.C. § 1132(e)(1) ("Section 1132"), and the language in ERISA's coverage section excluding church plans from ERISA's provisions, 29 U.S.C. § 1003(b)(2) ("Section 1003"), when read together "do[] not . . . amount to a clear statement that [Section 1003] is jurisdictional." (*Id.* at 12.) Plaintiff argues that the provisions of Title VII at issue in *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), are like the provisions at issue here. Plaintiff also argues that the Third Circuit's decisions in *North Jersey Brain & Spine Center v. Aetna, Inc.*, 801 F.3d 369 (3d Cir. 2015), and *Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees*, 974 F.2d 391 (3d Cir. 1992), are consistent with the view that ERISA's coverage provisions are not jurisdictional. (*Id.* at 13-14.)

Here, the Court finds that based on Third Circuit and Supreme Court precedent, Section 1003 is not jurisdictional in nature. As a result, the Court has subject matter jurisdiction over Plaintiff's ERISA claims. A brief explication of the relevant binding precedent is necessary.

The issue before the *Arbaugh* Court was whether "Title VII's definition of 'employer'[8] affects federal-court subject-matter jurisdiction or, instead, delineates a substantive ingredient of a Title VII claim for relief." *Arbaugh*, 546 U.S. at 503. The *Arbaugh* plaintiff sued her former employer, Y&H Corporation ("Y&H"), and the matter was tried before a jury. *Id.* at 504. After the jury returned a verdict, Y&H asserted that it was not an "employer" subject to suit under Title VII. *Id.* The district court considered itself obligated to dismiss the suit for lack of subject matter jurisdiction and did so. *Id.* The *Arbaugh* Court disagreed, holding that the numerosity requirement related to the "substantive adequacy" of the plaintiff's claims. *Id.*

The *Arbaugh* Court was critical of the judiciary's use of the term "jurisdictional." *Id.* at 510. The *Arbaugh* Court stated:

> "Jurisdiction," this Court has observed, "is a word of many, too many, meanings." . . . This Court, no less than other courts, has sometimes been profligate in its use of the term. . . . On the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous. Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination. Judicial opinions, the Second Circuit incisively observed, "often obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim." We have described such unrefined dispositions as "drive-by jurisdictional rulings" that should be accorded "no precedential effect" on the question whether the federal court had authority to adjudicate the claim in suit.

*Id.* at 510-11 (citations and certain quotation marks omitted). While the *Arbaugh* plaintiff invoked 28 U.S.C. § 1331, the *Arbaugh* Court noted that the case arose under a federal law "that specifies, as a prerequisite to its application, the existence of a particular fact, *i.e.*, [fifteen] or more employees." *Id.* at 514.

---

[8] Title VII defines an "employer" to include only those having "fifteen or more employees". 42 U.S.C. § 2000e(b).

The *Arbaugh* Court's resolution of whether the numerosity requirement was "jurisdictional" or related to the "merits" included consideration of several different issues. First, the *Arbaugh* Court determined that "[n]othing in the text of Title VII indicates that Congress intended courts, on their own motion, to assure that the employee-numerosity requirement is met." *Id.* at 513. Second, the *Arbaugh* Court noted that "if subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on her [or his] own. If satisfaction of an essential element of a claim for relief is at issue, however, the jury is the proper trier of contested facts." *Id.* (citations omitted). Third, if the Court lacks subject matter jurisdiction, it must dismiss the entire matter, but if the Court grants a motion to dismiss for failure to state a claim, the court may exercise pendent jurisdiction over state-law claims. *Id.*

Turning to Title VII, the *Arbaugh* Court noted that Congress could have made "the employee-numerosity requirement 'jurisdictional,' just as it has made an amount-in-controversy threshold an ingredient of subject-matter jurisdiction in delineating diversity-of-citizenship jurisdiction under 28 U.S.C. § 1332." *Id.* at 514-15. But, Title VII's jurisdictional provision did not "specif[y] any threshold ingredient akin to 28 U.S.C. § 1332's monetary floor. Instead, the fifteen-employee threshold appears in a separate provision that 'does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.'" *Id.* at 515 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)).

The *Arbaugh* Court refrained from constricting Title VII's jurisdictional provision and left "the ball in Congress' court." *Id.* at 515.

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Id.* at 515-16 (citations omitted). Thus, the *Arbaugh* Court held that the numerosity requirement was "an element of the plaintiff's claim, not a jurisdictional issue." *Id.* at 516.

Here, pursuant to *Arbaugh*, the Court finds that the determination of whether the SPHS Plan is subject to the church plan exemption is not jurisdictional. Section 1132 does not include any "threshold ingredient akin to 28 U.S.C. § 1332's monetary floor." *Arbaugh*, 546 U.S. at 515 Instead, Section 1132 speaks in broad language regarding civil actions brought by certain defined categories of people. *See* 29 U.S.C. § 1132(e)(1) (granting federal district courts "exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in Section 1021(f)(1) of this title."). As Plaintiff points out, Congress did not state that the statutory limitation on coverage under ERISA in Section 1003 is jurisdictional, thus the Court should treat the restriction as nonjurisdictional in character.

Defendants argue that by stating in Section 1003 that "the provision of this subchapter shall not apply to" a church plan, Congress did what *Arbaugh* required. (Defs.' Reply Br. 5-6.) This reading of Section 1003, however, is quite broad and Defendants have offered no legal authority to support such an expansive reading of Section 1003.

Defendants' position also ignores that the relevant question is not whether Section 1003 excludes church plans from ERISA's provisions, but whether the SPHS Plan is a church plan pursuant to Section 1002. When the dispute is recast in that light, the jurisdictional challenge here mirrors the issue in *Arbaugh* and the same result should apply. Specifically, in *Arbaugh*, to pursue the Title VII claim, the plaintiff had to establish that the defendant was an "employer" within the scope of Title VII, and this turned on the fact of whether the employer met the numerosity requirement. *Arbaugh*, 546 U.S. at 515. Here, whether Plaintiff may maintain his ERISA claims against Defendants depends on whether Plaintiff can establish the fact that the SPHS Plan is not a

17

church plan pursuant to Section 1002. This fact is akin to an element of a claim that Plaintiff must prove, which must be determined by the trier of fact.

Defendants rely heavily on *Koval v. Washington County Redevelopment Authority*. (*See* Defs.' Moving Br. 17; Def's Reply Br. 5-7.) A close reading of *Koval*, however, does not support the weight Defendants place upon it. In *Koval*, the Third Circuit considered which of two different analyses to apply when determining whether a benefit plan is a government plan under ERISA. *Koval*, 574 F.3d at 241. Ultimately, the Third Circuit held the "benefit plan is a 'governmental plan' exempt from ERISA under 29 U.S.C. § 1003(b)(1), and therefore the District Court correctly ruled that it did not have subject matter jurisdiction over [the plaintiff's] claims." *Id.* at 244.

Defendants' reliance on *Koval* is misplaced because the Third Circuit did not "explicitly consider[] whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim." *Arbaugh*, 546 U.S. at 511. The jurisdictional issue was not before the Third Circuit, thus the Third Circuit had no opportunity to consider it.

Although decided prior to *Arbaugh*, *Henglein* offers a robust analysis of jurisdiction in the ERISA context. In *Henglein*, the Third Circuit stated that "the viability of a claim under § 1132(a)(1)(B) and jurisdiction pursuant to § 1132(e) are separate matters, and they should not be confused." *Henglein*, 974 F.2d at 397. The Third Circuit further stated:

> In ERISA cases such as this one, the existence of an employee benefit plan is integral to the merits of a claim for benefits under § 1132(a)(1)(B). Here, the district court concluded that a plan did not exist. That conclusion related to the viability of the claim but not to the district court's jurisdiction. Thus, although the district court labeled its judgment as a dismissal entered for lack of subject matter jurisdiction, the judgment was clearly on the merits; that is, the district court reached a legal conclusion—to which the rules of issue and claim preclusion apply—that the employees had not proven the existence of a plan.

*Id.* at 397-98. Discussing its prior precedent, the Third Circuit noted "that once federal law is invoked, then the facts alleged and their legal sufficiency are questions on the merits." *Id.* at 397 (discussing *Boyle v. Governor's Veterans Outreach & Assistance Ctr.*, 925 F.2d 71 (3d Cir. 1991)).

The Third Circuit found that the district court erred when it dismissed the plaintiffs' ERISA claim and stated that the dismissal was "jurisdictional." *Id.* at 398.

*Henglein* remains good law and comports with *Arbaugh*. Here, Plaintiff has properly invoked a federal statute, ERISA, and the Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1331. (Am. Compl. ¶ 16.) Plaintiff alleges that the SPHS Plan is a church plan and this fact is integral to the merits of Plaintiff's claim, not the Court's subject matter jurisdiction. *Henglein*, 974 F.2d at 397-98. The Court, accordingly, finds that the Court has subject matter jurisdiction over Plaintiff's ERISA claims.

## IV. CONCLUSION

For the reasons set forth above, the Court denies Defendants' Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(1). It is a "well-established principle governing the prudent exercise of [a court's] jurisdiction that normally the [c]ourt will not decide a constitutional question if there is some other ground upon which to dispose of the case[.]" *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009) (quoting *Escambia Cty. v. McMillan*, 466 U.S. 48, 51 (1984) (per curiam)). This principle requires the Court to delay consideration of Defendants' challenge to Plaintiff's Establishment Clause claim until a point in time, if and when, the Court determines that the SPHS Plan is a church-plan subject to the exemption. The Court, accordingly, does not reach Defendants' arguments on Count IX. Finally, while Defendants move to dismiss Plaintiff's state law claims for lack of supplemental jurisdiction and failure to state a claim, the Court does not reach these arguments, at this juncture, because Plaintiff pled his state law claims in the alternative. (Am. Compl. at 51 n.4 (stating "Counts X through XIV state

alternative claims for relief under state law in the event the Court determines that the Saint Peter's Plan is a Church Plan exempt from ERISA.").)

An order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**