Case 3:13-cv-02941-MAS-TJB   Document 264   Filed 12/14/21   Page 1 of 16 PageID: 7521

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LAURENCE KAPLAN, on behalf of himself, individually, and on behalf of all others similarly situated, | : : : : | Civil Action No. 13-2941 (MAS)(TJB) |
| | : : | Honorable Michael A. Shipp |
| Plaintiff, | : : | United States District Judge |
| v. | : : : | Motion Returnable: January 3, 2022 |
| SAINT PETER'S HEALTHCARE SYSTEM, et al., | : : : | Oral Argument Requested |
| Defendants. | : : | (Electronically Filed Document) |

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

SILLS CUMMIS & GROSS P.C.
Jeffrey J. Greenbaum
James M. Hirschhorn
Katherine M. Lieb
One Riverfront Plaza
Newark, New Jersey 07102
jgreenbaum@sillscummis.com
jhirschhorn@sillscummis.com
klieb@sillscummis.com
*Attorneys for Defendants*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS .......................................................................................3

ARGUMENT .............................................................................................................6

I.    THE PLAN COMMITTEE MAINTAINS THE SAINT PETER'S PLAN ................................................................................................................6

II.   THE PLAN COMMITTEE IS AN ORGANIZATION ................................11

CONCLUSION ........................................................................................................12

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Advocate Health Care Network v. Stapleton*,
   137 S. Ct. 1652 (2018)........................................................................2, 7, 8, 9, 10

*Boden v. Saint Elizabeth Med. Cntr.*,
   404 F. Supp. 2d 1076 (E.D. Ky. 2019).......................................................*passim*

*Chamber of Commerce of U.S. v. Whiting*,
   563 U.S. 582 (2011)...............................................................................................10

*County of Los Angeles v. Davis*,
   440 U.S. 625 (1979).................................................................................................7

*Encino Motorcars, Inc. v. Navarro*,
   138 S. Ct. 1134 (2018)..........................................................................................10

*Hygh v. Jacobs*,
   961 F.2d 359 (2d Cir. 1994) ................................................................................11

*Kaplan v. Saint Peter's Healthcare Sys.*,
   810 F.3d 175 (3d Cir. 2015) ..................................................................................7

*Medina v. Catholic Health Initiatives*,
   877 F.3d 1213 (10th Cir. 2017) ..............................................2, 7, 8, 10, 11, 12

*Pension Benefit Guar. Corp. v. LTV Corp.*,
   496 U.S. 633 (1990)...............................................................................................10

*Rollins v. Dignity Health*,
   338 F. Supp. 3d 1025 (N.D. Cal. 2018)..............................................................8

*Sansone v. Mercy Health*,
   954 F.3d 1031 (8th Cir. 2020) .........................................................................2, 7

*Smith v. OSF*,
   933 F.3d 859 (7th Cir. 2019) ........................................................2, 7, 8, 10, 12

*Specht v. Jensen*,
   853 F.2d 805 (10th Cir. 1988) ............................................................................11

*Stapleton v. Advocate Health Care Network*,
    817 F.3d 517 (7th Cir. 2016) ...................................................................................7

**FEDERAL STATUTES**

29 U.S.C. § 1002(33)(C)(i) ...................................................................................1, 8, 11

29 U.S.C. § 1003(5) ......................................................................................................1

ERISA .................................................................................................................1, 6, 10

**RULES**

Fed. R. Civ. P. 12(b)(6) .................................................................................................8

**OTHER AUTHORITIES**

Black's Law Dictionary ..............................................................................................11

## **PRELIMINARY STATEMENT**

Defendants submit this Reply Memorandum of Law in response to Plaintiff's opposition to Defendants' Motion for Partial Summary Judgment. Because of the simultaneous submission of cross-motions for partial summary judgment on the issue of whether the Saint Peter's Defined Benefit Plan ("Plan") is maintained by the Saint Peter's Plan Committee ("Committee") as a principal purpose organization ("PPO") and thus qualifies as a church plan excluded from ERISA under 29 U.S.C. §§ 1002(33)(C)(i) and 1003(5) ("Exclusion"), Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Opposition") anticipated and responded in advance to most of Plaintiff's arguments. Defendants' arguments in Defendants' Opposition will not be repeated at length, and the Court is respectfully referred to that memorandum at the appropriate points in this submission.

Defendants agree that the factual issues before the Court are narrow and there is no real dispute about material issues of fact. The text of the Bylaws, the Plan document and the minutes are undisputed. The powers and duties of the Plan Committee under those documents are likewise undisputed, as is the fact that the Committee actually exercises those powers. It acts beyond simply administering the Plan. The Committee interprets the Plan, determines the Plan's investment policy and investments, and determines the amount of its funding to be provided by Saint

1

Peter's. It engages investment professionals and oversees their work. It administers all aspects of the Plan. Whether its activities amount to maintaining the Plan within the meaning of the Exclusion presents a pure question of law based upon these facts, and the Committee's exercise of its powers and duties are as great or greater than those held to constitute maintenance in *Medina*, *Sansone*, and *Boden* and to potentially constitute maintenance in *Smith*. Finally, it is also a pure question of law whether a component committee of an employer like the Committee qualifies as a PPO even though it is not a separate juridical person. Every court to have considered that question has concluded that the "or otherwise" language of the Exclusion permits an internal committee to qualify as an organization.

With three Courts of Appeals decisions and one final district court decision rejecting his arguments, Plaintiff is left to cite only prior decisions reversed by the Supreme Court in *Advocate*, a preliminary district court decision denying a motion to dismiss, and his crabbed view of the Exclusion's legislative history that the Supreme Court dismissed in *Advocate*. These are simply unavailing to overcome the weight of authority that a plan committee that administers and determines the funding of a church plan is a principal purpose organization that qualifies for the Exclusion.

## **STATEMENT OF FACTS**

Both sides agree that there are no genuine issues of material fact in dispute. (*See* Plaintiff's Opp. at 3 ("In short, there are no *genuine* issues of *material* fact in dispute.")) Indeed, although Plaintiff may dispute the interpretation or significance of Defendants' statements, Plaintiff has agreed with numerous statements in Defendants' Statement Pursuant to Local Civil Rule 56.1. Thus, Defendants write briefly to address those areas in which the parties diverge on the interpretation of undisputed facts.

First, Plaintiff argues that Saint Peter's and its Plan Committee's control by, and association with, the Church are not before the Court and that further discovery on these subjects is required. (*See, e.g.*, Plaintiff's Opp. at 21; Plaintiff's Responsive Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Plaintiff's 56.1 Response")), ¶ 1.) Neither argument is correct. As detailed in footnote 2 on page 20 of Defendants' moving brief, the question of control and association is appropriate now because, as the Plan Committee is a component of Saint Peter's, whether Saint Peter's is controlled by or associated with a church will determine whether the same is true of the Plan Committee.

The record on this point is fully developed, and no further discovery is necessary. Plaintiff has acknowledged that Saint Peter's is listed in the *Official Catholic Directory*. (*See* Plaintiff's 56.1 Response, ¶ 12.) As noted in Defendants'

3

moving brief, this fact alone is sufficient to establish association. (Defendants' Br. at 24-25.) Further, as previously established, the Bishop's control is reflected in the governing Certificate of Incorporation and Bylaws. Plaintiff's 56.1 Response also acknowledges in response to paragraph 2 that "[t]he Bishop of Metuchen is the sole member of St. Peter's."[1]

Second, Plaintiff's references to the word "maintains" in the Plan with respect to Saint Peter's involvement are irrelevant and taken out of context. When read properly in context, the Plan uses "maintains" as a substitute for synonyms like "has," "keeps," or "continues." (*See, e.g.*, Certification of Jeffrey J. Greenbaum, dated September 30, 2021, Ex. B, Stoldt Tr. at 49:6-17 ("Q: The first sentence says 'The System intends to maintain the plan.' What's your understanding of the word 'maintain' in this sentence? A: Maintain is to—is to operate the plan, but it doesn't operate – it's an incomplete sentence, because that maintenance is not done by the

---

[1] Notwithstanding this admission, Plaintiff purports to dispute the Bishop's role as member in paragraph 7 of Plaintiff's 56.1 Statement. In so doing, Plaintiff relies on Saint Peter's Form 990s from several years ago, which incorrectly checked a box stating that Saint Peter's has no members. As noted in the Certification of Garrick Stoldt, dated September 7, 2018, when this error was called to its attention, Saint Peter's filed an amended tax return for the year 2011, which properly identifies the Bishop as the member. Saint Peter's also provided the Court with its 2016 tax return (its most recent return at that time), which also reflected the proper corporate structure of Saint Peter's as having a member. (ECF No. 200-2, -3, ¶ 8, Exs. D & E.) In any event, the corporate structure is controlled by the governing documents on file, which are not in dispute.

System, it's done by the retirement committee. They are delegated through the bylaws. The retirement committee's responsibility is to maintain the plan."))

Third, Plaintiff misstates the involvement of the Investment Committee and the Finance Committee in the Plan. The Bylaws vest authority for the management of the Plan to the Plan Committee. The Investment Committee does not "make[] decisions concerning investments held by the Plan" (Plaintiff's 56.1 Statement, ¶ 40); on the contrary, it serves purely an oversight function that does not make recommendations, nor decisions related to the Plan. (Stoldt. Tr. at 110:10-111:10.) Likewise, the Plan Committee, not the Finance Committee, is ultimately responsible for the determination of the final amount of funding of the Plan. (Certification of Garrick Stoldt, dated September 30, 2021, ¶ 45.) Plaintiff's suggestion that the Investment Committee, the Finance Committee, or the Board itself is involved with the maintenance of the Plan is simply not supported by the record.

Finally, certain of Plaintiff's admissions are particularly notable. With respect to association and control, Plaintiff admits that Saint Peter's provides Catholic religious facilities and services and that Saint Peter's receives a blanket tax exemption through its listing in the *Official Catholic Directory*. (Plaintiff's 56.1 Statement, ¶¶ 18, 19.) As to maintenance, Plaintiff agrees that the Plan Committee meets on a quarterly basis, that discussions are memorialized in detailed minutes showing that the Plan Committee met 50 times over twelve years, and that meetings

5

are attended by Plan Committee members, certain employees and professional advisors. (*Id.*, ¶¶ 44-46.) Plaintiff also admits the Plan Committee's ability to move on minor amendments to the Plan without Board involvement. (*Id.* ¶¶ 48-50.) Plaintiff also recognizes the Plan Committee's authority with respect to the management of outside advisors, the work performed by outside advisors, and the Plan Committee's responsibility to adopt the Plan's investment policy. (*Id.*, ¶¶ 65, 67, 69-76.) These admissions further underscore that summary judgment in Defendants' favor is warranted.

## ARGUMENT

### I. THE PLAN COMMITTEE MAINTAINS THE SAINT PETER'S PLAN

Plaintiff argues that the Committee cannot maintain the Plan because Saint Peter's maintains the Plan. The argument is a straw man. It rests on the premise that only one entity can possibly maintain a plan under ERISA. Plaintiff cites no authority for this proposition. On the contrary, the Exclusion provides that an entity that either administers *or* finances a church plan maintains it. As *Boden* points out, this disjunctive language implies that a plan can be maintained by more than one entity because both administration and funding are required to maintain a plan. *Boden v. Saint Elizabeth Med. Cntr.*, 404 F. Supp. 2d 1076, 1092 (E.D. Ky. 2019).[2] That is the pattern of the multi-congregational pension boards that Plaintiff invokes

---

[2] *See* Defendants' Memorandum of Law In Opposition (Doc. # 262) at 11-12.

from the legislative history – the individual congregations fund the plan, which is administered by the board. The issue is therefore not whether Saint Peter' maintains the Plan by funding it but whether the Committee also maintains the Plan by administering it and determining its funding requirements.

Plaintiff finally acknowledges the two Court of Appeals decisions against him but continues to ignore *Smith* and *Boden*. He attempts to refute *Medina v. Catholic Health Initiatives*, 877 F.3d 1213 (10th Cir. 2017) and *Sansone v. Mercy Health*, 954 F.3d 1031 (8th Cir. 2020) on the issue of maintenance by invoking the Third Circuit's prior decision in this matter, *Kaplan v. Saint Peter's Healthcare Sys.*, 810 F.3d 175 (3d Cir. 2015), and the Seventh Circuit's prior decision in *Stapleton v. Advocate Health Care Network*, 817 F.3d 517 (7th Cir. 2016). The Supreme Court reversed both of these decisions in *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652 (2018). As vacated decisions, they are a nullity and have no precedential effect. *County of Los Angeles v. Davis*, 440 U.S. 625, 634 (1979).[3] Since *Advocate*, moreover, the Seventh Circuit has concluded, in *Smith v. OSF*, 933 F.3d 859, 868-69 (7th Cir. 2019), that an internal committee can maintain a plan if the committee actively administers it.[4]

---

[3]   *See* Defendants' Mem. of Law in Opposition (Doc # 262) at 17.
[4]   *See* Defendants' Mem. of Law in Opposition (Doc # 262) at 18-19.

Having no other direct authority, Plaintiff puts his principal reliance on Judge Tigar's preliminary views expressed in *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025 (N.D. Cal. 2018), which no other court has followed. As noted in Defendants' opposition to Plaintiff's motion for summary judgment,[5] *Rollins* was decided at the motion to dismiss stage and distinguishes *Medina*, which, like this case, was decided on summary judgment with a full record. Judge Tigar of course could not address the subsequently decided *Sanzone*, *Smith* and *Boden* opinions. He acknowledges that at the Rule 12(b)(6) stage, he was required to accept plaintiff's plausibly pleaded factual allegations and that discovery could cause his views to change. *Id.* at 1034, 1037.

Moreover, the *Rollins* analysis of the statute is incorrect. Judge Tigar reasoned that unless maintenance means something more than either administration or funding, the term is read out of the statute. *Id.* at 1036. This analysis disregards the language of § 1002(33)(C)(i), which refers to a plan maintained by an organization whose principal purpose is either administration or funding of the Plan. *Rollins*, like Plaintiff, finds support by improperly citing dictum in *Advocate* that "it is the entity maintaining the plan that has the primary ongoing responsibility and (potential liability) to plan participants." *Id.*, quoting *Advocate*, 137 S. Ct. at 1661. This reliance is improper because *Advocate* twice states that the issue of maintenance

---

<sup>5</sup> *See* Defendants' Mem. of Law in Opposition (Doc # 262) at 14.

by a plan committee "is not before us, and nothing we say in this opinion expresses a view of how they should be resolved." *Advocate*, 137 S. Ct. at 1657 n.2 and 1658 n.3. This Court therefore can take no guidance from any language in *Advocate* relating to maintenance. The *Boden* analysis discussed above, consistent with the cited Court of Appeals decisions, is superior because it hews more closely to the statutory language in concluding that maintenance can consist of either administration or funding by the PPO. *Boden*, 404 F. Supp. 3d at 1092.

But even accepting Judge Tigar's conclusion that maintenance means something more than administration and/or funding, which Defendants do not, Saint Peter's meets that test. The Plan Committee administers the Plan, interprets it, determines its investment policy and investments, hires, supervises and, when necessary, dismisses its professional advisors, and determines the level of the Plan's funding. Under any definition, this constitutes maintenance.

Lacking any other support, Plaintiff falls back on a presumption that the Exclusion should be read narrowly and confined only to exactly the circumstances addressed in the legislative history. As discussed in Defendants' Opposition,[6] *Advocate* dismissed the Exclusion's legislative history as unclear, unreliable and not useful. 137 S. Ct. at 1661. As also discussed in Defendants' Opposition, the legislative history is contrary to Plaintiff's argument that only an entity with the

---

6   *See* Defendants' Mem. of Law in Opposition (Doc # 262) at 4-6.

9

power to terminate a plan maintains it.[7]  More importantly, the Supreme Court did not presume that Congress's express exclusion of church plans from ERISA coverage should be construed narrowly or limited to the situations mentioned in the legislative history.  Instead, the Court interpreted the language Congress enacted rather than the motives that might have prompted it.  *Advocate*, 137 S. Ct. at 1656.

In doing so, *Advocate* followed modern principles of statutory construction. "Congress's authoritative statement is the statutory text, not the legislative history." *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 599 (2011).  The scope of statutory language is not limited by examples referenced in the legislative history. *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 649 (1990).  Instead:

> If the text is clear, it needs no repetition in the legislative history, and if the text is ambiguous, silence in the legislative history cannot lend any clarity.  Even if Congress did not foresee all of the applications of the statute, that is no reason not to give the statutory text a fair reading.

*Encino Motorcars, Inc. v. Navarro*, 138 S. Ct. 1134, 1143 (2018).  Accordingly, this Court, like the Courts of Appeals in *Medina, Sanzone* and *Smith*, and the District Court in *Boden*, should examine the language of the Exclusion in the light of its

---

[7]  *See* Defendants' Mem. of Law in Opposition (Doc # 262) at 5 n.1.  As shown therein, subsequent rulings of the IRS upholding the Exclusion for Catholic healthcare institutions when the plans were maintained by internal plan committees (the most common form of administration at the time) demonstrate that it acknowledged that, despite the Treasury testimony against them, the 1980 Amendments were intended to, and did in fact, overturn the prior IRS determination that the Sisters of Charity Plan did not qualify.  The Amendments were designed to meet the needs of both hierarchical religions and congregational religions.

structure and its ordinary meaning, and conclude that a PPO that either administers or funds a retirement plan maintains it for the purpose of qualifying under the Exclusion.

## II. THE PLAN COMMITTEE IS AN ORGANIZATION

Plaintiff argues that the Committee is not an "organization" within the meaning of § 1002(33)(C)(i) because it is not a separate legal person. By silence, Plaintiff concedes that no court has accepted this viewpoint and that every court to consider the issue has held that a committee of the sponsoring entity that actually administers the plan qualifies as a PPO.[8] Plaintiff cites only the testimony of a witness in *Medina*, not part of this summary judgment record, that a committee of a larger organization without separate legal personality should not be considered to be a distinct "organization." As Plaintiff concedes, that testimony was rejected by both the District Court and Court of Appeals in that case. It disregards the language of § 1002(33)(C)(i) that a PPO may be a "civil law corporation *or otherwise*." (Emphasis added). Moreover, interpretation of the statutory term "organization" is an issue of law for the Court, on which expert testimony is inadmissible. *See Hygh v. Jacobs*, 961 F.2d 359, 363-65 (2d Cir. 1994); *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988). The Committee is a "group of people, structured in a specific way to achieve a series of shared goals," Black's Law Dictionary, "working together in a common

---

[8] *See* Defendants' Mem. of Law in Opposition (Doc. # 262) at 17-19.

11

way for a shared purpose." *See Sanzone*, 954 F.3d at 1044-45; *Smith*, 933 F.3d at 868-69; *Medina*, 877 F.3d at 1226; *Boden*, 404 F. Supp. 3d at 1093. Accordingly, it qualifies as an organization even though it is a component part of Saint Peter's rather than a separate legal person.

## CONCLUSION

For the foregoing reasons, and those stated in their prior Memoranda of Law, Defendants respectfully request that the Court deny Plaintiff's motion for partial summary judgment and grant partial summary judgment determining that the Saint Peter's Defined Benefit Plan qualifies for the Church Plan Exclusion because it is maintained by the Plan Committee, a principal purpose organization controlled by and affiliated with the Roman Catholic Diocese of Metuchen.

    Respectfully submitted,

    SILLS CUMMIS & GROSS P.C.

    By: *s/ Jeffrey J. Greenbaum*
       JEFFREY J. GREENBAUM
       JAMES M. HIRSCHHORN
       KATHERINE M. LIEB
    *Attorneys for Defendants*

Dated: December 14, 2021